**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

|  |  |
|---|---|
| In re:<br><br>CURTIS JAMES JACKSON, III,<br><br>          Debtor | Chapter 11<br><br>Case No. 15-21233 (AMN) |
| LASTONIA LEVISTON,<br><br>          Movant<br><br>v.<br><br>CURTIS JAMES JACKSON, III,<br><br>          Respondent. |  |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Lastonia Leviston, creditor and party-in-interest herein ("Movant"), by her undersigned counsel, hereby moves for relief from the automatic stay to proceed with the punitive damages phase of a state court action pending against the debtor, Curtis James Jackson, III in the Supreme Court of the State of New York, County of New York, and respectfully submits in support thereof the following:

**FACTUAL BACKGROUND**

1.    On July 13, 2015 (the "Petition Date"), Curtis James Jackson, III (the "Debtor" or "Mr. Jackson") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  No official committee of unsecured creditors has yet been appointed in the Chapter 11 case.

2. Mr. Jackson, also known as "50 Cent," is a world famous hip-hop artist and business mogul. In March 2009, Mr. Jackson intentionally released on his commercial website a private intimate video depicting the Plaintiff, Lastonia Leviston, having sex with her then boyfriend, Maurice Murray. The video was never intended to be disclosed or made public in any way. Not only did Mr. Jackson release the tape, but also he edited and narrated the video, superimposing himself (dressed in a purple fur coat) into the picture and speaking crudely and derisively of Ms. Leviston's nude body; calling graphic attention to Ms. Leviston's private parts; labeling Ms. Leviston a porn star and a prostitute; and questioning the paternity of her children. The editing process also included blurring out the face of the male in the video to protect his identity, while intentionally leaving Ms. Leviston's face fully visible for millions to see. This was done during a "rap beef" with competing artist, Rick Ross, who is the father of Ms. Leviston's child. Mr. Jackson knew that the more he destroyed Ms. Leviston and caused her pain and suffering, the better positioned he would be in the ongoing feud.

3. On February 24, 2010, Ms. Leviston sued the Debtor in the Supreme Court of the State of New York, County of New York (the "New York Supreme Court") asserting claims for intentional infliction of emotional distress and violation of the New York Civil Rights Law (the "State Court Action"). After much wrangling and resistance based on alleged inconvenience to the Debtor personally in going to trial, on March 12, 2015, the New York Supreme Court set a date for trial of May 26, 2015, which date was compatible with the Debtor's busy personal schedule.

4. On May 26, 2015, Movant and her counsel appeared for trial with the full expectation that the trial would proceed as scheduled, but the Debtor and his counsel were no shows. Instead, an email was sent to the New York Supreme Court and

Movant's counsel at exactly 11 am, which was the trial commencement time, advising that the case had been removed to Federal Court because Mr. Jackson's company, SMS Productions ("SMS"), had filed for bankruptcy in this Court.[1] One of Mr. Jackson's attempted justifications for the removal (through his counsel) was the great attention Mr. Jackson needed to provide to the SMS case and that the trial would be a distraction from his duties as sole shareholder.

5.   United States District Judge Failla, after probing carefully with the Debtor's bankruptcy counsel, suggested that the removal had been for purposes of delay and remanded the case forthwith. The state court proceedings resumed on June 1, 2015. Thereafter, Mr. Jackson filed a new motion to dismiss claiming an entirely new defense which was also found to be without merit by the trial court. After four days of argument and briefing, the trial court denied the motion to dismiss. Mr. Jackson then requested a stay from the appellate court, which was also denied. Four days of jury selection then ensued, and on June 11, 2015, a jury was sworn in. The following morning, minutes before opening statements were to begin, Mr. Jackson filed his second removal of the action to the Southern District of New York. Nine hours later, Judge Failla remanded the matter and issued a stinging rebuke to Mr. Jackson and entered an Order to Show Cause why he and his counsel should not be sanctioned for a pre-textual, egregious abuse of the system.[2]

6.   After two removals to Federal District Court and several other delay tactics employed by Mr. Jackson and his attorneys, the bifurcated jury trial on liability and

---

[1] The weekend before the trial was to begin, counsel for the Movant and the Debtor worked together to prepare for the trial and although Debtor's counsel knew the Debtor was planning the removal/bankruptcy, they failed to inform the Movant of anything.

[2] A true and correct copy of the Order to Show Cause is attached hereto as Exhibit "A."

3

entitlement to punitive damages commenced on June 15, 2015 in the New York Supreme Court. After nearly a month of trial, the jury returned a verdict in the amount of $5 million in favor of Ms. Leviston (the "Verdict"), and found that punitive damages should be assessed against Mr. Jackson.[3] In doing so, the jury determined that Mr. Jackson intentionally caused severe emotional distress to Ms. Leviston. It should be noted that although Mr. Jackson had claimed his schedule was the issue initially and that he needed to tend to SMS, there has been minimal activity in the SMS bankruptcy, other than the creditor's meeting, at which he did not appear. Nor did he attend even one second of the trial.

7. On the morning of July 13, 2015, when the punitive damages phase of the trial was set to commence, and to which the Debtor was subpoenaed to appear to testify, the Debtor filed the instant Chapter 11 bankruptcy petition to evade showing up at trial.

8. When the Honorable Paul Wooten, the State Court judge presiding over the trial, was informed of the bankruptcy filing, he noted on the record his frustration with the delays which he called "torturous. He also noted that "based on the time and effort that has been put into this case, every effort should be made to have this matter resolved before this particular jury that has rendered the special verdict". See the transcript in the Matter of Lastonia Leviston v. Curtis Jackson, July 13, 2015, page 1454, Lines 15-14.[4]

9. Judge Wooten is holding the jury until Monday to give Movant an opportunity to obtain stay relief, so that the if the relief is granted, the punitive damages

---

[3] A true and correct copy of the jury Verdict is annexed hereto as Exhibit "B".
[4] A true and correct copy of transcript is annexed hereto as Exhibit "C".

4

phase of the trial can proceed before this jury.

## RELIEF REQUESTED

10.     The Movant requests relief from the automatic stay for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code in order to proceed with the Federal Court Hearing against the Debtor.

## BASIS FOR
## RELIEF REQUESTED

11.     The Court must weigh the factors set forth in In re Sonnax Industries, Inc., 907 F. 2d 1280, 1285 (2d. Cir. 1990) (the "Sonnax Factors") in determining whether there is "cause" "to modify the stay to permit the continuation of litigation in another forum…." In re Ice Cream Liquidation, Inc., 281 B.R. 154, 165 (Bankr. D. Conn. 2002).  The applicable Sonnax Factors favor relief from the automatic stay.  In sum and as set forth in more detail below, a Verdict already entered in the State Court Action, and the only matter left to resolve in the State Court is whether there are punitive damages to be awarded; there is a lack of connection or interference with the bankruptcy case if Movant is permitted to proceed against the Debtor; the State Court Action does not involve the Debtor as a fiduciary; proceeding with the State Court Action against the Debtor will not prejudice the interests of other creditors; Movant's success in the State Court Action against the Debtor will not result in a judicial lien avoidable by the Debtor; the interests of judicial economy and the expeditious and economical resolution of litigation favors allowing Movant to proceed against the Debtor; and the impact of the stay on the parties and balance of harms favors the Movant.

5

12. In <u>In re Sonnax Industries, Inc.</u>, 907 F.2d at 1285, the Second Circuit listed a number of factors to consider in determining whether the stay should be lifted in order to permit litigation to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

<u>Sonnax</u>, 907 F.2d at 1286. It is recognized that "[n]ot every one of these factors will be relevant in every case." <u>Schneiderman v. Bogdanovich</u> (<u>In re Bogdanovich</u>), 292 F.3d 104, 110 (2d Cir. 2002).

13. Here, a consideration of the relevant <u>Sonnax</u> factors militates in favor of granting relief from the stay. Specifically:

(a) A Verdict has already rendered against the Debtor and relief from the stay would result in a complete resolution of the issues concerning the amount of punitive damages associated with the Verdict; notably, the judge in the State Court Action is holding the jury until Monday to ensure that the issue of the amount of punitive damages is able to be addressed as soon as the stay is lifted;

6

(b) There is a lack of any connection with or interference with the bankruptcy case, in the sense that the State Court Action is a non-core proceeding that does not depend upon the filing of a case under title 11 for its existence, see Weiner's, Inc. v. T.G. & Y. Stores Co., 191 B.R. 30, 34 (S.D.N.Y. 1996) *(citing In re Lipstein,* 1995 WL 675486, at *1 (S.D.N.Y. Nov. 14, 1995), (holding that tort claims that "could have been brought outside the bankruptcy environment" are non-core);

(c) The State Court Action does not involve the Debtor as a fiduciary;

(d) The State Court Action would not prejudice the interests of creditors; indeed, full resolution of the damages issue would only serve to dictate whether the Debtor can propose and confirm a viable plan of reorganization. Also, resolution of the State Court Action will not prejudice the interest of the Debtor's other creditors because stay relief will be limited to the entry of a final judgment and will not extend to the enforcement of a judgment.

(e) Movant's success in the State Court Action against the Debtor will not result in a judicial lien avoidable by the Debtor;

(f) Continuation of the State Court Action would further the interests of judicial economy and the expeditious and economical resolution of the litigation. The New York State Court is the most appropriate and efficient forum to determine the amount of punitive damages because the New York Supreme Court is already well-versed with the facts, issues and parties in that action after years of litigation and a Verdict has already entered. Additionally, the New York

7

Supreme Court is prepared to continue with conducting a jury trial this upcoming Monday and is holding the jury for that purpose; and

(g)    The balance of the harms favors continuation of the State Court Action since the Debtor is a party to and will be able to assert his defenses to the damages in that action.

14.    Based upon the foregoing factors, the Movant respectfully submits that cause exists to lift the automatic stay in order to permit continuation of the State Court Action against the Debtor.

15.    When pending litigation is at an advanced stage, as it is here, courts routinely grant stay relief to allow the action to proceed in the original forum. See, e.g., In re: KANGADIS FOOD INC. d/b/a The Gourmet Factory, Debtor, 2014 WL 4164627 (Bankr. E.D.N.Y. 2014) In re Consol. Distrib., Inc., 2013 WL 3929851 at *11 (Bankr. E.D.N.Y. 2013) (granting relief from automatic stay where the "District Court Judge [wa]s already well-versed with the facts, issues and parties in that action after two years of litigation," and the action "was trial-ready prior to the Debtor's bankruptcy filing"); In re Laventhol & Horwath, 139 B.R. 109, 116-17 (S.D.N.Y. 1992) (district court had "intimate knowledge" of the case and to hold otherwise would be to condone "cynical manipulation of the federal judicial system"); In re Project Orange Ass., LLC, 432 B.R. 89, 108 (Bankr. S.D.N.Y. 2010) (granting relief from automatic stay where state court justice was "quite familiar with the litigation" because he "presided over discovery, motion practice and conferences," and petition was filed "on the eve of the hearing on the summary judgment motion").

**WHEREFORE,** the Movant respectfully requests an order granting relief from the automatic stay and such other or further relief as is just, equitable and proper.

Dated:  Bridgeport, Connecticut
        July 13, 2015

> MOVANT,
> LASTONIA LEVISTON
>
> By: /s/ Elizabeth J. Austin
>     Elizabeth J. Austin (ct04384)
>     Jessica Grossarth (ct23975)
>     Pullman & Comley, LLC
>     850 Main Street
>     P.O. Box 7006
>     Bridgeport, CT  06601-7006
>     Telephone:  (203) 330-2000
>     Facsimile:  (203) 576-8888
>     E-Mail:  eaustin@pullcom.com
>     jgrossarth@pullcom.com
>     Her Attorneys