**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| **CURTIS JAMES JACKSON, III,** | Case No. 15-21233 (AMN) |
| Debtor. | |

**UNITED STATES TRUSTEE'S MOTION FOR AN ORDER
DIRECTING THE APPOINTMENT OF AN EXAMINER**

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (a)(5), respectfully moves, through counsel, for an order directing the appointment of an examiner under 11 U.S.C. § 1104(c)(1) and/or (2) for the chapter 11 case of Curtis James Jackson, III ("Debtor"). In support of this motion, the United States Trustee, through counsel, respectfully represents and alleges as follows:

**PRELIMINARY STATEMENT**

Unsecured creditors Sleek Audio, LLC, Lastonia Leviston, and SunTrust Bank ("Creditor Group") have filed pleadings with the Court which raise serious concerns about the veracity of the financial information provided by the Debtor to the Court and his creditors. Specifically, the Creditor Group suggests that the Debtor's postings on social media directly conflict with the disclosures made by the Debtor in his court filings. Notably, these postings have also been the subject of articles appearing in the media. The Debtor's filed response to the allegations downplays the postings as harmless "branding" which the Debtor asserts ultimately inures to the benefit of creditors. However, these postings – whether true or not – are, at a minimum, openly contemptuous of the Bankruptcy Code and process and, if true, are potential evidence of serious

1

misconduct.

Given the serious nature of the allegations and the need to protect the integrity and transparency of the bankruptcy process, the appointment of an examiner to investigate these allegations, garner a true and accurate picture of the Debtor's financial condition, and to file a report with the Court is warranted and necessary to protect the estate and its creditors. Section 1104(c) authorizes the Court to direct the United States Trustee to appoint an examiner, upon the request of a party in interest or the United States Trustee, where such appointment is in the interests of creditors and other interests of the estate or where a debtor's fixed, liquidated unsecured debts exceed $5 million dollars, exclusive of debts owed for goods, services, taxes or debts to insiders. Because the Debtor's fixed, liquidated unsecured debts exceed $5 million dollars and because of the serious nature of the allegations being made, the appointment of an examiner is warranted in this case. Accordingly, the United States Trustee requests that the Court direct the United States Trustee to appoint an examiner in this case to conduct an investigation concerning the Debtor's assets, post-petition income and post-petition expenses as follows: (1) identify the Debtor's post-petition income from all sources, (2) identify the Debtor's uses of post-petition income, (3) examine the Debtor's monthly operating reports ("MORs") for accounting accuracy; and (4) examine whether the Debtor is fulfilling all of his fiduciary duties and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all assets and causes of action.

## BACKGROUND

1. Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-296 (3d Cir.1994) (noting that United States Trustee

has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing United States Trustee as "watchdog").

2. Under 11 U.S.C. §§ 307 and 1104, the United States Trustee has standing to be heard on this Motion.

3. Due to a lack of unsecured creditors interested in serving, the United States Trustee has not appointed a committee of unsecured creditors in this case.

4. The Creditor Group has filed a Disclosure Statement and Plan (ECF 308 and 307, respectively) which provide for the appointment of a panel trustee in the District of Connecticut, Richard M. Coan, as a trustee with control over all of the Debtor's affairs and with all of the powers of a chapter 11 trustee under Section 1106. The Disclosure Statement raises a number of concerns about the level and accuracy of the information disclosed by the Debtor during his bankruptcy case. In particular, relying on and citing to the Debtor's posts to his social media accounts and other news reported on the internet, the Disclosure Statement raises concerns regarding the veracity of the information the Debtor has provided to the Court and his creditors.

5. The Debtor has filed an objection to the Disclosure Statement wherein he dismisses the allegations made by the Creditor Group as nothing more than the Debtor's attempts to promote his brand for the benefit of creditors.   ECF 336.

6. The appointment of an examiner is necessary to protect the estate and its creditors and to preserve the integrity of the Chapter 11 process. Section 1104(c)(1) authorizes the appointment of an examiner, upon the request of a party in interest or the United States Trustee, where such appointment is in the interests of creditors and other interests of the estate and Section 1104(c)(2) authorizes such appointment where a debtor's fixed, liquidated unsecured debts exceed $5 million

dollars, exclusive of debts owed for goods, services, taxes or debts to insiders. To date, proofs of claim filed by the Creditor Group exceed $28 million and the Debtor has not objected to same. The conduct of the Debtor should be investigated by an independent party and publicly reported to the Court to further the Bankruptcy Code's goals of transparency and disclosure to parties in interest.

7. The United States Trustee seeks the appointment of an examiner to conduct an investigation concerning the Debtor's assets, post-petition income and post-petition expenses as follows: (1) identify the Debtor's post-petition income from all sources, (2) identify the Debtor's uses of post-petition income, (3) examine the Debtor's MORs for accounting accuracy; and (4) examine whether the Debtor is fulfilling all of his fiduciary duties and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all assets and causes of action.

**FACTS**

8. The Debtor, also known as "50 Cent," filed a voluntary chapter 11 petition on July 2015 ("Petition Date"). The Debtor is a well-known recording artist who, in addition to his music, has a wide variety of business interests and entities. *See* Amended Schedule B at ECF 60.

9. One of the Debtor's companies, SMS Promotions, LLC, has its own pending chapter 11 case here in Connecticut bearing case number 15-20901. SMS Promotions, LLC is engaged in the business of promoting boxers and boxing events. The law firms of Neligan Foley and Zeisler & Zeisler represent SMS Promotions, LLC.

10. The Debtor filed his chapter 11 case on the eve of the trial of the punitive damages phase of an action pending against him by creditor Lastonia Leviston for intentional infliction of emotional distress and violation of the New York Civil Rights Law ("Leviston Suit"). ECF 7.

During the first week of the Debtor's chapter 11 case, this Court granted relief from stay to Ms. Leviston to proceed with the trial on the Leviston Suit. ECF 20. The Leviston Suit resulted in a $7 million jury verdict against the Debtor.

11. The Debtor is currently operating his businesses and managing his affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

12. No trustee or examiner has been appointed in this case. Prior to this motion, no party has sought the appointment of a trustee or an examiner.

13. The Debtor's primary bankruptcy counsel is also Neligan Foley and Zeisler & Zeisler. ECF 185 and 179. To address a conflict objection raised by the United States Trustee (ECF 98), the Court required the Debtor to obtain conflicts counsel. The Court approved Reid & Riege as conflicts counsel to the Debtor. ECF 180.

14. The Debtor's exclusive period to file a plan under Section 1121 has expired without extension. *See* case docket.

*Assets and Liabilities*

15. The Debtor's Amended Schedule B lists the aggregate value of his personal property at $15,562,899.01, including a Bentley automobile and significant business interests. *See* Amended Schedule B at ECF 60.

16. The Debtor owns residences in Farmington, Connecticut, Valley Stream, New York, and Atlanta, Georgia, collectively valued at $9.286 million, of which only the Connecticut residence is subject to a mortgage, with such mortgage being in favor of SunTrust Mortgage in the amount of $1.02 million. *See* Schedules A and D at ECF 55.

17. The Debtor lists undisputed priority unsecured debts totaling $855,091.00 owed for child support. *See* Schedule E at ECF 55.

18. The Debtor lists unsecured debts totaling $30,632,836.81 on Schedule F. *See* Schedule F at ECF 55. Of this amount, over $4.4 million is undisputed and includes an undisputed $4 million debt owed to SunTrust Bank. *Id.* SunTrust Bank has filed a Proof of Claim in the amount of $3.89 million ("POC 16"). To date, the Debtor has not objected to POC 16.

19. Of the $30.6 million in debt listed on Schedule F, $7 million is listed as a disputed debt owed to Ms. Leviston and $18.4 million is listed as a disputed debt owed to Sleek Audio, LLC. *See* Schedule F at ECF 55. Ms. Leviston has filed a Proof of Claim in the amount of $7 million ("POC 5"). Sleek Audio, LLC has filed a Proof of Claim in the amount of $18.1 million ("POC 7"). To date, the Debtor has not objected to POC 5 or POC 7.

*Creditor Group Disclosure Statement and Plan*

20. On January 14, 2016, the Creditor Group filed a Disclosure Statement and Plan of Reorganization ("Plan") which proposes a combination of a reorganization and a liquidation of the Debtor's assets to pay creditors. ECF 308 and 307, respectively.

21. The Disclosure Statement and Plan provide for the appointment of a panel trustee in the District of Connecticut, Richard M. Coan, as a trustee with control over all of the Debtor's affairs and with all of the powers of a chapter 11 trustee under Section 1106. *Id.*

22. Under the Plan, all of the Debtor's income and assets are controlled by Mr. Coan. *Id.*

23. In performing his obligations under the Plan, Mr. Coan is required to consult with a committee comprised of the Creditor Group. *Id.*

24. On February 15, 2016, the Debtor filed an objection to the Disclosure Statement which raises a number of issues, including an allegation that the proposed Plan violates the Thirteenth Amendment ("Objection").   ECF 336.

*Questions Raised In Creditor Group Disclosure Statement*
*Regarding Reporting of Income, Expenses and Assets*

25.  The Disclosure Statement contains reprints of various postings on the internet by the Debtor in October 2015, November 2015 and December 2015 that depict large sums of money in various household locations: a refrigerator with piles of cash, the Debtor laying down on a bed surrounded by piles of cash, and the Debtor sitting next to a closet door with money on the floor spelled out in the word "BROKE." *See* Disclosure Statement at pages 14 and 15.

26. The Disclosure Statement discusses various postings by the Debtor on social media about his post-petition appearances and performances and alleges that the Debtor has failed to account for and disclose the income earned from same. *See* Disclosure Statement at pages 14-16.

27. The Disclosure Statement discusses reports by various news and social media websites that the Debtor claims to be building a residence in Africa and alleges that the Debtor has failed to disclose same on his Schedules or Statement of Financial Affairs or disclose same to his creditors. *See* Disclosure Statement at pages 15-16.

28.  The Disclosure Statement claims that there are "material issues as to (i) the completeness of the disclosure by the Debtor of his personal assets, and (ii) the Debtor's accounting of his post-petition business revenues and assets." Disclosure Statement at page 12. The Creditor Group criticizes the level of information disclosed by the Debtor during his bankruptcy case and, in particular, raises concerns that the Debtor has provided insufficient

information and/or has failed to fully disclose the following:

    a. "material amounts of cash" depicted in post-petition pictures posted on the Debtor's Instagram account. *See* Disclosure Statement at pages 14-15;

    b. income earned by the Debtor through various post-petition performances. *Id.* at pages 6, 7 and 9;

    c. income earned by the Debtor through his various business interests, including identifying the sources of same. *Id.*;

    d. details as to the business expenses claimed by the Debtor. *Id.* at page 7;

    e. details in MORs as to income and expenses. *Id.*;

    f. information regarding the values of the Debtor's business interests. *Id.* at page 12;

    g. lack of full disclosure in the Debtor's Schedules and Statement of Financial Affairs as to assets owned by the Debtor and litigation involving same. *Id.* at pages 12-13; and

    h. inaccurate listing in the Statement of Financial Affairs of payments made by the Debtor to insiders and creditors. *Id.* at page 13.

    29.  In his Objection to the Disclosure Statement, the Debtor strongly disputes the Creditor Group allegations as being unfounded. The Debtor characterizes the pictures from the Debtor's social media accounts as efforts to maintain the Debtor's brand and image and argues that the pictures of the Debtor "have no relevance to the Plan and serve no purpose in the Disclosure Statement other than to disingenuously smear the Debtor and bolster their preposterous Plan." Objection at paragraph 34 on page 19.

## **LEGAL ARGUMENT**

### **The Court Should Order the Appointment of an Examiner under Section 1104(c)(1) and/or (2) of the Bankruptcy Code.**

The Debtor's post-petition actions, personally and/or through the internet and social media, have projected the image of a debtor that has significant earnings, lives a lavish lifestyle within the public eye and is focused on his career, not on resolving his debts and exiting bankruptcy. Indeed, the intersection of the very public nature of the Debtor's life and his bankruptcy case has generated regular discussion on the internet and in the news media that has invited a public perception that a bankruptcy case is an appropriate vehicle for publicity without sufficient financial accountability, rather than a legal proceeding to restructure one's finances and repay creditors.

Bankruptcy is meant to be a safe harbor for the honest but unfortunate debtor. The bankruptcy system depends on full disclosure by a debtor and the public confidence in the bankruptcy system erodes when allegations of misconduct are not investigated. It is in the best interest of the Debtor's creditors that a neutral party be appointed to examine the Debtor's finances and assets, provide public disclosure of same and address the questions of what the Debtor is actually doing with his money.

    a. *Standard for appointment of an examiner.*

The appointment of a chapter 11 examiner is governed by 11 U.S.C. § 1104(c), which provides as follows:

> (c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the

>   debtor of or by current or former management of the debtor, if –
>
>> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>>
>> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

Section 1104(c) expressly provides that the court cannot appoint an examiner if a trustee is appointed. This limitation, however, was not intended to require the denial of a motion to appoint a trustee as a precondition to the appointment of an examiner. *See Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 855 (Bankr. S.D.N.Y. 1994). In *Keene*, the court rejected the creditors' committee's argument that the court could not appoint an examiner unless it first refused to appoint a trustee, holding that "[a] motion to appoint an examiner stands on its own, and need not be part of an unsuccessful motion to appoint the trustee." *Id.; see also In re Gilman Serv., Inc.*, 46 B.R. 322, 327 (Bankr. D. Mass. 1985) (court granted United States Trustee's motion to appoint examiner, where no separate motion to appoint a trustee had been filed).

From the express language of the statute, it is apparent that appointment of an examiner is premised on four factors being satisfied: <u>First</u>, the debtor must still be in possession of the estate and a trustee must not have been appointed. <u>Second</u>, a plan must not have been confirmed. <u>Third</u>, a party in interest or the United States Trustee, as is the case here, must request the appointment. <u>Lastly</u>, one of the conditions set out in (c)(1) or (c)(2) must be satisfied – either the appointment of the examiner is in the best interests of the creditors <u>or</u> the specified unsecured debts exceed $5 million. *See, e.g., In re UAL Corp.*, 307 B.R. 80, 84 (Bankr. N.D.Ill. 2004) ("[A]ppointment of an examiner is mandatory if the four conditions are met, but the court retains

the discretion to determine the nature and scope of the examiner's investigation"); *In re Residential Capital, LLC*, 474 B.R. 112 (Bankr. S.D.N.Y. 2012) (discussing mandatory requirement to appoint when conditions are met).

The appointment of an examiner is mandatory if the Court finds that the specific debt threshold provisions of Section 1104(c)(2) are met. *See, e.g., Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500-501 (6th Cir. 1990); *Loral Stockholders Protective Comm. v. Loral Space & Commc'ns, Ltd. (In re Loral Space & Commc'ns, Ltd.),* 2004 WL 2979785, *5 (S.D.N.Y. Dec. 23, 2004), *rev'g*, 313 B.R. 57 (Bankr. S.D.N.Y. 2004); *Walton v. Cornerstone Ministries, Invs., Inc. (In re Cornerstone Ministries Invs., Inc.)*, 398 B.R. 77, 84 (N.D. Ga. 2008); *but see In re Residential Capital, LLC*, 474 B.R. at 119-121 (Bankr. S.D.N.Y. 2012) (surveying cases; imposing consideration of whether examiner is appropriate despite having met criteria of Section 1104(c)(2) and finding examiner should be appointed); *In re Dewey & LeBoeuf*, 478 B.R. 627, 638 (Bankr. S.D.N.Y. 2012) (imposing consideration of whether examiner is appropriate despite having met criteria of Section 1104(c)(2) and finding examiner should not be appointed). Factors some courts have considered when determining the appropriateness or scope of an examiner include the timing of the request, whether the request is a litigation tactic, the actual need for the examiner, and the cost and delay on the case. *In re Residential Capital, LLC*, 474 B.R. at 119-121.

  b. *An examiner is warranted and appropriate in the Debtor's case.*

Here, there cannot be any disagreement that all of the factors of Section 1104(c) are met and that an examiner is appropriate. The Debtor is an operating debtor in possession, no plan has been confirmed, the Debtor's debts exceed the statutory threshold, and the United States Trustee is seeking the appointment of an examiner. Further, the cost, when viewed in the context of an

already expensive case due to the Debtor's employment of eleven professionals to date, is reasonable. Most importantly, the Creditor Group, which constitutes the majority of the unsecured creditor body, has raised significant concerns about the Debtor's financial reporting and the disclosure of the Debtor's assets and therefore it is in the best interest of the Debtor's creditors that the issues raised by the Creditor Group be investigated by a neutral party. For all of the factual reasons set forth herein, the appointment of an examiner is warranted and is clearly in the best interests of the estate and its creditors.

## **CONCLUSION**

WHEREFORE, the United States Trustee respectfully requests that the Court direct the appointment of an examiner to investigate and report on the following: (1) identify the Debtor's post-petition income from all sources, (2) identify the Debtor's uses of post-petition income, (3) examine the Debtor's MORs for accounting accuracy; and (4) examine whether the Debtor is fulfilling all of his fiduciary duties and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all assets and causes of action. The United States Trustee also requests that the Court grant such other and further relief as it may deem just and proper.

Dated: February 22, 2016           Respectfully submitted,
    New Haven, Connecticut      WILLIAM K. HARRINGTON
                                          UNITED STATES TRUSTEE FOR REGION 2

                               By:     /s/ Holley L. Claiborn
                                          Holley L. Claiborn ct 17216
                                          Trial Attorney
                                          Office of the United States Trustee
                                          Giaimo Federal Building, Room 302
                                          150 Court Street
                                          New Haven, CT 06510
                                          (203) 773-2210