## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| CURTIS JAMES JACKSON, III, | § | Case No. 15-21233 (AMN) |
| | § | |
| DEBTOR. | § | |

## PLAN OF REORGANIZATION PROPOSED BY CURTIS JAMES JACKSON, III

**NELIGAN FOLEY LLP**
Patrick J. Neligan, Jr.
Texas State Bar No. 14866000
James P. Muenker
Texas State Bar No. 24002659
325 N. St. Paul
Suite 3600
Dallas, Texas 75201
(214) 840-5300
Fax:  (214) 840-5301

**ZEISLER & ZEISLER, P.C.**
James Berman
558 Clinton Avenue
Bridgeport, CT  06605
(203) 368-5480
Fax:  (203) 367-9678

**COUNSEL FOR THE DEBTOR**

Dated:  March 8, 2016

**ARTICLE I          DEFINITIONS, CONSTRUCTION, AND INTERPRETATION ............ 2**

**ARTICLE II          UNCLASSIFIED CLAIMS.............................................................. 8**

2.01.   Administrative Claims ....................................................................................... 8
2.02.   Priority Tax Claims............................................................................................ 9
2.03    Domestic Support Obligations……………………………………………………9
2.03.   U.S. Trustee Fees ............................................................................................. 10

**ARTICLE III          CLASSIFICATION OF CLAIMS AND INTERESTS ........................ 10**

3.01.   Introduction...................................................................................................... 10
3.02.   Claims Against the Debtor................................................................................ 10

**ARTICLE IV          IDENTIFICATION OF UNIMPAIRED AND IMPAIRED
                            CLAIMS AND INTERESTS ........................................................ 11**

4.01.   Unimpaired Claims .......................................................................................... 11
4.02.   Impaired Claims............................................................................................... 11
4.03.   Controversy Concerning Impairment ............................................................... 11

**ARTICLE V          TREATMENT OF CLAIMS AND INTERESTS .................................... 11**

5.01.   Non-Tax Priority Claims – Class 1 ................................................................... 11
5.02.   Secured Tax Claims – Class 2 .......................................................................... 11
5.03.   Secured Claim of SunTrust Mortgage – Class 3 ............................................... 12
5.04.   Secured Claim of Bentley Financial Services – Class 4 .................................... 13
5.05.   ASCAP Claim – Class 5 ................................................................................... 13
5.06.   General Unsecured Claims – Class 6................................................................. 13
5.07.   Administrative Convenience Claims – Class 7................................................... 14

**ARTICLE VI          MEANS FOR EXECUTION AND IMPLEMENTATION OF
                            THIS PLAN ................................................................................. 14**

6.01.   Sources of Cash for Plan Distributions............................................................. 14
6.02.   Post Effective Date Management...................................................................... 14

**ARTICLE VII          TREATMENT OF EXECUTORY CONTRACTS.................................... 15**

7.01.   General Treatment of Executory Contracts: Rejected ...................................... 15
7.02.   Cure Payments and Release of Liability............................................................ 15
7.03.   Bar to Rejection Claims................................................................................... 15
7.04.   Rejection Claims.............................................................................................. 15

**ARTICLE VIII   CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE
                            DATE; EFFECT OF PLAN CONFIRMATION ..................................... 16**

8.01.   Conditions Precedent to Confirmation Date ..................................................... 16
8.02.   Conditions Precedent to the Effective Date ...................................................... 16
8.03.   Consequences of Non-Occurrence of Effective Date ........................................ 16

**ARTICLE IX          EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE...... 17**

9.01.   Binding Effect.................................................................................................. 17
9.02.   Vesting of Assets .............................................................................................. 17
9.03.   Assertion of Causes of Action, Defenses and Counterclaims............................ 18
9.04.   Discharge of Debtor........................................................................................... 18
9.05.   Injunction .......................................................................................................... 19
9.07.   Term of Bankruptcy Injunction or Stays ........................................................... 19
9.08.   Effectuating Documents; Further Transactions; Timing .................................... 19

**ARTICLE X       OBJECTIONS TO CLAIMS; DISTRIBUTIONS................................... 20**

10.01.  Objections to Claims.......................................................................................... 20
10.02.  Objection Deadline ........................................................................................... 20
10.03.  Settlement of Objections to Claims ................................................................... 20
10.04.  No Interest on Claims ........................................................................................ 21
10.05.  Setoffs by the Debtors; No Waiver .................................................................... 21
10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims ...................... 22
10.07.  Distributions Under the Plan.............................................................................. 22
10.08.  Duty to Disgorge Overpayments ....................................................................... 22

**ARTICLE XI       ACCEPTANCE OR REJECTION OF THE PLAN............................. 23**

11.01.  Impaired Classes Entitled to Vote...................................................................... 23
11.02.  Acceptance by an Impaired Class ...................................................................... 24
11.03.  Section 1129(b) Cramdown ............................................................................... 24

**ARTICLE XII       RETENTION OF JURISDICTION .................................................. 24**

12.01.  Jurisdiction ....................................................................................................... 24
12.02.  Examination of Claims ...................................................................................... 24
12.03.  Determination of Disputes ................................................................................ 25
12.04.  Additional Purposes.......................................................................................... 25
12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction.................................. 27

**ARTICLE XIII   MISCELLANEOUS PROVISIONS............................................... 27**

13.01.  General Notices.................................................................................................. 27
13.02.  Plan Supplement ............................................................................................... 27
13.03.  Exemption From Transfer Taxes ....................................................................... 27
13.04.  Asserting and Curing Default Under the Plan .................................................... 27
13.05.  Revocation or Withdrawal of the Plan............................................................... 28
13.06.  Modification of the Plan .................................................................................... 28
13.07.  Computation of Time ........................................................................................ 28
13.08.  Due Authorization............................................................................................. 28
13.09.  Implementation ................................................................................................. 28
13.10.  Execution of Documents.................................................................................... 28
13.11.  Bankruptcy Restrictions.................................................................................... 29
13.12.  Ratification........................................................................................................ 29
13.13.  Integration Clause............................................................................................. 29
13.14.  Interpretation..................................................................................................... 29
13.15.  Severability of Plan Provisions......................................................................... 29
13.16.  Governing Law ................................................................................................. 29

## INTRODUCTION

Curtis James Jackson, III proposes this Plan pursuant to Bankruptcy Code section 1121(a).  Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, businesses, properties, results of operations, resolutions of certain material disputes, projections for future operations and liquidation, risk factors, summary and analysis of the Plan, and certain related matters.

THE DEBTOR URGES ALL HOLDERS OF CLAIMS TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.  NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES OR EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

The Distributions to be made pursuant to this Plan to Holders of Allowed Claims, in each of the Classes of Claims against the Debtor set forth in Article III of this Plan, are set forth in Article V of this Plan.

## SUMMARY OF PLAN[1]

The Plan provides for the reorganization of the Debtor and the payment of Allowed Claims over not more than five (5) years through: (a) the orderly liquidation of certain assets of the Debtor; and (b) the Debtor's commitment to contribute substantial funds from his future income.  More specifically, the Debtor will contribute approximately $23 million in cash over the life of the Plan to fund the Plan, and will also contribute up to 70% of the net proceeds of certain litigation.  As a result, all administrative claims, priority claims and secured claims will be paid in full and unsecured creditors will receive a substantial distribution (and significantly more than they would receive in a chapter 7 liquidation).

Additionally, the Plan embodies a settlement between the Debtor and his two largest creditors – Sleek Audio, LLC and Lastonia Leviston, as set forth in more detail in the body of the Plan.  The settlement embodied in the Plan facilitates the Plan and benefits all stakeholders by, among other things, (i) resolving pending litigation that would otherwise be both costly and time consuming for the Debtor and the bankruptcy estate; and (ii) liquidating the two largest unsecured claims against the Debtor on terms favorable to the Debtor and the bankruptcy estate. Finally, the Plan incentivizes the Debtor to satisfy his obligations to fund the Plan as soon as possible, so as to accelerate payments to creditors.

## ARTICLE I
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below.  A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to

---

[1] This Summary is intended solely to provide an overview of the Plan.  The Summary shall not be binding on the Debtor, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

that term, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to the Plan are incorporated herein.

1.01. *"Additional Cash Contribution"* means Cash in an amount of Six Million Dollars ($6,000,000) to be paid by the Debtor to the Disbursing Agent during the term of the Plan; provided, however, that within ten (10) Business Days after the closing on the sale of the Connecticut Property the Debtor shall pay the Net Proceeds of sale to the Disbursing Agent up to a maximum of Six Million Dollars ($6,000,000), and, provided, further, that the Additional Cash Contribution must in any event be fully paid to the Disbursing Agent no less than thirty (30) days prior to the five year anniversary of the Effective Date.

1.02. *"Administrative Claim"* means any Claim for an Administrative Expense.

1.03. *"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, Cure Claims, and all fees and charges assessed against the Debtor's Estate under the Bankruptcy Code.

1.04. *"Allowance Date"* means the date on which a Claim, an Administrative Claim, or any Secured Claim becomes an Allowed Claim.

1.05. *"Allowed"* means, when used with respect to a Claim (including any Administrative Claim), or any portion thereof, a Claim, Administrative Claim, or any portion thereof (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or a Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan.

1.06. *"Annual Cash Contribution"* means Cash in an aggregate amount of Ten Million Dollars ($10,000,000) to be paid by the Debtor to the Disbursing Agent, in annual minimum Cash payments of not less than Two Million Dollars ($2,000,000) per year. Each minimum annual payment must be made not later than the anniversary date of the Effective Date, and the aggregate $10,000,000 must be fully funded not less than thirty (30) days prior to the five year anniversary of the Effective Date.

1.07. *"ASCAP"* means the American Society of Composers, Authors and Publishers.

**1.08.** *"Avoidance Action"* means any cause of action under any of sections 544, 545, 546, 547, 548, 549, 550, 551 or 553(b) of the Bankruptcy Code, which actions are waived except as specified in the Plan.

**1.09.** *"Bankruptcy Case"* means the Debtor's bankruptcy case no. 15-21233 (AMN) under chapter 11 of the Bankruptcy Code.

**1.10.** *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**1.11.** *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Connecticut, Hartford Division, or such other court having jurisdiction over this case.

**1.12.** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

**1.13.** *"Business Day"* means any day on which commercial banks are open for business in New York, New York.

**1.14.** *"Cash"* means legal tender of the United States of America or Cash equivalents.

**1.15.** *"Cause of Action"* means any cause of action or right to payment arising under federal, state or common law, including Avoidance Actions, that the Debtor or the Estate may hold against any Person.

**1.16.** *"Claim"* shall have the meaning provided in section 101(5) of the Bankruptcy Code.

**1.17.** "*Class*" means a category of holders of Claims as set forth in the Plan.

**1.18.** *"Collateral"* means any property of the Debtor subject to a valid and enforceable lien to secure the payment of a Claim.

**1.19.** *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.20.** *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128, scheduled to commence on_____, 2016, at __:___ __.m. Eastern Time, and as may be continued from time to time, on confirmation of the Plan.

**1.21.** *"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan.

**1.22.** *"Connecticut Property"* means Jackson's home located at 50 Poplar Hills Drive, Farmington, CT 06032.

**1.23.** *"Contract Rate"* shall mean, with respect to any Claim, the non-default contract rate of interest provided for in the promissory note, loan agreement or other contract, if any, between the Debtor and the Holder of such Claim.

**1.24.** *"Creditor"* shall mean the Holder of a Claim.

**1.25.** *"Cure Claim"* means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

**1.26.** *"Debtor"* means Jackson, and shall also include, where applicable, Jackson from and after the Effective Date as reorganized pursuant to this Plan.

**1.27.** *"Disallowed"* means, when used with respect to a Claim, a Claim or the portion thereof which, in a properly entered order of the Bankruptcy Court, is fully and finally (a) denied allowance, or (b) is estimated for purposes of payment or other Plan Distributions at zero ($0.00). Disallowed means, when used with respect to an Administrative Expense of a professional that is a Fee Claim, an Administrative Expense or portion thereof that is denied by the Bankruptcy Court or other court of competent jurisdiction or that is estimated by the Bankruptcy Court for purposes of payment or other Plan Distributions at zero ($0.00).

**1.28.** *"Disbursing Agent"* means _____.

**1.29.** *"Disbursing Agent Agreement"* means the agreement between the Debtor and the Disbursing Agent, dated as of the Effective Date, substantially in the form set forth in the Plan Supplement.

**1.30.** *"Discharge Date"* means the date upon which the Debtor shall have satisfied his obligations to deliver the full amount of each of the Initial Cash Contribution, the Additional Cash Contribution and the Annual Cash Contribution to the Disbursing Agent.

**1.31.** *"Disclosure Statement"* means the Disclosure Statement of Jackson with respect to this Plan of Reorganization, as approved by the Court, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with any Exhibits thereto.

**1.32.** *"Disputed"* when used with a respect to a Claim, means any such Claim that is listed in the Debtor's Schedules as disputed, contingent or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, any Claim that is disputed by the Debtor in any litigation, lawsuit or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction, or any Claim that is not Allowed.

**1.33.** *"Distribution"* means the property required by this Plan to be distributed to the Holders of Allowed Claims.

**1.34.** *"Domestic Support Obligations"* has the meaning provided in Section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of appropriate jurisdiction.

**1.35.** *"Effective Date"* means the first Business Day that is the later of fifteen days after the Confirmation Date of this Plan if the Confirmation Order is not stayed prior to such date or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay, provided, however, that if the Confirmation Order for this Plan has not become a Final Order by virtue of the commencement of any motion for rehearing or new trial pertaining to any such order or by virtue of the filing of a notice of appeal from any such order, the Debtor may, at its sole option, defer the Effective Date until a date that is not later than eleven (11) days after the Confirmation Order has become a Final Order.

**1.36.** *"Estate"* means the Debtor's estate in this case created pursuant to section 541 of the Bankruptcy Code.

**1.37.** *"Executory Contract"* means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.38.** *"Fee Application"* means an application for the allowance of a Fee Claim.

**1.39.** *"Fee Claim"* means a Claim by a Professional or any other party-in-interest pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.40.** *"Final Decree"* means the final decree entered by the Bankruptcy Court on or after the Effective Date and pursuant to Bankruptcy Rule 3022.

**1.41.** *"Final Order"* means (a) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure may be filed.

**1.42.** *"General Unsecured Claim Assets"* means, collectively, the Pool A Assets and the Pool B Assets.

**1.43.** *"Holder"* means a Person who is the beneficial owner of a Claim. For purposes of a Distribution, a Person must be a Holder as of the Initial Distribution Date. For purposes of voting to accept or reject this Plan, a Person must be a Holder as of the Voting Record Date.

**1.44.** *"Initial Cash Contribution"* means Cash in an amount of Seven Million Dollars ($7,000,000) which shall be paid by the Debtor to the Disbursing Agent and utilized to (i) pay any amounts necessary to satisfy Allowed Administrative Claims, Allowed Non-Tax Priority Claims and Allowed Priority Tax Claims required to be paid under the Plan in the manner set forth herein, and (ii) subject to clause (i), distributed by the Disbursing Agent to the Holders of Allowed Class 6 General Unsecured Claims on the Initial Distribution Date in accordance with the Plan.

**1.45.** *"Initial Distribution Date"* means the means the date by which the Disbursing Agent makes the initial Distribution to the Holders of Allowed Class 6 General Unsecured Claims from the Initial Cash Contribution as otherwise set forth in the Plan, which date shall be not more than 65 days after the Effective Date.

**1.46.** *"Jackson"* means Curtis James Jackson, III.

**1.47.** *"Leviston Claim"* means the claim filed by Lastonia Leviston in the original amount of $7,000,000.

**1.48.** *"Lien"* has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53)

**1.49.** *"Malpractice Claim"* means the claims asserted or which could be asserted by the Debtor against Garvey Schubert Barer, a partnership of professional corporations, R. Bruce Beckner, Hillary H. Hughes, Je Jun Moon and Paul H. Trichero, currently pending in Adversary Proceeding No. 15-02051, or any such other litigation against the foregoing defendants that could be commenced by the Debtor in a court of competent jurisdiction.

**1.50.** *"Maximum Unsecured Claim Distribution"* means either:

(a)    if at least the Target Amount has been paid to the Disbursing Agent by the one year anniversary of the Effective Date, then the maximum percentage Distribution to Holders of Allowed General Unsecured Claims under the Plan, after payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Non-Tax Priority Claims, shall not exceed the following percentages for the year in which the final Distribution to such Holders is made:

| If final Distribution paid in full by : | % distribution on account of Allowed General Unsecured Claim |
|---|---|
| Year 1 Target Date | 74% |
| Year 2 Target Date | 76% |
| Year 3 Target Date | 78% |
| Year 4 Target Date | 80% |
| Year 5 Target Date | 82% |

- or -

(b)      if the Target Amount has not been paid to the Disbursing Agent by the one year anniversary of the Effective Date, then the maximum percentage Distribution to Holders of Allowed General Unsecured Claims under the Plan after payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Non-Tax Priority Claims shall not exceed the following percentages for the year in which the final Distribution to such Holders is made:

| If final Distribution paid in full by | % distribution on account of Allowed General Unsecured Claim |
|---|---|
| Year 1 Target Date | 85% |
| Year 2 Target Date | 87% |
| Year 3 Target Date | 88.5% |
| Year 4 Target Date | 90% |
| Year 5 Target Date | 92% |

1.51.   *Net Proceeds"* means any amounts collected by the Debtor from any disposition of any property, after payment of all reasonable and customary costs and expenses associated therewith which may be required to be paid under applicable law or agreement to effectuate the receipt of such proceeds, including, without limitation, any reasonable attorney fees not otherwise paid under the Plan as an Administrative Expense.

1.52.   *"Non-Tax Priority Claim"* means any Claim that, if Allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim, an Administrative Claim or a Domestic Support Obligation.

1.53.   *"Objection Deadline"* means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof as provided in section 10.02 of the Plan, which date shall be ninety (90) days after the Effective Date unless extended by order of the Bankruptcy Court for good cause shown.

1.54.   "*Ordinary Course of Business*" shall have the meaning given to such term as utilized in Section 363(b) of the Bankruptcy Code.

1.55.   *"Person"* means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

1.56.   *"Petition Date"* means July 13, 2015.

1.57.   *"Plan"* or *"Plan of Reorganization"* means this Plan of Reorganization either in its present form or as it may hereafter be altered, amended or modified from time to time.

1.58.   *"Plan Supplement"* means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which, unless otherwise specified in the Plan, shall be filed by the Debtor no later than ten (10) days before the Confirmation Hearing or such later date as may be

approved by the Bankruptcy Court without further notice to parties in interest, and as may be amended thereafter.   All documents comprising the Plan Supplement shall be in form and substance acceptable to the Debtor.

**1.59.**   *"Pool A Assets"* means the Initial Cash Contribution <u>plus</u> the Annual Cash Contribution <u>plus</u> the Additional Cash Contribution [plus $_____to be paid on account of Avoidance Actions].

**1.60.**   *"Pool B Assets"* means Cash in an amount equal to seventy percent (70%) of any Net Proceeds from the Malpractice Claim.

**1.61.**   *"Priority Tax Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.62.**   *"Professional"* means a Person defined as a professional person in sections 327 or 1103 of the Bankruptcy Code who has been employed pursuant to an order of the Bankruptcy Court in this chapter 11 case and any professional seeking compensation or reimbursement of costs and expenses in connection with this chapter 11 case pursuant to section 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.63.**   "*Rejection Bar Date*" means the day that is 30 days after the entry of the Confirmation Order.

**1.64.**   *"Rejection Damage Claim"* means a Claim by a party to an Executory Contract with the Debtor that has been rejected by the Debtor pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case.

**1.65.**   *"Secured Claim"* means a Claim that is secured by a security interest in or a lien on property of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claim Holder.   Secured Claims shall include Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all security interests or liens senior in priority.

**1.66.**   *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

**1.67.**   *"Sleek"* means Sleek Audio, LLC.

**1.68.**   *"Sleek Audio Claim"* means the claim filed by Sleek on behalf of the Sleek Plaintiffs in the original amount of $18,131,688.65.

**1.69.**    *"Sleek Plaintiffs"* means, collectively, Sleek, Mark Krywko, Michael Krywko, Jason Krywko and Gregory Wysocki.

**1.70.**    *"SunTrust"* means SunTrust Mortgage, Inc., the Holder of a first priority Lien on Jackson's Connecticut Property.

**1.71.**    *"Target Amount"* means Twelve Million Five Hundred Thousand Dollars ($12,500,000).

**1.72.**    *"Target Date"* means the annual anniversary date of the Effective Date as set forth in the definition of Maximum Unsecured Claim Distribution.

**1.73.**    *"United States Trustee"* means the United States Trustee appointed under Section 591, title 28, United States Code to serve in the District of Connecticut.

**1.74.**    *"Unsecured Claim"* means a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim or a Non-Tax Priority Claim.

**1.75.**    *"Voting Record Date"* means the date on which an Order approving the Disclosure Statement under Section 1125 of the Bankruptcy Code is signed.

**ARTICLE II**
**UNCLASSIFIED CLAIMS**

**2.01.    Administrative Claims**.

(a)    **Time for Filing Administrative Claims.**  The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability incurred in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date.  Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

(b)    **Time for Filing Fee Claims.**  Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within sixty (60) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged.  No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order. Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person to whose application the objections are directed or made within thirty (30) days after the filing of the Fee Application subject to objection.  No hearing may be held on a

specific Fee Application until the foregoing objection period with respect to that Fee Application has expired

(c)     **Allowance of Administrative Claims.**  An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(d)     **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date with respect to Administrative Claims against the Debtor, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

(e)     **Administrative Claims Incurred in the Ordinary Course of Business.**  Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such Claims.  Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim.  The Debtor reserves and shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

**2.02.  Priority Tax Claims**.

Except to the extent that an Allowed Priority Tax Claim reasonably determined by the Debtor to be not material in amount with respect to the Debtor's obligations under the Plan has been paid or otherwise satisfied prior to the Initial Distribution Date, each Holder of an Allowed Priority Tax Claim, in full satisfaction, release, settlement, and discharge of and exchange for such Claim, shall receive from the Debtor (a) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim, plus interest, from the Petition Date through the date such Claim is paid in full, on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Confirmation Date occurs, in equal annual installments with the first payment to be due on the later of (i) the Initial Distribution Date or (ii) five (5) Business Days after the date when a Priority Tax Claim becomes

12

an Allowed Priority Tax Claim, and subsequent payments to be due on each anniversary of the Initial Distribution Date, or (b) such other less favorable treatment to which such Holder and the Debtor agree in writing.  Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the Holder thereof shall not assess or attempt to collect such penalty from the Debtor or from any of the assets, and (b) provided that the Debtor has otherwise complied with the terms and provisions of the Plan, the Debtor shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

### 2.03.   Domestic Support Obligations.

On the Effective Date, the Debtor shall make any payments which may be required to comply with any unfunded obligations on account of any Domestic Support Obligations arising under section 1129(a)(14) of the Bankruptcy Code.

### 2.04.   U.S. Trustee Fees.

The Debtor shall timely pay to the United States Trustee all quarterly fees incurred by the Debtor pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case of the Debtor is closed or dismissed.  The Debtor shall serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) after the Effective Date that the Debtor's Bankruptcy Case remains open.

### ARTICLE III
### CLASSIFICATION OF CLAIMS

### 3.01.   Introduction.

All Claims except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

The Plan contemplates separate Classes for the Debtor for voting and distribution purposes.  To the extent a Class contains one or more subclasses, each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims in accordance with Bankruptcy Code section 1122(a).  A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim qualifies within the description of that different Class.  If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim.  A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, satisfied or released before the Effective Date.

**3.02.   Claims Against the Debtor**.

(a)      Class 1:  Non-Tax Priority Claims

(b)      Class 2:  Secured Tax Claims

(c)      Class 3:  Secured Claim of SunTrust Mortgage

(d)      Class 4:  Secured Claim of Bentley Financial Services

(e)      Class 5:  ASCAP Claim

(f)      Class 6:  General Unsecured Claims

(g)      Class 7:  Administrative Convenience Claims

## ARTICLE IV
## IDENTIFICATION OF UNIMPAIRED
## AND IMPAIRED CLAIMS

**4.01.   Unimpaired Claims**

Claims against the Debtors in Classes 1, 2, 5, and 7 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**4.02.   Impaired Claims**

Claims against the Debtor in Classes 3, 4 and 6 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.

**4.03.   Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or any Class of Claims is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

## ARTICLE V
## TREATMENT OF CLAIMS

**5.01.   Non-Tax Priority Claims – Class 1**

On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority Claim, each Holder of such Allowed Non-Tax Priority Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (y) Cash in an amount equal to the Allowed amount of its Non-Tax Priority Claim, or (z) such other, less favorable treatment to which such Holder and the Debtor agrees in writing.  To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the

statutory cap applicable to such Claim, such excess amount shall be treated as a Class 6 General Unsecured Claim against the Debtor.

### 5.02.    Secured Tax Claims – Class 2

With respect to any Allowed Secured Tax Claim, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Secured Tax Claim, each Holder of an Allowed Secured Tax Claim shall receive from the Debtor in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Secured Tax Claim, (x) Cash equal to the Allowed Amount of its Allowed Secured Tax Claim, plus interest thereon at the rate provided under applicable non-bankruptcy law pursuant to Section 511 of the Bankruptcy Code from the Petition Date through the date such Claim is paid in full, (y) the Collateral securing the Allowed Secured Tax Claim, or (z) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor.

The Holder of a Secured Tax Claim for ad valorem taxes for any tax year from 2015 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law.

Notwithstanding any other provision of the Plan, each Holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor, free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (a) the Holder of such Allowed Secured Tax Claim (i) has been paid Cash equal to the value of its Allowed Secured Tax Claim and/or (ii) has received a return of the Collateral securing its Allowed Secured Tax Claim, or (iii) has been afforded such other treatment as to which such Holder and the Debtor have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable.  To the extent that a Secured Tax Claim exceeds the value of the interest of the Estate in the property that secured such Claim, such Claim shall be deemed Disallowed pursuant to Bankruptcy Code section 502(b)(3).

If the Debtor fails to timely make any payment to a Holder of an Allowed Secured Tax Claim as required under Section 5.02 of the Plan, the affected Holder of an Allowed Secured Tax Claim may send written notice of default to the Debtor.  If the default is not cured within twenty-one (21) days after notice of default is mailed, such Holder may proceed with any remedies for collection of amounts due under applicable non-bankruptcy law without further order of the Bankruptcy Court.

### 5.03.    Secured Claim of SunTrust Mortgage – Class 3

(a)    <u>Allowance</u>.  The Allowed amount of the Class 3 Secured Claim shall be equal to the aggregate of (1) $1,022,587.74, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Connecticut Property is sold and such claim is paid in full, plus (3) fees (including, without limitation reasonable attorneys' fees) and expenses of SunTrust from the Petition Date through the Effective Date in an amount agreed to by the Debtor and SunTrust or allowed by Final Order of the Bankruptcy Court and in accordance with Section 506(b) of the

Bankruptcy Code, less any payments made on account of such Claim from and after the Petition Date that are required to be applied as payments of principal pursuant to an Order of the Bankruptcy Court.

(b)    Treatment.  Except to the extent that the Holder of the Allowed Class 3 Secured Claim agrees to less favorable treatment of such Allowed Class 3 Secured Claim, the Holder of the Allowed Class 3 Secured Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class 3 Secured Claim, Cash in an amount equal to such Allowed Class 3 Secured Claim on the later of (i) the Effective Date, or (ii) the date the Connecticut Property is sold and the Debtor has received the Net Proceeds of such sale in immediately available funds.

In the event that the Connecticut Property is sold on or before the Effective Date and the Debtor has received the Net Proceeds of such sale in immediately available funds, then on the Effective Date, the Net Proceeds shall be paid first to the Holder of the Allowed Class 3 Secured Claim to the extent of the then unpaid amount of its Allowed Class 3 Secured Claim, including any accrued and unpaid interest and recoverable fees and expenses incurred through the date of sale.   All Net Proceeds of sale remaining after payment of the then unpaid amount of the Allowed Class 3 Secured Claim shall be retained by the Debtor and distributed in accordance with the remaining terms and conditions of the Plan.

In the event that the Connecticut Property has not been sold on or before the Effective Date, then commencing on the first (1st) Business Day of the first full month after the Effective Date, the Debtor shall pay interest to the Holder of the Allowed Class 3 Secured Claim monthly in arrears on the outstanding principal amount of the Allowed Class 3 Secured Claim at the Contract Rate in effect under the loan documents until the Connecticut Property is sold and the Allowed Class 3 Secured Claim is satisfied.  The Debtor may at any time after the second anniversary of the Effective Date, abandon the Connecticut Property securing such Allowed Class 3 Secured Claim upon giving not less than 30 days' advance notice thereof to the Holder of the Allowed Class 3 Secured Claim.

The Holder of the Allowed Class 3 Secured Claim shall retain its Lien on the Connecticut Property to the extent of its Allowed Class 3 Secured Claim until such property is sold.  Further, pending satisfaction of the Allowed Class 3 Secured Claim through sale or otherwise, the loan documents pertaining to the A;;owed Class 3 Secured Claim shall remain in full force and effect, provided, however, that the remedies available to the Holder of the Allowed Class 3 Secured Claim under its retained security interest and the loan documents giving rise to such claim, including the right to exercise secured party rights, shall be exercisable without further order of the Bankruptcy Court only in the event the Debtor defaults on its payment obligations under the Plan to the Holder of the Allowed Class 3 Secured Claim, or in the event that the Connecticut Property is abandoned by the Debtor in accordance with the provisions of the Plan or an order of the Bankruptcy Court.

In the event that the Allowed Class 3 Secured Claim exceeds the value of the Connecticut Property then, pursuant to Section 506(a) of the Bankruptcy Code, any such excess amount shall be treated as a Class 6 General Unsecured Claim against the Debtor.

### 5.04.   Secured Claim of Bentley Financial Services – Class 4

(a)      Allowance.   The Allowed amount of the Secured Claim of Bentley Financial Services shall be equal to the aggregate of (1) $130,965.28, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Effective Date, less any payments made on account of such Claim from and after the Petition Date and applied to the principal amount of such Claims as required by the Bankruptcy Code.

(b)      Treatment.   From and after the Effective Date, the Debtor shall timely perform all payment and other obligations due under his contract with Bentley Financial Services in accordance with the terms thereof, and Bentley Financial Services shall retain all Liens and other legal, equitable, and contractual rights to which it is entitled under the terms of its contract with the Debtor.

If the Allowed amount of the Secured Claim of Bentley Financial Services exceeds the value of its Collateral pursuant to Bankruptcy Code section 506(a), any such excess shall be separately classified as a Class 6 General Unsecured Claim.

### 5.05.   ASCAP Claim – Class 5

(a)      Allowance.   On the Effective Date, the ASCAP Claim shall be Allowed in an amount equal to $1,294,626.94, less any royalties recouped from the Petition Date to the Effective Date in accordance with the terms of the underlying agreements between the Debtor and ASCAP.

(b)      Treatment.   Except to the extent that the Holder of the ASCAP Claim agrees to less favorable treatment of its Allowed Claim, ASCAP shall be permitted to continue to exercise its recoupment rights against the Debtor until such time as its Allowed Claim is paid in full, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Claim.

### 5.06.   General Unsecured Claims – Class 6

Except to the extent that a Holder of an Allowed General Unsecured Claim agrees, under the terms of a writing executed by such Holder, to less favorable treatment of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Disbursing Agent, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim, periodic Cash payments representing such Holder's pro rata share of the General Unsecured Claim Assets required to be paid by the Debtor to the Disbursing Agent as set forth in the Plan, provided, however, that (i) all of the General Unsecured Claim Assets other than the Pool B Assets must be paid to the Disbursing Agent not later than 5 years after the Effective Date, (ii) the Pool B Assets shall be paid to the Disbursing Agent by the Debtor not more than ten (10) Business Days after receipt thereof, even if such receipt occurs more than 5 years after the Effective Date, (iii) the Debtor may fully satisfy his obligations to the Holders of Allowed Class 6 General Unsecured Claims under the Plan at any time during the five year period following the Effective Date by paying to the Disbursing Agent an amount necessary to pay the applicable Maximum Unsecured Claim Distribution payable to such Holders as of the applicable respective Target Date set forth in Section 1.50 of the Plan, and (iv) the total amount paid pro rata to the Holders of Allowed General Unsecured Claims on

account of the General Unsecured Claim Assets (inclusive of Pool B Assets, whenever paid) shall not in any event exceed the Maximum Unsecured Claim Distribution in effect for the applicable Year 5 Target Date.

The initial Distribution to Holders of Allowed General Unsecured Claims shall be made by the Disbursing Agent on the Initial Distribution Date from the proceeds of the Initial Cash Contribution available after payment of the Allowed Administrative Claims, Allowed Non-Tax Priority Claims and Allowed Priority Tax Claims required to be paid under the Plan, in the manner provided in the Plan, including, without limitation, as may be permitted under Article 10 hereof. After the Initial Distribution Date, the Disbursing Agent shall make additional Distributions to the Holders of Allowed General Unsecured Claims not more than 45 days after the Disbursing Agent's receipt of each of the additional General Unsecured Claim Assets required to be paid by the Debtor under the Plan, until all payments required under this Section 5.06 have been made to such Holders.

### 5.07.    Administrative Convenience Claims – Class 7

Each Holder of an Allowed Unsecured Claim in the amount of $[10,000] or less shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Claim, a Cash payment on the Effective Date in the full amount of such Allowed Claim.

### ARTICLE VI
### MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.01.    The Settlement

Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the classification, distribution, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the Sleek Claim, the Leviston Claim and the SunTrust Bank Claim which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan.  In addition to the other terms of the Plan, such settlement shall also include the following terms, which terms are integral to the Settlement as a whole:

(a)    Claim number 7 filed by Sleek shall be Allowed as a Class 6 General Unsecured Claim in the amount of [$17.8 million], inclusive of all claims of the Sleek Plaintiffs for pre-petition attorneys' fees arising in any pending litigation, and net of all possible setoff claims or defenses of the Debtor.  The claim of Gregory Wysocki shall be Allowed as a Class 6 General Unsecured Claim in the amount of $58,557.92.  The Claims of Mark Krywko, Michael Krywko and Jason Krywko, filed as claim 12 shall be Allowed as a Class 6 General Unsecured Claim in the aggregate amount of $133,502.84, to be divided amongst such persons as they shall determine, and Claims 13 and 15 shall be Disallowed in their entirety.

(b)    The Debtor acknowledges that in accordance with Section 503(b)(3)(D) of the Bankruptcy Code, counsel for Sleek has contributed

substantially to the process under which the Plan has been proposed and confirmed, through the preparation and filing of the plan of reorganization proposed by Sleek (which the Debtor acknowledges was filed with the intent to effectuate payment to all creditors of the Debtor's Estate), and the good faith negotiation of the Debtor's Plan, and agree that the reasonable fees and expenses of counsel for Sleek incurred in connection with the foregoing, and with the confirmation of the Debtor's Plan, as such fees may be finally approved by the Bankruptcy Court, up to a maximum of [$250,000], should be treated as an Administrative Expense under the Plan in accordance with Section 503(b)(3)(D) of the Bankruptcy Code, subject to all of the terms and conditions of the Plan relating to the Allowance and payment of Administrative Expenses.  The Debtor reserves any right under the Bankruptcy Code to contest the reasonableness of any such fees, but waives any right to assert that such fees and expenses do not constitute a substantial contribution to the Debtor's Estate.

(c)    In consideration of the agreement of the Sleek Plaintiffs to (i) accept such Claims as Allowed in the amounts noted in subsection (a) above, (ii) otherwise consent to the Plan and the treatment provided on account of their Allowed Claims under the Plan, notwithstanding the provisions of Section 1129(a)(15) of the Bankruptcy Code, and (iii) cooperate reasonably in connection with prosecution of Malpractice Claim, the Debtor and the Sleek Plaintiffs further agree as follows:

(i)    As of the Effective Date, and payment of the Initial Cash Contribution, all litigation in any jurisdiction amongst Jackson and the Sleek Plaintiffs, and their respective, any of their respective shareholders, members, officers, directors, employees, partners, affiliates, subsidiaries, advisors, professionals or agents, including, without limitation, (i) the appeal of that certain Order Confirming Arbitration Award and Final Judgment dated October 16, 2014 entered by the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida in Case No 502013CA012120, and (ii) the action captioned Jackson v. Sleek Audio, LLC, Case No. 2014-CA-6299 pending in the Circuit Court for the Twelfth Judicial Circuit in and for Manatee County, Florida, (iii) the action captioned Jackson v. Sleek Audio, LLC, Case No. 13-CA-0016 pending in the Circuit Court for the Twelfth Judicial Circuit in and for Manatee County, Florida and (iv) the action captioned Jackson v. Sleek Audio, LLC, Case No. 12-CA-02362 pending in the Circuit Court for the Twelfth Judicial Circuit in and for Manatee County, Florida, shall each be terminated with prejudice and without further costs to any party, and all necessary parties shall execute and deliver any related satisfactions of judgment or other documentation necessary to terminate such litigation and release any related judgment liens arising in or on account of such matters.  The Debtor and the Sleek Plaintiffs agree that the resolution of such litigation takes into account a good faith evaluation by all parties of the costs and merits

of such litigation, and that the dismissal of such litigation as set forth herein is a good faith reasonable resolution of such litigation, in exchange for the consideration provided.

(ii)    On the Confirmation Date, the Debtor will be deemed to have terminated all economic/membership/ownership interests in Sleek, and the Debtor and the Sleek Plaintiffs shall have fully released each other and their respective shareholders, members, officers, directors, employees, partners, affiliates, subsidiaries, advisors, professionals or agents from any and all claims of any kind (including, without limitation any Causes of Action hereunder, but excluding any claims arising on account of the Debtor to comply with the terms and conditions of the Plan), for no additional consideration beyond that provided in the Plan, all such relief being deemed effectuated by the entry of the Confirmation Order, it being the intent of the Sleek Plaintiffs and the Debtor that the entry of the Confirmation Order shall forever terminate any interest of the Debtor of any kind in Sleek, whether arising as a matter of contract, law, or otherwise, and otherwise dispose of any and all claims of any kind amongst the Sleek Plaintiffs and the Debtor.

(iii)    Entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 that the terms and conditions of the foregoing settlement and the termination of all litigation required thereunder is reasonable, and in the best interests of the Debtor, his Estate, and all Creditors of the Debtor and other parties in interest.

(iv)    Except for such person's own gross negligence or willful misconduct, none of the Sleek Plaintiffs, nor their respective professional persons, or agents shall (a) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of the Plan; or (b) in any event, be liable as such for any actions taken or omitted by them in the Bankruptcy Case, or under the Plan or in furtherance of the rights provided under the Bankruptcy Code or hereunder.

**6.02.    Sources of Cash and Terms of Payment for Plan Distributions**

On the Effective Date, the Debtor will pay the Initial Cash Contribution to the Disbursing Agent, and the Disbursing Agent will distribute the Initial Cash Contribution to the holders of Allowed Administrative Claims, Non-Tax Priority Claims and Priority Tax Claims required to be paid under the Plan, and to the Holders of Allowed General Unsecured Claims as set forth in Section 5.06 hereof.    Thereafter, the Debtor will pay the Annual Cash Contribution, the Additional Cash Contribution, and, subject to the limitation represented by the Maximum Unsecured Claim Distribution, the Pool B Assets, to the Disbursing Agent.    The Annual Cash

Contribution and the Additional Cash Contribution shall be paid to the Disbursing Agent not later than the times set forth in the definitions of the terms "Annual Cash Contribution" and "Additional Cash Contribution" as set forth herein, or earlier as determined by the Debtor in accordance with Section 5.06 of the Plan.  The Debtor shall use his commercially reasonable efforts to prosecute the Malpractice Claim in good faith until resolved, and shall provide the Holders of General Unsecured Claims with not less than fifteen (15) days' notice of any proposed settlement of the Malpractice Claim.  Any settlement of the Malpractice Claim that would fail to generate Net Proceeds in an amount sufficient to enable the Disbursing Agent to make the Maximum Unsecured Claim Distribution to Holders of Allowed General Unsecured Claims shall be subject to approval of the Bankruptcy Court under Bankruptcy Rule 9019.  The reasonable fees and expenses of the Disbursing Agent shall be paid from the General Unsecured Claim Assets and such fees may be reserved in accordance with the procedures set forth in Article 10 of the Plan.  Such fees and expenses shall not be subject to approval of the Bankruptcy Court.

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor under the Plan will be:  (a) the Cash of the Debtor on hand as of the Effective Date; and (b) Net Proceeds from the sale of the Debtor's assets; and (c) Cash generated or received by the Debtor after the Effective Date from any other source.

**6.03.    Post Effective Date Management**.

The Debtor shall continue to manage and control his assets after the Effective Date, and to the extent this Plan provides for the sale of the Debtor's assets, the Debtor shall manage and control the sale of such assets and shall liquidate such assets as expeditiously as reasonably possible, consistent with the terms of this Plan and the goal of maximizing the value thereof for the benefit of the Holders of Claims secured by a Lien on those assets and other stakeholders.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS

**7.01.    General Treatment of Executory Contracts: Rejected**

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date.  Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed Cure Amount.

### 7.02.    Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Claims that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtor within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Claims that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Claim is Allowed by agreement of the parties or a Final Order.  If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters. Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 6 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

### 7.03.    Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their assets and properties.  Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 7.04.    Rejection Claims

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

## ARTICLE VIII
## CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE;
## EFFECT OF PLAN CONFIRMATION

### 8.01.    Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Debtor of each of the following conditions:

(a)     The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

(b)     The proposed Confirmation Order shall be in form and substance acceptable to the Debtor; and

(c)     All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance acceptable to the Debtor.

### 8.02.    Conditions Precedent to the Effective Date

The occurrence of the Effective Date is subject to the occurrence or waiver by the Debtor of each of the following conditions precedent:

(a)     The Confirmation Date shall have occurred;

(b)     The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor; and

(c)     All documents constituting the Plan Supplement shall be in form and substance acceptable to the Debtor and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein.

The foregoing conditions to the Effective Date may be waived in whole or in part, but only if waived by the Debtor, without notice to any other parties in interest or the Bankruptcy Court, without any hearing or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect and the Debtor so elects in writing.  The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Debtor so elects in writing. In the event of any such appeal, the Debtor or any other party in interest may seek the dismissal of such appeal on any grounds.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.  The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

### 8.03.    Consequences of Non-Occurrence of Effective Date

If the Effective Date does not timely occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects.  If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

## ARTICLE IX
## EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 9.01.   Binding Effect

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case.  Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

### 9.02.   Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, all property and assets of the Debtor and the Estate shall vest in the Debtor in accordance with the terms of the Plan, in each case free and clear of all Claims, Liens, encumbrances, charges and other interests. Commencing on the Effective Date, the Debtor may deal with such property and assets and conduct his business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan and the Confirmation Order.

### 9.03.   Assertion of Causes of Action, Defenses and Counterclaims

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, with respect to the Debtor, without further action by any party, all Causes of Action, and all defenses, counterclaims, setoffs and rights related thereto, shall be and shall be deemed to be vested in the Debtor.  From and after the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to the Debtor under the Plan.  Except to the extent otherwise set forth in the Plan, the Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of his Estate.  No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may have or which the Debtor may choose to assert on behalf of the Debtor's Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan.  The Debtor shall have, retain, reserve, and be entitled to

assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

### 9.04.    Discharge of Debtor

*Except as expressly provided in this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date.  Except as expressly provided in this Plan or the Confirmation Order, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the Holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan, provided, however, that in no event shall occurrence of the Discharge Date discharge the Debtor from any obligations remaining under the Plan as of the date of its occurrence. Except as expressly provided in this Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as expressly provided in this Plan or the Confirmation Order, and subject to the occurrence of the Discharge Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under Bankruptcy Code section 1141, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in this Plan.*

### 9.05.    Injunction

*Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date with respect to the Debtor, all Holders of Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim:  (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan or the Confirmation Order, nor preclude the parties to the litigation captioned Lastonia Leviston v. Curtis James Jackson III, a/k/a/ 50 Cent, Case No. 102449/2010 (Supreme Court of the State of New York, NY County) from proceeding to a Final Judgment in such litigation.  If allowed by the Bankruptcy Court, any Person injured by any willful violation*

*of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.*

### 9.06.    Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or in an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, with respect to the Debtor.  Upon the Effective Date, the injunction provided in Section 9.05 of the Plan shall be effective.

### 9.07.    Effectuating Documents; Further Transactions; Timing

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.   All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

## ARTICLE X
## OBJECTIONS TO CLAIMS; DISTRIBUTIONS

### 10.01.    Objections to Claims

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan).  The Debtor (or his designees, successors and assigns) are not obligated to object to any Claim, but will nevertheless have standing to object to any such Claim from and after the Effective Date, if they so elect.  Nothing in this Section is intended to limit the right of any party to object to Claims.

### 10.02.    Objection Deadline

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims must be filed no later than the Objection Deadline.  An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

### 10.03.  Settlement of Objections to Claims

From and after the Effective Date, the Debtor is authorized to approve compromises of all Claims, Disputed Claims, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise or release, without further order of the Bankruptcy Court.

### 10.04.  No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.  To the extent any Holder of an Allowed Claim is entitled to interest accruing on or after the Petition Date, such interest shall accrue and be payable at the applicable Contract Rate.

### 10.05.  Setoffs by the Debtor; No Waiver

Except as otherwise set forth in the Plan, the Disbursing Agent may, but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law.  Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court.  Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims or Causes of Action that the Debtor may have against such Holder or any affiliate of such Holder.

### 10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims

(a)      **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, the Disbursing Agent shall make Distributions only to Holders of Allowed Claims.  No Holder of a Claim will receive any Distribution on account thereof until and to the extent that its Claim becomes an Allowed Claim.  To the extent a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor (in the first instance) on account of a Cause of Action, or which has not otherwise become an Allowed Claim, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter, or such Claim has otherwise been Allowed as set forth in the Plan.

In determining the amount of a Pro Rata Distribution due to the Holders of Allowed Claims, the Disbursing Agent may, in its discretion, make the Pro Rata calculation as if all Claims of the applicable Class were Allowed in the full amount claimed or in the amount estimated under Section 10.06(b) hereof.  The Disbursing Agent in its discretion, may withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim until the Objection Deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

(b)    **Claim Estimation.**  The Debtor or the Disbursing Agent may request estimation or limitation of any Claim pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(c)    **Distribution Reserve Accounts**.

(i)    On or after the Effective Date, the Disbursing Agent may create one or more separate Distribution Reserve Accounts as is appropriate from the Cash to be distributed to or for the benefit of the Holders of Disputed Claims, Administrative Claims, Non-Tax Priority Claims, Priority Tax Claims, or other Claims which have not been Allowed, in each case pending the allowance thereof.  Each Distribution Reserve Account may be segregated by Class or, as applicable, by Administrative Claims, Non-Tax Priority Claims, and Priority Tax Claims.  A Holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order.  As stated above, nothing in the Plan will be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Plan.

(ii)    The amount of any Cash allocable to, or retained on account of Claims in the Distribution Reserve Accounts for those Claims that are to be paid in full under the Plan shall be equal to the lesser of (a) the amount of such Claim as estimated pursuant to the procedure in section 10.06(b) of the Plan; (b) the amount of such Claim as asserted by the Holder; or (c) an amount to be agreed upon between the Debtor and the Holder of such Claim.  The amount of any Cash allocable to, or retained on account of any other Claims in the Distribution Reserve Accounts shall be as reasonably determined by the Disbursing Agent from time to time in accordance with the other terms and conditions of the Plan.

(d)    **Distributions After Allowance of Claims.**  Distributions to each Holder of a Claim that is the subject of a Distribution Reserve Account, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the applicable Class.  Unless otherwise provided in the Plan, as promptly as practicable after the date on which such Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days after such Claim becomes an Allowed Claim, the

Disbursing Agent shall distribute to the Holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such Holder had its Claim been an Allowed Claim on the date that Distributions were previously made to Holders of Allowed Claims in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes.  After all such Claims have been resolved as may be required by a Final Order or other final resolution, any remaining Cash in a relevant Distribution Reserve Account shall be distributed in accordance with the other provisions of the Plan.

      (e)    **Allowance of Claims Subject to Bankruptcy Code Section 502(d).**  Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

      **10.07.  Distributions Under the Plan**

      (a)    **Disbursing Agent.**  On the Effective Date, the Disbursing Agent will be employed pursuant to the terms of the Disbursing Agent Agreement.  In accordance therewith and the Plan, the Disbursing Agent shall, among other things, receive and manage the Pool A Assets and the Pool B Assets and make Distributions to Holders of Allowed Claims pursuant to the terms and conditions of the Plan, including without limitation, Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims and Priority Tax Claims.

      (b)    **Means of Cash Payment.**  Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of the Disbursing Agent, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign Holders of Allowed Claims, Cash payments may be made, at the option of and in the sole discretion of the Disbursing Agent, in such currency and by such means as are necessary or customary in a particular jurisdiction.

      (c)    **Delivery of Distributions.**  All Distributions to any Holder of an Allowed Claim shall be made at the address of each such Holder as set forth on the proof of Claim filed by such Holder (or at the last address of such a Holder known to the Disbursing Agent if no proof of Claim is filed or if the Disbursing Agent has been notified in writing of a change of address).  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursing Agent is notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.  Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Disbursing Agent in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Disbursing Agent for Distribution to other Holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred.  The Disbursing Agent may employ or contract with other Persons as reasonably determined by the Disbursing Agent to assist in or make the Distributions required under the Plan.  **The Debtor, the Disbursing Agent, and their agents and professionals are under no duty to take any action to either attempt to locate any Holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim.**

(d)    **Fractional Dollars; De Minimis Distributions.**  Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  No payment of less than twenty-five dollars ($25.00) shall be made with respect to any Allowed Claim, and the Disbursing Agent shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(e)    **Unclaimed Property.**  Any Distributions that are unclaimed shall be distributed by the Debtor to other Holders of Claims pursuant to the terms of the Plan.

(f)    **Excess Funds.**  To the extent that the General Unsecured Claim Assets exceeds the amount necessary to pay the Maximum Distribution and/or the Disbursing Agent is in possession of any funds after making all Distributions required under the terms of the Plan, the Disbursing Agent shall, within thirty (30) days of completing, remit such excess funds to the Debtor.

**Payments on Business Days**.  In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**Voting Record Date**.  As of the Voting Record Date, any applicable books and records for each of the Classes of Claims as may be maintained by Debtor shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims.  The Disbursing Agent will have no obligation to recognize any transfer or sale of Claims on or occurring after the Voting Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims, to recognize and make Distributions on account of Allowed Claims only to those holders who are identified as holders of Claims as of the Voting Record Date.  Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Voting Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Voting Record Date.

### 10.08.  Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Debtor, failing which, the Debtor may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE XI
## ACCEPTANCE OR REJECTION OF THE PLAN

### 11.01.  Impaired Classes Entitled to Vote

Each impaired Class entitled to vote to accept or reject the Plan will vote separately.  A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A Holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.

### 11.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

### 11.03  Elimination of Vacant Classes.  Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 11.04.  Section 1129(b) Cramdown

If any impaired Class of Claims fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Debtor will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b).  The Debtor asserts that the Plan provides for fair and equitable treatment of all Classes of Claims.  The Debtor reserves the right to amend the Plan as may be necessary to obtain confirmation of the Plan under Bankruptcy Code section 1129(b).

## ARTICLE XII
## RETENTION OF JURISDICTION

### 12.01.  Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtor and to enforce all Causes of Action and any related counterclaims, cross-claims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the

Debtor from taking any action as may be necessary to enforce any Cause of Action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

### 12.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims.  The failure by the Debtor to object to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the Debtor's right to object to, or to re-examine, such Claim in whole or in part.

### 12.03.  Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Debtor's assets, (b) disputes concerning the allowance of Claims, (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

### 12.04.  Additional Purposes

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)      hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)      hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Supplement and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

(d)      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

(e)      hear and determine all disputes involving the existence, nature, or scope of the discharge, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(f)      hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(g)      construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(h)      adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(i)      enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor or to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)      hear and determine all questions and disputes regarding title to or recovery of the Debtor's assets and property of the Debtor;

(k)      enter a Final Decree closing any or all of the Bankruptcy Case;

(l)      correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(m)      enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)      hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(o)      hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(p)      hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(q)     hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(r)     hear and determine any objection to any Claim (including any Administrative Claim), including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(s)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) and to re-examine Claims that have been allowed for purposes of voting;

(t)     hear and determine any Cause of Action and any collection or settlement matters related thereto;

(u)     hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(v)     hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

**12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article XII, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.01.  General Notices**

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

**-to the Debtor:**

Curtis James Jackson, III
264 West 40th Street, 15th Floor
New York, NY  10018

With a copy to:

Patrick J. Neligan, Jr.
James P. Muenker
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, TX  75201
Fax:  214-840-5301

James Berman
Zeisler & Zeisler, P.C.
558 Clinton Avenue
Bridgeport, CT  06605

Stephen J. Savva
Stephen J. Savva, P.C.
546 Fifth Avenue, Sixth Floor
New York, NY  10036

### 13.02.  Plan Supplement

No later than ten (10) days prior to the Confirmation Hearing, or no later than any other deadline specified in the Plan with respect to a specific agreement or document, the Debtor shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Upon the filing of the Plan Supplement, (a) the Debtor will serve copies of the Plan Supplement on the Office of the United States Trustee and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims may obtain a copy of the Plan Supplement upon written request to the Debtor's counsel.  The Plan Supplement is incorporated into, and is a part of, the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

### 13.03.  Exemption From Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 13.04.  Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any Creditor or party in interest desiring to assert a default will provide the Debtor and his counsel with written notice of the alleged default.  The Debtor will have thirty (30) days from receipt of written notice to cure the alleged default.  If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy Court, and serve on the Debtor and his counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party in interest under the Bankruptcy Code or other applicable law.  The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan, or providing such other relief as the Court may order.  Nothing in the Plan shall be deemed a waiver on the part of any party in interest to seek to assert any such remedies as described in this Section 13.04 upon default by the Debtor under the Plan.

### 13.05.  Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

### 13.06.  Modification of the Plan

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125.  The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129.  A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 13.07.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 13.08.  Due Authorization

Each and every Holder of an Allowed Claim that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 13.09.  Implementation

The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 13.10.  Execution of Documents

Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 13.11.  Bankruptcy Restrictions

From and after the Effective Date with respect to the Debtor, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise.  No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

### 13.12  Limited Plan Exculpation.

Neither the Debtor, nor any party described in Section 6.01 of the Plan, nor any of their respective shareholders, members, officers, directors, employees, partners, affiliates, subsidiaries, advisors, professionals or agents, shall have or incur any liability to the Debtor or any Holder of a Claim for any act or omission in connection with, related to, or arising out of, the Bankruptcy Case, negotiations regarding or concerning the Plan or any Plan Supplement, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the Distributions under the Plan, except for willful misconduct or gross negligence.

### 13.13.  Ratification

The Confirmation Order will ratify all transactions effected by the Debtor during the pendency of the Bankruptcy Case.

### 13.14. Integration Clause

This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims, and other parties in interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

### 13.15. Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtor.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 13.16. Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtor, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtor consents.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.17. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Connecticut shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

**CURTIS JAMES JACKSON, III**

  */s/ Curtis James Jackson, III*

83953v.7