# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 11 |
| CURTIS JAMES JACKSON, III, | § § | CASE NO. 15-21233 (AMN) |
| DEBTOR. | § § § § | |

**AFFIRMATION OF PETER D. RAYMOND IN SUPPORT OF RESPONSE TO DEBTOR'S OBJECTION TO CLAIM NO. 18-1 OF REED SMITH LLP**

PETER D. RAYMOND, ESQ., an attorney, states under the penalties of perjury:

1. I am a partner in the law firm Reed Smith LLP ("Reed Smith"), a creditor in the Chapter 11 bankruptcy proceeding of Curtis James Jackson, III ("Mr. Jackson"). I am admitted to practice law in the State of New York and in a variety of federal courts and am in good standing in each such jurisdiction and court. I am fully familiar with the facts and circumstances set forth herein, and I submit this affirmation in support of Reed Smith's response to Mr. Jackson's objection (the "Objection") to Claim No. 18-1 of Reed Smith (the "Claim").

2. Reed Smith is an international law firm with over 1,700 attorneys practicing in 26 offices, including offices in New York and California.

3. In 2002, while a partner at the law firm of Hall Dickler LLP, I began representing Mr. Jackson with respect to certain commercial litigations to which he was a party. Upon my joining Reed Smith in February 2004, I continued in the representation of Mr. Jackson and, upon information and belief, was Mr. Jackson's primary commercial litigator in matters related to his entertainment and related businesses. Although we provided advice from time to time on other matters, the vast majority of our work for Mr. Jackson while at Reed Smith was in the

commercial litigation area. Other counsel represented him in corporate, criminal, and family law matters during this period of time.

4. In or around May 2004, Reed Smith formalized this representation pursuant to the terms of an engagement letter dated as of February 2, 2004 (the "Engagement Letter"). A copy of the Engagement Letter is attached hereto as Exhibit A.

5. The terms of the Engagement Letter were intended to dictate the terms of the parties' attorney-client relationship for the future. From 2004 until Mr. Jackson ceased using Reed Smith as counsel in 2015, Reed Smith had significant success for Mr. Jackson in cases related to his entertainment and businesses, involving various issues, including copyright, trademark, rights of privacy and breach of contract. Indeed, Reed Smith collected substantial sums for Mr. Jackson in the cases in which Reed Smith represented him as a plaintiff, and Reed Smith won nearly all of the cases in which it represented Mr. Jackson as a defendant, in many instances on motions to dismiss or on motions for summary judgment and in subsequent appeals of those victories.

6. During this period, Reed Smith issued monthly invoices to Mr. Jackson, directly or through those acting on his behalf, reflecting professional services rendered and costs incurred on his behalf. As contemplated by the Engagement Letter, over this period, the hourly billing rates charged for professionals and paraprofessionals rendering services on Mr. Jackson's behalf increased from time to time, as is the practice of Reed Smith (and, presumably, all other legal service providers). Each such increase was reflected in the invoices issued after the effective date of the new rates.

7.      During the course of Reed Smith's representation of Mr. Jackson, professional services were at all times rendered on an hourly basis as contemplated by the Engagement Letter. At no time was Mr. Jackson represented on a contingency basis.

8.      To my knowledge, neither Mr. Jackson, nor any person acting on his behalf, objected to or challenged this periodic increase in billing rates. However, as is common with many long-standing clients such as Mr. Jackson, he, or somebody acting on his behalf, would from time to time request a courtesy discount to which Reed Smith would occasionally accede, particularly so as to ensure prompt payment.

9.      In February 2010, Reed Smith was asked by Mr. Jackson to defend him in the action captioned *Lastonia Leviston v. Curtis James Jackson, III, a/k/a 50 Cent*, in the Supreme Court of the State of New York, New York County (Index No. 102449/2010) (the "Leviston Action"). The Leviston Action involved claims related to Mr. Jackson's publication of a home-made sex video featuring the plaintiff and her then-boyfriend. Reed Smith represented Mr. Jackson in connection with the Leviston Action until approximately March 27, 2015, when Mr. Jackson discharged Reed Smith and substituted another law firm to represent him through trial.

10.     In February 2011, Mr. Jackson was named as a defendant in an action entitled *Simmons v. Stanberry* pending in the United States District Court for the Eastern District of New York. The case involved claims of ownership of the copyright in the beat for a song called *I Got Money*, which Mr. Jackson recorded and released to great success. Mr. Jackson requested that Reed Smith represent him and his record companies who he had agreed to indemnify in the action. Reed Smith succeeded in having the case dismissed on a motion. Mr. Jackson paid Reed Smith's invoices for this work. Thereafter, the plaintiff took an appeal to the United States Court of Appeals for the Second Circuit (Docket No. 14-3106) (the "Simmons Action"), and Mr.

Jackson retained Reed Smith to represent him and his record companies in the appeal. Reed Smith drafted and filed the appellate brief and related correspondence with the Court. However, when the case was scheduled for oral argument in July 2015, Mr. Jackson's representative advised Reed Smith that Mr. Jackson did not wish Reed Smith to represent him at the argument. The representative said that Mr. Jackson nevertheless expected Reed Smith to appear and argue the appeal. Thereafter, Reed Smith was retained by Universal Music Group to appear on its behalf and argue the appeal. I did appear and argue the appeal at the Second Circuit in July 2015 and another attorney appeared for Mr. Jackson. We won the appeal in a decision by the Second Circuit upholding the dismissal of the case by the lower court.

11. I was lead counsel in the Leviston Action and the Simmons Action and can attest that, at all times during the representation of Mr. Jackson in these actions, Reed Smith and its professionals represented Mr. Jackson with the degree of care and professionalism to be expected in matters of that kind. In that regard, I expressly reject and deny Mr. Jackson's characterization of Reed Smith's services as set forth in paragraphs 17 and 18 of the Opposition.

12. At the time of the commencement of Mr. Jackson's Chapter 11 bankruptcy case, not less than $609,235.41 was due and owing Reed Smith for services rendered and costs incurred in connection with Reed Smith's representation of Mr. Jackson in the Leviston Action and the Simmons Action. Prior to his refusal to pay the invoices which are the subject of Reed Smith's Claim, neither Mr. Jackson, nor anybody acting on his behalf, questioned or challenged the basis for Reed Smith's representation of Mr. Jackson (i.e., the Engagement Letter) and, with the exception of the occasional courtesy discount discussed *supra*, paid Reed Smith for services rendered and reimbursed Reed Smith for costs incurred.

WHEREFORE, Reed Smith respectfully requests that this Court: (i) enter an Order denying the Objection in its entirety and allowing the Claim in full and (ii) grant such other and further relief as the Court deems just and proper. In the event the Court finds the Engagement Letter ineffective, with respect to the services evidenced in the Claim, Reed Smith respectfully requests an evidentiary hearing on its entitlement to payment under *quantum meruit*.

Dated: New York, New York
       December 23, 2016

                                                /s/ Peter D. Raymond
                                                Peter D. Raymond

# EXHIBIT A

# ReedSmith

**Fredric W. Ansis**
Direct Phone: 310.734.5259
Email: fansis@ReedSmith.com

Reed Smith LLP
1901 Avenue of the Stars
Suite 700
Los Angeles, CA 90067
310.734.5200
Fax 310.734.5299

May 25, 2004
As of February 2, 2004

Mr. Curtis James Jackson III
c/o Theodor K. Sedlmayr, Esq.
Sedlmayr & Associates, LLP
200 Park Avenue South
Suite 1408
New York, New York 10003

Dear Mr. Jackson:

We are pleased that you desire to have us represent you in connection with certain of your activities in the entertainment business and with respect to third party claims and lawsuits that have been filed against you. In consideration of the promises and covenants set forth herein, you and we agree as follows:

**Termination.**

Either you or we may terminate this agreement at any time by written notice, subject to your obligation to pay our fees as described below and subject on our part to applicable rules of professional conduct. However, if you desire us to do so, we will continue our services with regard to any matter as to which our compensation continues.

**Fees/Costs.**

We render invoices and statements on a monthly basis. Our invoices set forth "Time Charges" and "Disbursements" incurred by you. Invoices are directed to you at the above address and are due upon receipt.

The term "Time Charges" means an amount equal to the time spent by attorneys and paralegals for services rendered to you. The Time Charges are based on our hourly billing rates for attorneys and paralegals in effect from time to time. Our current hourly rates are between $135.00 and $150.00 for paralegals and research assistants, $190.00 and $350.00 for associates, and $375.00 and $575.00 for partners and counsel. We may change these rates from time to time, in which event the new rates will be reflected in services rendered after the effective date of the new rates. We divide our hours for billing purposes into six minute intervals.

Monthly invoices also include certain expenses and costs ("Disbursements") made or incurred by us on your account. Typically, Disbursements include photocopying, long distance telephone and cable, telecopy communications, messenger, overnight delivery service, filing fees, word processing, and travel expenses where required. All air travel is in either business class or first class. In addition, if work must be done at night or on weekends or holidays, the cost of over-time secretarial and office services and of meals or local transportation fares of attorneys, paralegals and support staff may be chargeable as a Disbursement if such work is required to comply with your response time requirements and is not a result of our internal time management or personnel

LONDON ♦ NEW YORK ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND ♦ PRINCETON
FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ HARRISBURG ♦ LEESBURG ♦ WESTLAKE VILLAGE

DOCSLA-15426805.1-FANSIS

Mr. Curtis James Jackson III
May 25, 2004
Page 2

**ReedSmith**

availability. In some cases, we may also ask you to pay certain Disbursements directly to our suppliers, e.g., trademark search fees, court filing fees, and the like.

While we are confident that we will receive payment of our invoices in accordance with the foregoing policy, we reserve the right to terminate our representation and discontinue our services to you in the event that payments are not made on a timely basis.

**Possible Conflicts.**

You understand that we represent other persons and firms engaged in the field of entertainment, and that from time-to-time conflicts of interest may arise between our clients. If a conflict arises, we will discuss an appropriate resolution with you at that time. You acknowledge that such resolution may require you and/or the other client to engage other legal counsel.

**Future Conflicts In Unrelated Matters.**

Unless you and we specifically agree otherwise, you understand that because of the size and variety of clients and matters represented by us, it is important to all of our clients, including you, that we not become unduly precluded from representing clients, where clients, including you, may develop a relationship with us and anticipate using us for that type of matter. Accordingly, we reserve the right to continue to represent or to undertake to represent existing or new clients in any matter that is not substantially related to our work for you, even if the interests of such clients in those other matters are directly adverse to you in a matter for which we have not been engaged to represent you. By signing the engagement letter, you expressly waive any right to object to such representation or to any other adverse representation by us not substantially related to our work for you, even if your interest in such other matter is directly adverse to you in a matter for which we have not been engaged to represent you. We agree, however, that your prospective consent to conflicting representation as described herein shall not apply unless an appropriate ethical wall is put into place in any instance where as the result of our representation of you, we have obtained sensitive, proprietary or otherwise confidential information that, if known to any such other client of ours, could be used to the material disadvantage of you.

If you have any questions regarding the foregoing waiver, or if you believe a modification or clarification is appropriate in connection with our representation of you, please do not hesitate to contact us or other counsel for advice.

**Information/Client Responsibilities.**

We will keep you informed of the status of all matters and will send you copies of correspondence and/or other relevant documents which we initiate and copies of correspondence and/or other relevant documents we receive from others. You agree to cooperate fully with us and to provide promptly all information known or available to you relevant to our representation of your interests, including furnishing all documents requested by us.

**Calendar Items.**

You understand that agreements entered into by you with third parties may require you to give notice, exercise your rights, or make other decisions within certain time periods (for example, granting an approval or consent). You understand and agree that we will not be responsible for monitoring those time periods, or any dates or calendar items, on your behalf.

Mr. Curtis James Jackson III
May 25, 2004
Page 3

**ReedSmith**

**Effective Date.**

This agreement is effective commencing with the date that we began rendering services for you, irrespective of the date of this letter.

**Fee Disputes.**

Any dispute which arises under this agreement shall be submitted for binding arbitration in accordance with the procedures of the Los Angeles County Bar Association, or, if that organization declines to arbitrate the dispute, before the State Bar of California. In the event of a lawsuit between us, the prevailing party shall be entitled to recover their reasonable attorneys' fees.

**Disposition of Records.**

We are not obligated to keep files/records related to a matter after that matter is finished unless required to do so by operation of law. We may destroy any file materials (hard copy or electronic form) after termination of the matter involved, unless you request those materials within thirty (30) days of notification of our intent to destroy them.

**Independent Advice.**

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE BEEN ADVISED TO SEEK INDEPENDENT LEGAL AND BUSINESS ADVICE WITH RESPECT TO THE SUBJECT MATTER HEREOF, AND THAT YOU HAVE EITHER SOUGHT AND OBTAINED SUCH ADVICE OR DELIBERATELY REFRAINED FROM DOING SO.

**Choice of Law and Venue.**

Any dispute which may arise with respect to this agreement, without limitation, will be resolved pursuant to the laws of the State of California. The only proper forum for the resolution of any such dispute shall be by arbitration within the County of Los Angeles, State of California.

**Miscellaneous.**

This agreement sets forth the entire understanding of the parties hereto relating to the subject matter hereof and shall supercede any prior agreement between the parties hereto relating to the subject matter hereof. No modification, amendment, waiver, termination or discharge of this agreement or of any of its terms or provisions shall be binding upon any of the parties hereto unless confirmed by a written instrument signed by both you and us.

**Co-Counsel.**

As you are aware, Reed Smith LLP and various attorneys at that firm, including Fred Ansis, Peter Raymond, Kurt Peterson and Miles Cooley, have been working on various matters for you. To the extent practical, Reed Smith has interacted primarily and directly with your attorney, Theodor K. Sedlmayr of Sedlmayr & Associates as a co-counsel, and you have directed Reed Smith LLP where and when practical to interact with Mr. Sedlmayr as your liaison. In working with Mr. Sedlmayr on your various matters, Reed Smith LLP has agreed to compensate Mr. Sedlmayr for his services as liaison to Reed Smith (as opposed to Sedlmayr &

Mr. Curtis James Jackson III  
May 25, 2004  
Page 4

**ReedSmith**

Associates, P.C. legal services to you and your corporations/LLCs on the same or other legal matters for which Sedlmayr & Associates, P.C. bills you directly) from the fees paid by you and the corporations/LLCs in which you have an ownership interest to Reed Smith LLP. It is important, and required by California Rules of Professional Conduct Rule 2-200, that you understand the terms of these financial arrangements. Please feel free to ask any questions about this arrangement and you are encouraged to seek the advice of counsel.

It has been agreed that Mr. Sedlmayr will be paid for the services he renders in this regard out of the billings from Reed Smith LLP. Mr. Sedlmayr will receive 10% of the fees up to the first $100,000; 12 ½% of the fees from $100,001 to $200,000; and 15% of all fees generated by Reed Smith LLP in excess of $200,000, all on a calendar year by year basis.

We greatly appreciate the opportunity to represent your interests and feel we have developed a smooth working relationship with Mr. Sedlmayr that allows us to deliver legal services to you efficiently and effectively. Naturally this does not preclude Mr. Sedlmayr from acting on your behalf on separate matters for which you will compensate Sedlmayr & Associates directly. By signing below you acknowledge and provide your consent to the financial arrangements between Mr. Sedlmayr, Reed Smith LLP and you.

If you are agreeable to the terms and conditions set forth herein, please sign and return a copy of this letter to us.

We look forward to working with you.

Cordially,

Reed Smith

By _____

ACCEPTED AND AGREED TO:

_____  
Curtis James Jackson III