UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 15-21233 (AMN) |
|    CURTIS JAMES JACKSON, III, | : | Chapter 11 |
|       *Debtor* | : | |
| | : | |
| LASTONIA LEVISTON, | : | |
|       *Movant* | : | |
| v. | : | |
| CURTIS JAMES JACKSON, III, | : | |
|       *Respondent.* | : | Re: ECF No. 598, 621, 628 |

**RULING AND MEMORANDUM OF DECISION**
**RESOLVING CHAPTER 11 PLAN CONTROVERSY**

Before the court is Lastonia Leviston's ("Ms. Leviston") motion seeking an order resolving a controversy about the scope and effect of Curtis James Jackson, III's ("Mr. Jackson" or the "Debtor") confirmed chapter 11 plan. *See* ECF Nos. 598, 621 and 628. In particular, Ms. Leviston seeks a determination that the Third Amended Plan of Reorganization (the "Plan"), ECF No. 485, and the court's Order confirming the Plan (the "Confirmation Order"), ECF No. 552, do not preclude her from seeking sanctions against the attorneys who represented Mr. Jackson in relation to certain pre-petition, non-bankruptcy litigation.

For the reasons that follow, the court finds that the Plan, Confirmation Order and the entry of Mr. Jackson's chapter 11 discharge prohibit Ms. Leviston from pursing any further claims against Mr. Jackson. However, the court further finds that Plan and Confirmation Order did not release any claims against third parties. Accordingly, the Plan, Confirmation Order and Mr. Jackson's chapter 11 discharge do not bar Ms. Leviston from

proceeding on any claims against the attorneys who represented Mr. Jackson in the pre-petition cases pending in the United States District Court, Southern District of New York.[1]

## I.   JURISDICTION AND VENUE

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  "All courts retain the jurisdiction to interpret and enforce their own orders."  *In re Residential Capital, LLC*, 512 B.R. 179, 188-89 (Bankr.S.D.N.Y. 2014); *see also*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly [has] jurisdiction to interpret and enforce its own prior orders").  Venue is proper before this court in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   RELEVANT BACKGROUND

### *a. NY State Court Action*

On February 24, 2010, Ms. Leviston filed a complaint against Mr. Jackson in the Supreme Court of the State of New York, New York County, Case No. 102449/2010 (the "NY State Action") asserting claims for intentional infliction of emotional distress and violation of the New York Civil Rights Law.[2]  After years of litigation, a bifurcated jury trial on liability and punitive damages began on June 15, 2015.  At the conclusion of the first part of the bifurcated trial, the jury returned a verdict in the amount of $5 million in compensatory damages in favor of Ms. Leviston.  See, POC 5-1, Jury Verdict.  Thereafter, on July 20, 2015, the jury assessed a total of $2 million dollars in punitive damages

---

[1] The court notes the attorneys handling the District Court litigation are not the Debtor's bankruptcy counsel here.

[2] The court may take judicial notice, pursuant to Fed.R.Evid. 201(b), of judicial proceedings that have a direct relation to the matter at issue and are matters of public record, including court records that are available to the public through the New York State Unified Court system via the internet. https://iapps.courts.state.ny.us/webcivil/FCASSearch?param=I

against Mr. Jackson that, together with the compensatory damage award, totaled an award of $7 million dollars.

### *b. Removals To District Court*

Prior to the start of the bifurcated trial in the NY State Action, Mr. Jackson, through counsel, on May 26, 2015, filed a notice of removal to the United States District Court, Southern District of New York. This removal action was assigned case number 1:15-cv-03989 (KPF) (the "3989 Action"). Two days later, on May 28, 2016, the District Court, upon Ms. Leviston's motion, remanded the case back to the New York Supreme Court. The District Court also ordered Mr. Jackson to respond to Ms. Leviston's application for fees and costs pursuant to 28 U.S.C. § 1447(c). Ms. Leviston, in a reply brief to Mr. Jackson's objection, argued that the District Court should impose a sanction against Mr. Jackson's counsel, pursuant to the Court's inherent authority. See, 3989 Action, Doc. No. 13.

On June 12, 2016, Mr. Jackson again sought to remove the NY State Action to the United States District Court, Southern District of New York. This second removal action was assigned case number 1:15-cv-04563 (KPF) (the "4563 Action"). The United States District Court remanded the case to the Supreme Court, County of New York the same day. Additionally, the District Court ordered Mr. Jackson to respond to Ms. Leviston's application for fees and costs and to the Court's order to show case as to why he should not be sanctioned under Fed.R.Civ.P. 11. In her application for fees and costs, Ms. Leviston again sought, pursuant to 28 U.S.C. § 1447(c) and the District Court's inherent authority, an award of her attorney's fees and costs against Mr. Jackson and his counsel. See, 4563 Action, Doc. No. 6, p. 14-15.

### c. Instant Bankruptcy Proceeding

On July 13, 2015, Mr. Jackson filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date").[3] ECF No. 1. Ms. Leviston, on October 14, 2015, filed Proof of Claim No. 5-1 that asserted a claim in the amount of $7 million dollars premised upon the verdicts rendered in the NY State Action. POC 5-1. After much litigation and negotiation, on May 25, 2016, Mr. Jackson proposed a Third Amended Plan of Reorganization. ECF No. 485. The Plan embodied a global settlement reached between Mr. Jackson, and three of his largest creditors: Ms. Leviston, Sleek Audio, LLC, and SunTrust Bank, Inc. Section 6.01(c) of the Plan set forth the settlement reached between Mr. Jackson and Ms. Leviston. In that section, the Plan provided that, "[o]n the Effective Date, the Leviston Claim shall be Allowed as a Class 6 General Unsecured Claim in the amount of $6,000,000.00" and that Ms. Leviston's allowed claim would be non-dischargeable. ECF No. 485, p. 22-23, section 6.01(c). In consideration of this treatment, Ms. Leviston and Mr. Jackson agreed, in relevant part:

> **Section 6.01(c)**
> [T]o … promptly following the Effective Date, … **dismiss with prejudice and without further costs to any party** the action captioned *Lastonia Leviston v. Curtis James Jackson III, a/k/a/ 50 Cent*, Case No. 102449/2010 (Supreme Court of the State of New York, NY County), and all necessary parties shall execute and deliver any related documentation necessary to terminate such litigation and release any related judgment liens arising in or on account of such matters. The Debtor and Leviston agree that the resolution of such litigation as set forth herein takes into account a good faith evaluation by all parties of the costs and merits of such litigation, and **that the dismissal of such ongoing litigation (including without limitation any pending appeals) as set forth herein is a good faith reasonable resolution of such litigation, in exchange for the consideration provided.**
> ECF No. 485, p. 22-23.

---
[3] The Bankruptcy Code is found in Title 11, United States Code.

Additionally, the Plan contained a number of provisions relevant to this court's instant inquiry, including:

> **Section 9.01. Binding Effect**
> From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case. Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.
> ECF No. 485, p. 27-28.
>
> **9.04. Discharge of Debtor**
> Except as expressly provided in this Plan or the Confirmation Order, **all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown**, or against the assets or properties of the Debtor that arose before the Effective Date.
>
> **9.05. Injunction**
> Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date with respect to the Debtor, all Holders of Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of this Plan.
>
> **13.14. Integration Clause**
> This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims, and other parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding the Plan or its provisions.
> ECF No. 485, p. 43.

Ms. Leviston voted to accept the Plan. ECF No. 535, p. 11. On July 7, 2016, this court confirmed the Plan. ECF No. 552. The Confirmation Order noted that:

> The settlements set forth in Section 6.01 of the Plan are integral to successful implementation of the Plan, supported by reasonable consideration, in the best

interests of the Debtor, the parties to such settlements, and all other parties in interest in the Bankruptcy Case, and are each hereby approved pursuant to Bankruptcy Code section 1123(b)(3)(A) and Bankruptcy Rule 9019.
ECF No. 552, p. 9-10.

Approximately one month after confirmation, Ms. Leviston filed the instant motion for order to resolve plan controversy. ECF No. 598. In her motion, Ms. Leviston requested the court enter an order compelling Mr. Jackson to execute the documents necessary to dismiss the NY State Action[4] and determining that the Plan and Confirmation Order do not preclude Ms. Leviston from seeking sanctions against Mr. Jackson's counsel in the 3989 and 4563 Actions. ECF No. 598, p. 8. Ms. Leviston argued that the wording of the Plan is clear that she only agreed to withdraw the NY State Action, and the Plan's silence as to the 3989 or 4563 Actions connotes an intention to exclude any claims asserted in those Actions from the settlement. ECF No. 598, p. 8-9.

On September 8, 2016, Mr. Jackson responded to the motion arguing that the Plan incorporated a comprehensive settlement that resolved all of Ms. Leviston's claims against Mr. Jackson in any forum. ECF No. 621, p. 2. Mr. Jackson relied upon the Plan language: "with prejudice and without further costs to any party" to support his argument that any and all claims related to the litigation with Ms. Leviston were settled. ECF No. 621, p. 2. Additionally, Mr. Jackson claimed that "[b]y any reasonable interpretation of the Plan, the removal proceedings in the District Court are part and parcel of the [NY State] Action and [Ms.] Leviston's claims against the Debtor and the claims raised in those proceedings have been released." ECF No. 621, p. 11. Mr. Jackson reasoned that Ms. Leviston could not pursue her request for sanctions against Mr. Jackson's counsel without continuing a proceeding against Mr. Jackson in violation of the Confirmation Order. ECF

---

[4] This had been done before the conclusion of the hearing on the instant motion.

No. 621, p. 11. Mr. Jackson asserted that it was Ms. Leviston's burden to exclude claims in the context of a global settlement and her failure to do so constituted a waiver of such claims. ECF No. 621, p. 16.

In reply, Ms. Leviston contended that seeking sanctions against Mr. Jackson's counsel in the 3989 and 4563 Actions would not be an "action against the Debtor" but rather against his counsel, and accordingly, not barred by the discharge injunction. ECF No. 629 p. 3. She argued that pursuant to 11 U.S.C. § 524(e), Mr. Jackson could not provide in the Plan for the discharge of claims against third parties. ECF No. 629, p. 4.

On September 15, 2016, the court heard oral argument on the motion to resolve plan controversy. ECF No. 630.[5] During the hearing, Ms. Leviston's counsel admitted that no claim against Mr. Jackson, pursuant to 11 U.S.C. § 1447(c), survived after confirmation of the Plan and the entry of his chapter 11 discharge. ECF No. 630 at 00:13:39-00:13:56. Her counsel clarified that she only sought to proceed against Mr. Jackson's counsel in the 3989 and 4563 Actions. ECF No. 630 at 00:13:39-00:13:56. Counsel for Ms. Leviston estimated that her claim against Mr. Jackson's counsel in the 3989 and 4563 Actions totaled in the tens of thousands of dollars. ECF No. 630 at 00:51:06-00:52:09. At the conclusion of the hearing, the court took the matter under advisement.

### III.   RELEVANT LAW

It is generally recognized that a "confirmed plan of reorganization becomes a binding contract between the debtor and its creditors and is to be interpreted in

---

[5] The court reviewed the audio file of the hearing using VLC Media Player. All timestamps indicate the hours minutes and seconds (00:00:00) for the .mp3 file publicly available at the referenced ECF No. as played on VLC Media Player.

accordance with general contract law." *In re Std. Beef Co.*, Docket No. 08-30377 (LMW), 2011 Bankr. LEXIS 2016, at *16 (Bankr.D.Conn. 2011); *see also*, *In re DPH Holdings Corp.*, 553 B.R. 20, 25 (Bankr.S.D.N.Y. 2016)(chapter 11 plans are construed as contracts under the governing state's law). "The primary goal of contract interpretation is to effectuate the intent of the parties as manifested by the language used in the contract." *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 34 (2d Cir. 2016). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Id.* at 34 (2d Cir. 2016)(Internal citations omitted).

Generally, confirmation of a chapter 11 reorganization plan "discharges the debtor from any debt that arose before the date of [ ] confirmation." 11 U.S.C. § 1141(d)(1)(A). In the case of an individual proceeding under chapter 11, "confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan." 11 U.S.C. § 1141(d)(5)(A). In this context, a debt is defined as liability on a claim, and the term "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Upon receipt of a discharge, 11 U.S.C. § 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2); see also *In re Kalikow*, 602 F.3d 82, 94 (2d Cir. 2010).

However, the "discharge of a debt of the debtor does not affect the liability of any other entity on … such debt." 11 U.S.C. § 524(e), *see also*, 4-524 Collier on Bankruptcy P 524.05 (Subsection (e) of section 524 makes clear that, except as provided in section 524(a)(3) for certain debts in community property states, the discharge in no way affects the liability of any other entity). As the Second Circuit Court of Appeals ("Second Circuit") has noted, "the language of [§ 524(a) and §524(e)] reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit." *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir.1992). In *Green*, the Second Circuit determined that a creditor's action against the debtors was permitted by 11 U.S.C. § 524, as long as the action was solely for the purpose of obtaining a judgment to be satisfied by the debtor's insurer, and not from the debtors or the bankruptcy estate. *Id.* at 32 (2d Cir. 1992). The Second Circuit noted that the "discharge injunction furthers one of the primary purposes of the Bankruptcy Code – that the debtor have the opportunity to make a 'financial fresh start'" but that neither the "'fresh-start' policy nor § 524 was designed to immunize third parties." *Id.* at 33-34 (2d Cir. 1992)(internal citations omitted).

In *Terwilliger v. Terwilliger*, 206 F.3d 240 (2d Cir. 2000), the Second Circuit reiterated that § 524 offers no protection to third parties. *Id.* at 247.[6] In *Terwilliger*, the Court rejected the contention that a stipulation entered into by a debtor in bankruptcy resolved a third party's liability on a claim:

> The [third-party] contend[s] that … Terwilliger [debtor] settled *all* of his claims on the Note when he entered into the Stipulation with the [creditor] in the [chapter 11] bankruptcy proceeding. We reject that contention and hold that the

---

[6] See also, *In re Euro-Am. Lodging Corp.*, No. 12 CIV. 4996 (AJN), 2013 WL 12085090, *aff'd*, 549 Fed. Appx. 52 (2d Cir. 2014)(summary order)(finding the bankruptcy court was correct to deny third-party's request to re-open a debtor's chapter 11 bankruptcy proceeding to enforce the debtor's discharge for third-party's benefit because third-party's debts clearly were not encompassed in chapter 11 debtor's discharge).

>Stipulation, which discharged the [creditor]'s obligations, did not operate to divest the [third-party] of liability … . See 11 U.S.C. § 524(e).
>*Terwilliger*, 206 F.3d at 247.

Although § 524(e) generally provides that the discharge injunction does not bar claims against third-parties, § 524 does not purport to limit or restrain the power of the bankruptcy court to otherwise grant a release to a third party.  Indeed, the Second Circuit has upheld injunctions against third parties where "the injunction plays an important part in the debtor's reorganization plan." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992).  In 2005, the Second Circuit expanded on its holding in *Drexel Burnham* and established increasingly stringent standards for the bankruptcy court's exercise of power to approve releases of claims against third parties.  *See*, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005).  The *Metromedia* court found that "[w]hile none of our cases explains when a nondebtor release is "important" to a debtor's plan, it is clear that such a release is proper only in rare cases" or under "circumstances that may be characterized as unique." *In re Metromedia*, 416 F.3d at 141, 142.  The *Metromedia* court noted that "courts have approved nondebtor releases when: the estate received substantial consideration …, the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution …, and the plan otherwise provided for the full payment of the enjoined claims." *In re Metromedia*, 416 F.3d at 142 (internal citations and quotations omitted).

Courts within the Second Circuit have considered the *Metromedia* factors prior to confirming reorganization plans containing non-debtor releases.  In *In re Residential Capital, LLC*, 512 B.R. 179 (Bankr.S.D.N.Y. 2014), the United States Bankruptcy Court for the Southern District of New York found that the high burden established by

*Metromedia* was satisfied when a third party release and the third party's monetary contribution to the bankruptcy estate were a "lynchpin of the Plan, without which the … Plan would not be confirmable or feasible and the recoveries currently contemplated by the Plan would not exist." *In re Residential Capital, LLC*, 512 B.R. at 188. *See also*, *In re Spiegel Inc.*, No. 03-11540 BRL, 2006 WL 2577825, at *8 (Bankr.S.D.N.Y. 2006)(the Plan Release and Injunction played a vital part in the Plan and … a substantial contribution to the Debtors' estates was made on behalf of the [] Released Parties); *In re FairPoint Communications, Inc.*, 452 B.R. 21, 29 (S.D.N.Y. 2011)(a bankruptcy court has jurisdiction to enjoin third party non-debtor claims, but only to the extent that those claims directly affect the *res* of the bankruptcy estate); *In re Mid-State Raceway, Inc.*, No. 04-65746, 2006 WL 4050809, at *15 (Bankr.N.D.N.Y.)(releases found both in … Plan and the various settlements, incorporated therein, were both necessary to the reorganization and warranted).

## IV. DISCUSSION

The plain language of Section 6.01(c) of the Plan states that Ms. Leviston resolved all her claims, including any claims for attorney's fees and costs, against Mr. Jackson arising from the NY State Action in exchange for an allowed, and non-dischargeable, unsecured claim in the amount of $6,000,000. ECF No. 485, p. 23-24. The fact that Section 6.01(c) is silent as to the 3989 and 4563 Actions is inconsequential to the determination of whether any claims against Mr. Jackson arising from such actions were resolved in the Plan. Section 9.04 of the Plan plainly states: "all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever,

whether known or unknown." ECF No. 485, p. 27-28.  To the extent that Ms. Leviston in any manner seeks to recover from Mr. Jackson, personally or from his estate, in the 3989 and 4563 Actions or otherwise, such claims are expressly barred by the settlement reached in the Plan and the entry of his chapter 11 discharge.

The remaining issue is whether Ms. Leviston's claims against Mr. Jackson's counsel in the 3989 and 4563 Actions, to the extent they exist, survived the settlement agreement embodied in Mr. Jackson's confirmed Plan.  For the reasons that follow, and without reaching the merits of any such claim, the court finds that any claims Ms. Leviston may have against Mr. Jackson's counsel in the 3989 and 4563 Actions remain unaffected by the Confirmation Order and subsequent chapter 11 discharge.

The language of Section 6.01(c) states that Ms. Leviston and Mr. Jackson agreed to "dismiss with prejudice and without further costs to any party the action captioned *Lastonia Leviston v. Curtis James Jackson III, a/k/a/ 50 Cent*, Case No. 102449/2010 (Supreme Court of the State of New York, NY County)." ECF No. 485, p. 23-24.  As noted, that Plan provision is silent as to the 3989 and 4563 Actions.  Additionally, that section fails to reference, specifically, any claims against Mr. Jackson's counsel that may have arisen from the Actions.  Counsel for Mr. Jackson urges the court to overlook the provision's silence and to read the phrase: "without costs to any party" broadly enough to encompass claims against Mr. Jackson's counsel.

The court notes that the Second Circuit has "held that a settlement agreement using broad language to effect a mutual release of claims and accompanied by a stipulation that the case be dismissed 'without costs to any party' is, absent circumstances indicating otherwise, intended to settle all claims involved in the particular litigation,

including a claim for attorney's fees." *Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1058 (2d Cir. 1995)(internal quotations and citations omitted); *See also*, *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 33-34 (2d Cir. 2016)(finding it highly unlikely that the parties intended to resolve the case for $175,000 while leaving open the significant possibility of litigation over some $383,000 in attorneys' fees). Both *Valley Disposal* and *Lewmar* are distinguishable. Those cases involved settlements entered into between the parties and a subsequent claim by one party against the other party for attorney's fees. Here, the settlement was between the parties and there was a pre-settlement claim by one party against the lawyers for the other party that was not identified in the settlement.

The court declines, under the circumstances of this case, to adopt Mr. Jackson's expansive view of the phrase 'without costs to any party' to include his counsel in the 3989 and 4563 Actions. First, the definition of a "party" to a lawsuit does not extend to a litigant's counsel. Black's Law Dictionary defines "party" as "one by or against whom a lawsuit is brought." Black's Law Dictionary (8th Ed. 2004). Applying this common definition to Section 6.01(c)'s phrase: "without costs to any party," the court interprets the language to mean without costs to Ms. Leviston or Mr. Jackson, the named parties in the NY State Action.

Additionally, as noted above, the court is guided in its interpretation of the Plan by the Second Circuit's warning that a bankruptcy court should only approve the discharge of claims against third parties "in rare and unique circumstances." *In re Metromedia*, 416 at 136. In his Plan, Mr. Jackson could have provided specifically for the release of all claims that may have existed against any of his counsel, in any forum, but he did not.

Even if the Plan had provided for such release, the circumstances here would not warrant approval of the release as an "important part in the debtor's reorganization plan." *See*, *In re Drexel,* 960 F.2d at 293.

In this case, the Plan represented a settlement of Mr. Jackson's three largest creditors, whose claims totaled over $26 Million dollars. During the September 15, 2016 hearing on the motion to resolve plan controversy, Ms. Leviston's counsel estimated that her claim against Mr. Jackson's counsel for attorney's fees and costs in the 3989 and 4563 Actions ranged somewhere in the tens of thousands. ECF No. 630 at 00:51:06-00:52:09. The release of a single claim in the tens of thousands is hardly a significant component in a settlement addressing claims in the millions. Further, the court has difficultly identifying rare or unusual circumstances that would justify approval of a third party release. There are no facts to suggest that in exchange for an anticipated release, Mr. Jackson's counsel in the 3989 and 4563 Actions made a substantial contribution to Mr. Jackson's bankruptcy estate before or after confirmation of the Plan. *See*, *In re Residential Capital, LLC*, 512 B.R. at 183 (enforcing injunction and third party release where third party contribution $2.1 Million to debtor's estate). Additionally, there are no facts to suggest that a release of Mr. Jackson's counsel by Ms. Leviston was in any way necessary to the Plan or the settlement. *Id*. at 188 (the third-party contribution was the lynchpin of the Plan …the third party release was an essential component and critical to the success of the Plan). As the circumstances of this case would not support approval of a third party release even if it had been specifically set forth in the Plan, the court will not now interpret the plain language of the Plan to include such a third party release.

Accordingly, and pursuant to 11 U.S.C. § 524(e), the court finds that Mr. Jackson's Plan and the entry of Mr. Jackson's chapter 11 discharge, did not affect the liability of Mr. Jackson's counsel in the 3989 and 4563 Actions for any claim by Ms. Leviston.

NOW THEREFORE, it is hereby

**ORDERED**, that the motion for order to resolve plan controversy, ECF No. 598, is granted; and it is further

**ORDERED**, that Plan, Confirmation Order, and Mr. Jackson's chapter 11 discharge bar Ms. Leviston from asserting or proceeding on any claim against Mr. Jackson for attorney's fees and costs; and it is further

**ORDERED**, that the Plan does not preclude Ms. Leviston from proceeding on any claim against Mr. Jackson's counsel in the 3989 and 4563 Actions.

Dated on May 30, 2017, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut