UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| CURTIS J. JACKSON, III,<br>*Debtor* | :<br>: | CASE NO.: 15-21233 (AMN) |
| | : | |
| | : | |
| CURTIS J. JACKSON, III,<br>*Movant* | :<br>: | |
| v. | : | |
| | : | |
| DOROTHY DEJESUS,<br>CANDACE SCOTT,<br>*Respondents* | :<br>:<br>: | |
| | : | Re: ECF Nos. 888, 902 |

## AMENDED[1] MEMORANDUM OF DECISION AND ORDER
## ASSESSING SANCTION FOR VIOLATION OF DISCHARGE INJUNCTION

Having concluded the discharge injunction set forth in 11 U.S.C. § 524(a) was

violated and that the movant incurred attorneys' fees as a result, the court now requires

payment of a portion of the movant's attorneys' fees as a sanction.

On July 27, 2018, this Court entered an Order determining Dorothy DeJesus and

Candace Scott (collectively, the "Respondents") violated the discharge injunction and the

terms of Curtis J. Jackson, III's ("Debtor") confirmed Chapter 11 plan[2] by prosecuting

appeals of a judgment in the Appeals Court of Massachusetts[3] ("Discharge Violation

Order"). ECF No. 902. The court assumes parties' familiarity with the procedural history

---

[1]     This Amended Memorandum of Decision corrects the court's own typographical errors.

[2]     The Third Amended Plan of Reorganization was confirmed on July 7, 2016. ECF No. 552. Thereafter, on February 2, 2017, the Debtor received a discharge of debts. ECF No. 764. The court notes that pursuant to the Debtor's plan, the Respondents have been paid in full as to the non-dischargeable portion of their claim. ECF No. 888, ¶ 20.

[3]     Specifically, as described in the Discharge Violation Order, the appeals were captioned: *Dorothy DeJesus v. Curtis James Jackson III, et al*, case number 2017-P-0702, and *Candace Scott v. Curtis James Jackson III, et al*, case number 2017-P-0701 ("State Court Appeals"). Despite the Debtor's requests, the State Court Appeals were not withdrawn prior to entry of the Discharge Violation Order.

more fully set forth in the Discharge Violation Order and the Debtor's Motion.[4]  The Discharge Violation Order directed the Debtor to file an itemized statement of attorneys' fees and costs incurred in connection with the prosecution of the Motion for Sanctions for purposes of determining the Debtor's damages.  The court notes the request for punitive damages was withdrawn during a hearing held on July 18, 2018, leaving only the issue of actual or compensatory damages to be assessed.[5]  In support of his request for attorneys' fee damages, the Debtor submitted two declarations, including:

> (1) A declaration by John L. Cesaroni, Esq. of Zeisler & Zeisler, P.C. declaring Zeisler & Zeisler spent 26.40 hours totaling $8,705.00 ("Cesaroni Declaration");[6]
>
> (2) A declaration by Mark Albano, Esq. of the Albano Law Firm, LLC, as counsel primarily involved with the defense of the appeals, indicating he spent 5.7 hours at $350.00 per hour totaling $1,995.00 ("Albano Declaration").
> ECF Nos. 904, 905, respectively.

The attorneys' fees requested totaled $10,700.00.  After review of the Albano and Cesaroni Declaration and for the reasons that follow, I conclude sanctions of $6,725.88 in attorneys' fees shall be awarded to the Debtor for the violation of the discharge injunction.

A debtor may bring a claim for a violation of the discharge injunction in the form of an action for a sanction of civil contempt.[7]  *Torres v. Chase Bank USA, N.A. (In re Torres),*

---

[4]    On May 11, 2018, the Debtor filed the underlying motion seeking an order enforcing the Chapter 11 Plan, the Confirmation Order, the Discharge Order and seeking sanctions against the Respondents pursuant to 11 U.S.C. §§ 105, 523, 524, 1141, and 1142 (the "Motion for Sanctions").  ECF No. 888.

[5]    During the July 18, 2018 hearing, Debtor's counsel withdrew the request for punitive damages. ECF No. 901 at 00:22:59 – 00:23:24.

[6]    Specifically, Attorney Cesaroni spent 2 hours at $300.00 per hour and 23.4 hours at $325.00 per hour totaling $8,205.00 and Attorney Berman, also of Zeisler and Zeisler, spent 1 hour at $500.00 per hour.

[7]    "A confirmed plan binds both 'the debtor ... and any creditor,' 11 U.S.C. § 1141(a), which includes entities that have 'claim[s] against the debtor that arose at the time of or before the order for relief,' 11 U.S.C. § 101(10). Similarly, § 524(a)(2) provides that a discharge 'operates as an injunction against ... an act[ ] to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.' 11 U.S.C. § 524(a)(2)".  *In re Kalikow,* 602 F.3d 82, 94 (2d Cir. 2010).

367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007); *see also, In re Kalikow*, 602 F.3d 82, 97 (2d Cir. 2010)("the equitable power conferred on a bankruptcy court by 11 U.S.C. § 105 is the power to exercise equity in carrying out the provisions of the Bankruptcy Code," including the provisions of § 524(a)).   In 2019, the United States Supreme Court articulated the appropriate standard for holding a creditor in contempt for violations of the discharge injunction.  *See*, *Taggart v. Lorenzen,* 139 S. Ct. 1799 (2019).  The Supreme Court held that

> [A] court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.
> *Taggart*, 139 S. Ct. at 1799.

"After *Taggart*, if the court finds a "fair ground of doubt" about whether the [d]ischarge barred the [conduct], it cannot hold the creditor in contempt, and therefore cannot award damages or attorneys' fees to compensate the [d]ebtor -- even for conduct that offends the discharge."  *In re DiStefano*, 18-05001 (Bankr. W.D. Mich. Oct. 30, 2019).  While *Taggart* concluded a party's subjective intent was not a factor to consider for a finding of civil contempt, it could be relevant in determining the appropriate damages.  *Taggart*, 139 S. Ct. at 1802.

A court has discretion to tailor appropriate sanctions and may consider many factors, including "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden."  *In re Covelli*, 550 B.R. 256, 270 (Bankr. S.D.N.Y. 2016)(internal

3

citations omitted).[8]  "Bankruptcy courts may appropriately use their civil contempt power under § 105(a) to order monetary relief in the form of actual damages, including attorneys' fees, and punitive damages for violation of the discharge injunction.  *In re Eppolito*, 583 B.R. 822, 828–29 (Bankr. S.D.N.Y. 2018)(*citing Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 445 (1st Cir. 2000) (collecting cases)); *see also, Mayer v. DeCarlo*, 16-CV-1225 (JFB), 2017 WL 825429, at *4 (E.D.N.Y. Mar. 2, 2017)("[B]ecause 'a sanctions award serves many objectives, including compensation and deterrence,' it may include 'attorneys' fees reasonably incurred because of the sanctionable conduct.'")(*citing In re Khan*, 488 B.R. 515, 535-36 (Bankr. E.D.N.Y. 2013) (*quoting* 28 U.S.C. § 1927)).

However, some courts have held that to award attorneys' fees, the movant must establish the respondent acted in bad faith or in a vexatious or oppressive manner. *See In re Haemmerle*, 529 B.R. 17, 26 (Bankr. E.D.N.Y. 2015)(awarding reasonable attorneys' fees after concluding creditor's 137 phone calls were not technical, unintended, or quickly remedied, but were in fact wanton and oppressive); *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007)(court explained the continued refusal to correct the information, with the intent to pressure the debtor into paying the discharged debt, "if proven at trial, would be sufficiently vexatious and oppressive to support at least a sanction in the amount of the plaintiffs' costs and expenses); *In re Watkins*, 240 B.R. 668, 678 (Bankr. E.D.N.Y. 1999)(court found bad faith sufficient to justify the awarding of attorneys' fees, where, after a creditor's debt was discharged, the creditor contacted the debtors and offered to make a new loan on the condition that the debtors repay the creditor's discharged debt). Ultimately, the burden rests on the court to craft an appropriate sanction balancing the

---

[8]        *See also, In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 536 (Bankr. S.D.N.Y. 2007)(*citing EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2d Cir.2001)(In fashioning an appropriate remedy, courts must consider "the nature of the harm and the probable effect of alternative sanctions.")).

importance of punishing willful violations of the discharge injunction, protecting the purposes of § 524(a)(2), and meanwhile preventing motions for contempt from becoming a profit-making endeavor by awarding attorneys fees *carte blanche*. *See, In re Schmelcher*, 11-61607, 2015 WL 639076, at *5 (Bankr. N.D.N.Y. Feb. 13, 2015); *In re Frambes*, No. 08–22398, 2012 Bankr.LEXIS 791, at *21 (Bankr.E.D.Ky. Feb. 7, 2012)).

Here, the Debtor's actual damages are his attorneys' fees.  The failure to compensate the Debtor for the attorneys' fees incurred, where the Respondents' conduct is worthy of a contempt sanction, would not only permit the offending party to violate the discharge injunction with impunity, but would leave the Debtor worse off for his efforts to secure compliance with his rights under the Discharge Order.

Also impacting this court's consideration of damages is the fact the Respondents, despite requests from Debtor's counsel, did nothing to dismiss the State Court Appeals until the entry of the Discharge Violation Order.  Respondent's counsel[9] explained the State Court Appeals were not withdrawn because it was his belief that the claims on appeal had been excepted from discharge.  However, I find counsel's belief objectively unreasonable given the record of the case, and Respondents are not insulated from a finding of contempt or from the imposition of damages.[10]  ECF No. 901 at 00:14:01 –

---

[9]    Attorney Michael Malkovich represents the Respondents.

[10]    The Respondents' proofs of claim (POC 3-1 & POC 4-1) did not refer or mention the State Court Appeals, rather the stated basis for the claims was a "judgment for assault, battery, false imprisonment" and copies of the judgments issued by the Hampden County Superior Court in Massachusetts were attached. ECF No. 901 at 00:06:40 – 00:09:30; *See also*, ECF No. 888, p. 3.  Additionally, in both adversary proceedings (Adv. Pro. Nos. 15-02049 & 15-02050), this Court granted Respondents' motions for summary judgment holding that Respondents' claims "as set forth in the Massachusetts Superior Court's Findings of Facts, Rulings of Law, And Order for Judgment filed on February 16, 2010, attached to this Order as Exhibit A, [are] determined non-dischargeable pursuant to 11 U.S.C. § 523(a)(6)."  Adv. Pro. No. 15-02049, ECF No. 14; Adv. Pro. No. 15-02050, ECF No. 14.  There is no reference to the State Court Appeals in this Court's non-dischargeability Order.  While there is a brief reference to an appeal in the adversary proceeding complaints – see ¶ 15 of the complaints – neither the prayers for relief nor the summary judgment motions sought a determination by this Court that the claims on appeal were non-dischargeable. *See*, Case No. 15-2049, ECF Nos. 1, 12, 15; Case No. 15-2050, ECF Nos. 1, 12, 14.  I do not credit any

00:15:59.    At no time prior to the determination of non-dischargeability of the Respondents' judgment in the adversary proceeding case number 15-02049, or prior to confirmation of the Debtor's Chapter 11 plan, or prior to entry of the Debtor's discharge did Respondents seek clarification from this Court regarding the dischargeability or non-dischargeability of the claims on appeal.    After confirmation of the Chapter 11 plan and payment of the Respondents' proofs of claim in full, Respondents continued their litigation against the Debtor.    Even when Debtor's counsel made clear they believed the continued pendency of the appeals constituted a discharge violation, Respondents did not seek a ruling on the matter.

 Hence, Respondents' conduct does not reflect an unintended or technical violation of the Debtor's discharge, but rather a deliberate attempt to further pursue a discharged claim without actively assuring themselves that pursuit of the claims was permitted.[11] Under these circumstances, I find it appropriate to award at least some amount of attorneys' fees.

Turning to the attorneys' fees requested in this case, I find the rates charged by counsel -- $325.00 for Attorney Cesaroni, $350.00 for Attorney Albano, and $500.00 for Attorney Berman – are reasonable and commensurate with those rates customarily charged in this District by those who possess similar skills, expertise, and reputation.  "[A] Bankruptcy Court [is] entitled to exercise discretion in determining the reasonable amount

---

argument that this brief reference to an appeal constituted a request for the court to determine the claim on appeal as non-dischargeable.  ECF No. 901 at 00:06:40 – 00:09:30.

[11]    "[C]ourts in the Second Circuit have refrained from issuing sanctions where the violations of the discharge order were technical, unintended, or quickly remedied."  *Grant v. United States DOD (In re Grant)*, Docket Nos. 15-20330 (JJT), 16-02019, 2017 Bankr. LEXIS 1904, at *12-13 (Bankr. D. Conn. July 10, 2017)(*citing In re Cruz*, 254 B.R. 801 (Bankr. S.D.N.Y. 2000) and *In re Thompson*, 2007 Bankr. LEXIS 2830, 2007 WL 2406886, at *4 (Bankr. N.D.N.Y. Aug. 21, 2007)(awarding no sanctions where action by creditor was "inadvertent" and "quickly corrected.")).  Here, Respondents refused to withdraw the State Court Appeals until after entry of the Discharge Violation Order.  This record does not reflect a violation that was quickly remedied.

of fees to award." *In re Plumeri*, 434 B.R. 315, 333 (S.D.N.Y. 2010)(discussing reasonableness of attorneys' fees in the context of an award for a violation of the automatic stay); *See also, In re Nicholas*, 496 B.R. 69, 73–74 (Bankr. E.D.N.Y. 2011)("A court's principal concern when awarding attorneys' fees is to insure that the fees awarded are reasonable.").

While I find the hourly rates charged reasonable, I find some of the specific time spent unreasonable.  In the Cesaroni Declaration, the amount of $97.50 incurred on January 25, 2018 regarding "the Scott and DeJesus distributions" appears to relate to the distribution paid to Respondents on account of their non-dischargeable claims and not to the State Court Appeals.  ECF No. 904, p. 7.  Thus, this amount will not be awarded. Additionally, there are entries on April 4 and 5, 2018 charging for what appears to be internal email communications between Attorney Cesaroni and Attorney Berman.  ECF, 904, p. 7.  I find it excessive to award the time incurred by each of the two attorneys in the same firm communicating, and I will reduce the request by $150.00 to account for such time.  Accordingly, the attorneys' fees set forth in the Cesaroni Declaration will be reduced by $247.50, leaving a total of $8,457.50 requested by Zeisler & Zeisler, P.C.

In the Albano Declaration, there are three entries that will not be allowed.  The first is one of the two entries on May 14, 2018 for 0.1 hours for review of an email from Attorney Cesaroni attaching a copy of the Motion for Sanctions as filed.  ECF No. 905, p. 8-9.  As these entries are duplicative, only one of them will be allowed.  Secondly, the two entries on May 15, 2018 and on May 16, 2018 for reviewing and emailing a "Law 360 article regarding the Motion for Sanctions" will not be awarded.  Review of articles about motions counsel filed or a case counsel is involved in is not appropriate as damages for a

discharge violation. Accordingly, the attorneys' fees set forth in the Albano Declaration will be reduced by $105.00, leaving a total of $1,890.00 requested by Albano Law, LLC.

In addition to these minor reductions, I will reduce the attorneys' fees by thirty-five (35%) percent to account for what appears to be an excessive amount of time incurred drafting a routine motion for a discharge violation – 11.7 hours at least on a thirteen-page motion – and the significant amount of time spent on email communications among Debtor's own counsel. *See, In re Nicholas*, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011)("If a court determines some of the time claimed by a party should be excluded, it may also use a percentage 'deduction as a practical means of trimming fat from a fee application.'")(*citing Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir.1998).[12] Additionally, this percentage deduction accounts for the Respondents' alleged limited financial resources and their reliance on what has turned out to be erroneous advice of their counsel and a misunderstanding of the dischargeability of the claims pending in the State Court Appeals.[13]  ECF No. 901 at 00:21:20 – 00:21:40.  *See*, *In re Covelli*, 550 B.R. 256, 270 (Bankr. S.D.N.Y. 2016)(Court may consider the contemnor's financial resources and the consequent seriousness of the sanction's burden.).  Applying this thirty-five (35%) percent reduction, I find the attorneys' fees requested shall be reduced by $3,621.63.

As a sanction for the violation of 11 U.S.C. § 524, attorneys' fees of $6,725.88 are awarded to the Debtor as damages for a discharge injunction violation consisting of

---

[12]    *See also, In re Watkins*, 240 B.R. 668, 679 (Bankr. E.D.N.Y. 1999)(reducing fee request of approximately $23,000 to $15,000 and finding the standards for evaluating reasonable attorneys' fees as part of actual damages for a creditor's willful violation of the automatic stay, and reasonableness of fees sought pursuant to 11 U.S.C. § 330 should apply to the consideration of attorneys' fees as damages for a violation of § 524 and a court must exclude hours that are excessive, redundant, or otherwise unnecessary)(*citing In re Sucre*, 226 B.R. 340, 351–52 (Bankr.S.D.N.Y.1998)).

[13]    Respondent's counsel noted and requested the court take into consideration that "the cost to [the Debtor] compared to his wealth is paltry and again any sanctions that are applied against these women would be just yet another throwing salt into the wound, I suppose. I take responsibility for misunderstanding the reason why we should have had asked for a reservation."  ECF No. 901 at 00:26:23 – 00:27:11.

$5,447.96 payable to Zeisler & Zeisler, P.C. and $1,277.92 payable to Albano Law, LLC.[14] The Court expresses no opinion, as none was requested, as to any allocation or apportionment of the $6,725.88 as between the Respondents, their counsel, or another payor source.[15]

This is a final order subject to traditional rights of appeal, with a fourteen (14) day appeal period. *See,* Fed.R.Bankr.P. 8001, *et seq.,* Fed.R.Bankr.P. 8002(a)(1); *Ritzen Grp., Inc. v. Jackson Masonry, LLC,* ___ U.S. ___, 205 L.Ed.2d 419, 2020 U.S. LEXIS 5262020, WL 201023 (U.S. Jan. 14, 2020).

**ACCORDINGLY**, it is hereby

**ORDERED**: That, the Debtor is awarded attorneys' fees totaling $6,725.88 for the Respondents violation of the discharge injunction pursuant to 11 U.S.C. §§ 524(a) and 105(a); and it is further

**ORDERED**: That, Dorothy DeJesus and Candace Scott shall each pay $638.96 (for a total of $1,277.92) to the law firm of Albano Law, LLC on or before July 1, 2020; and it is further

**ORDERED**: That, Dorothy DeJesus and Candace Scott shall pay each pay $2,723.98 (for a total of $5,447.96) to the law firm of Zeisler & Zeisler, P.C. on or before July 1, 2020.

Dated on February 12, 2020, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut

---

[14]    The court apportioned the total fees between Zeisler and Zeisler, P.C. and Albano Law, LLC in the same proportion as their original fee requests. Zeisler and Zeisler, P.C.'s fees were approximately eighty-one (81%) percent and Albano Law, LLC's fees represent approximately nineteen (19%) percent of the total requested fees of $10,700.00.

[15]    The court expresses no opinion whether insurance may be available regarding this monetary sanction.