# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# NEW HAVEN DIVISION

| | | |
|---|---|---|
| In Re: | : | |
| CURTIS JAMES JACKSON, III, | : | CHAPTER 11 |
| Debtor. | : | CASE NO. 15-21233 (AMN) |
| _____ | : | |
| CURTIS JAMES JACKSON, III, | : | |
| Plaintiff, | : | ADVERSARY PROCEEDING |
| | : | CASE NO. 17-02005 (AMN) |
| v. | : | |
| REED SMITH LLP AND PETER RAYMOND, | : | JULY 18, 2023 |
| Defendants. | : | |

## SUPPLEMENTAL MEMORANDUM OF LAW ON
## BEHALF OF REED SMITH LLP AND PETER RAYMOND

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ........................................................................................................................ 5

    A.    By Choosing To Litigate His $32,000,000
           Action Post-Discharge, Jackson Is Personally Liable
           for the Attorneys' Fees that Resulted from that Action .......................................... 7

    B.    No Objective of the Bankruptcy Law Is Advanced by
           Limiting Reed Smith's Award of Attorneys' Fees, and Equity Supports It ......... 12

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Crown Books Corp.*,
    269 B.R. 12 (Bankr. D. Del. 2001) ...........................................................................................6

*Garrett v. Cook*,
    652 F.3d 1249 (10th Cir. 2011) ................................................................................................9

*Momentum Mfg. Corp. v. Emp. Creditors Comm.*,
    25 F.3d 1132 (2d Cir. 1994)..............................................................................................12, 13

*In re: NNN 400 Capitol Center 16, LLC*,
    No. No. 16-12728 (Bankr. D. Del. Oct. 10, 2021)................................................................6, 10

*Ogle v. Fidelity & Deposit Co. of Maryland*,
    586 F. 3d 143 (2d Cir. 2009)............................................................................................1, 6, 10

*In re Relativity Fashion, LLC*,
    565 B.R. 50 (Bankr. S.D.N.Y. 2017)........................................................................................6

*In re Residential Capital, LLC*,
    558 B.R. 77 (S.D.N.Y 2016)............................................................................................ passim

*In re Ruben*,
    774 F.3d 1138 (7th Cir. 2014) .................................................................................................9

*Siegel v. Federal Home Loan Mortg. Corp.*,
    143 F.3d 525 (9th Cir. 1998) ...............................................................................................8, 10

*In re Square 67 Ltd. P'ship*,
    No. 12-31870-HDH-11, 2012 WL 5842672 (Bankr. N.D. Tex. Nov. 19, 2012) .....................6

*In re Sure-Snap Corp.*,
    983 F.2d 1015 (11th Cir. 1993) ................................................................................................9

*Travelers Cas. & Sur. Co. v. PG&E*,
    549 U.S. 443 (2007)...........................................................................................................1, 6, 10

*In re Venticinque*,
    643 B.R. 708 (Bankr. E.D.N.Y. 2022)....................................................................................13

*In re Ybarra*,
    424 F.3d 1018 (9th Cir. 2005) .......................................................................................7, 9, 10

**Statutes and Other Authorities**

11 U.S.C. § 362 ................................................................................................................9

Fed. R. Bank. P. 7054 ..................................................................................................6, 10

Fed. R. Civ. P. 54 .........................................................................................................6, 10

## **INTRODUCTION**

Pursuant to the Court's Scheduling Order dated June 30, 2023 (ECF No. 1002),[1] Reed Smith LLP ("Reed Smith") and Peter Raymond ("Raymond") respectfully submit this Supplemental Memorandum of Law addressing the three cases cited by the Court in that Order: *Travelers Cas. & Sur. Co. v. PG&E,* 549 U.S. 443 (2007); *Ogle v. Fidelity & Deposit Co. of Maryland*, 586 F. 3d 143 (2d Cir. 2009); and *In re Residential Capital, LLC* ("*Res Cap*"), 558 B.R. 77 (S.D.N.Y 2016) (collectively, the "Three Cases"). These cases are indeed instructive on the issues raised by Reed Smith's not-yet filed motion for reimbursement of attorneys' fees. While the Three Cases indicate that fees incurred post-petition generally accrue pre-petition when the source of the claim is a pre-petition contract, none of the Three Cases prohibits Reed Smith from recovering post-petition legal fees Reed Smith incurred in connection with its Proof of Claim No. 18. Moreover, none of the Three Cases directly address the facts surrounding Reed Smith's claim for post-petition attorneys' fees as the prevailing party in the adversary proceeding.

To the contrary, the salient facts of this case involve a debtor who waited until after plan confirmation, after the Effective Date, and after establishment of the Distribution Reserve Account, and until days before discharge, to file a $32,000,000 adversary proceeding for the debtor's own personal benefit. Nothing in the Three Cases prevents the Court from crafting a just and equitable result consistent with the purposes of bankruptcy law, and which allows Reed Smith to recover the reasonable attorneys' fees it incurred over the past six years in connection with the consolidated adversary proceeding.

---

[1] Citations to the docket of the Chapter 11 case of Curtis James Jackson, III, Case No. 15-21233 are referred to as "ECF No. __. Citations to the docket of this Adversary Proceeding, Case No. 17-02005, are referred to as "AP-ECF No. __."

1

**BACKGROUND**

On July 13, 2015, the Reorganized Debtor Curtis James Jackson, III ("Jackson") filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On November 3, 2015, Reed Smith timely filed a Proof of Claim for $609,235.41 in unpaid legal fees and expenses incurred performing legal services for Jackson in 2014 and 2015. Claim 18 (the "Proof of Claim"). In its Proof of Claim, Reed Smith expressly reserved "all rights and causes of action, including, without limitation, contingent or unliquidated rights that it may have against the Debtor[, and] . . . to amend, modify and/or supplement this Proof of Claim in any respect . . . including, without limitation, claims for interest, fees and related expenses (*including, without limitation, attorneys' fees*)." Rider to Claim 18 at 3 (emphasis added).

On February 24, 2016, Jackson filed his Summary of Assets and Liabilities. ECF No. 359. In response to Item 33, which calls upon the debtor to identify "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," Jackson referenced an attached Schedule B, No.33. *Id.* at 7. Schedule B, No.33 listed five claims or potential claims, including, *inter alia*, a "malpractice" claim against Garvey, Schubert Barer, *et al.* ("Garvey") and a claim for "recovery of money/property" against William Leonard Roberts, II (p/k/a "Rick Ross"). *Id.* at 28. Jackson did not list in Schedule B, No.33 any claim or potential claim against Reed Smith or Raymond. *See id.* In response to Item 34 of the Summary of Assets and Liabilities, which required Jackson to identify "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims," Jackson listed Reed Smith ("Legal Services") and Sleek Audio, ("Arbitration Award/Appeal Pending"). *Id.* at 8. In identifying Reed Smith, Jackson did not mention "malpractice" as he did with Garvey in Schedule B, No. 33. Nor did he specify the amount of the potential claim against Reed Smith. *Id.* (identifying claim value as "unknown"). In other words, although Reed Smith

2

had already filed its Proof of Claim for unpaid legal services, Jackson provided no indication that Jackson was contemplating a $32,000,000 lawsuit against Reed Smith and Raymond worth more than fifty times the amount sought in Reed Smith's Proof of Claim.

On May 25, 2016, Jackson filed a Disclosure Statement with Respect to Third Amended Plan of Reorganization (the "Disclosure Statement"). ECF No. 484. In Section E.7 of the Disclosure Statement, entitled "Malpractice Claim Litigation," Jackson described his malpractice litigation against Garvey and its individual lawyers (the "Malpractice Claim Defendants"). ECF No. 484 at 21. There is no comparable description of any actual or potential malpractice litigation against Reed Smith. Instead, Section D.5 of the Disclosure Statement, entitled "Assertion of Estate Actions, Defenses, and Counterclaims," stated, in part, as follows:

> [E]ffective as of the Effective Date, with respect to the Debtor, . . . all Causes of Action, and all defenses, counterclaims, setoffs and rights related thereto, shall be and shall be deemed to be vested in the Debtor. From the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to the Debtor under the Plan. . . . The Debtor continues to evaluate potential Causes of Action and the proofs of claim filed in the Bankruptcy Case for potential defenses, rights of setoff, and counterclaims . . . . This includes, among other things, any rights, claims or defenses available to the Debtor in connection with any professional services provided to the Debtor by former attorneys and accountants such as GSO and Reed Smith LLP (including, without limitation, claims for malpractice or otherwise).

*Id.* at 46–47.

Roughly two months later, the Court confirmed Jackson's Third Amended Plan of Reorganization (the "Plan") on July 7, 2016. ECF No. 552. Pursuant to section 1.35 of the Plan, the Effective Date was on July 22, 2016.

On October 18, 2016, only after the Plan was confirmed and after the Effective Date, Jackson filed an objection to Reed Smith's Proof of Claim. ECF No. 660. The objection stated that the fees claimed by Reed Smith were excessive and the engagement agreement between Reed Smith and Jackson was invalid. *See id.* While the objection mentioned a variety of

3

disagreements with Reed Smith's judgment, the objection made no claim against Reed Smith and did not demand any payment from Reed Smith to Jackson for any amount, much less for $32,000,000.[2] Instead, the objection simply sought to have Reed Smith's claim for fees denied or to have the value of services determined on a quantum meruit basis. *Id.* ¶ 20. No allegations or claims were made against Raymond. *See id.* Jackson did not initiate an adversary proceeding against Reed Smith or Raymond at this time, which was over a year after the *Leviston* trial concluded and over a year after Jackson filed for bankruptcy.

On December 30, 2016, Jackson filed an application for entry of discharge. ECF No. 742. By January 10, 2017—before Jackson filed his $32,000,000 malpractice claim—the Disbursing Agent completed the process of obtaining funds to pay creditors, including a reserve sufficient to cover Reed Smith's disputed Proof of Claim (as it existed at that time) if allowed. ECF No. 760 ¶¶ 6–10 (Disbursing Agent's declaration that he had "received funds from the Debtor sufficient to make such distributions and I am holding such funds from the Debtor until the resolution of the Disputed Claims (i.e., Reed Smith) . . . ."). To fund that reserve for Reed Smith's Disputed Claim, Jackson placed $450,834.95 in escrow, equaling 74% the $609,236.41 claimed by Reed Smith for unpaid legal fees and costs incurred pre-petition.

Late in the afternoon Friday, January 27, 2017, only four business days before Jackson's discharge, Jackson commenced an adversary proceeding against Reed Smith and Raymond seeking $32,000,000 in damages for alleged malpractice and breaches of duty. ECF No. 758. Jackson styled his complaint in the adversary proceeding as "Counterclaims" and claimed the right to receive his attorneys' fees as part of his complaint. *Id.* at 6, 22. Promptly thereafter,

---

[2] A year prior, Jackson, through his counsel affirmatively stated on the record before the *Leviston* trial court that Reed Smith was not fired by Jackson for any cause. Hr'g Tr. 28:7-29:8, May 11, 2015, *Leviston v. Jackson*, No. 102449/10 (N.Y. Sup. Ct.).

4

Reed Smith entered into a joint stipulation with Jackson to adjourn resolution of Reed Smith's Proof of Claim in coordination with the adversary proceeding.  ECF No. 759.  The Court granted the adjournment so that Reed Smith's Proof of Claim was broken off from the hearing on Jackson's discharge application that would take place the next day.  ECF No. 762.  The Court granted Jackson's application for discharge on February 2, 2017.  ECF Nos. 763, 764.

Based on this timing, all of the litigation in this adversary proceeding occurred after Jackson's discharge.  Over the next six years, Jackson pursued his $32,000,000 case against Reed Smith and Raymond for himself personally rather than the benefit of any of his former creditors.  As Jackson recently acknowledged, "[a]ny recovery from the Reed Smith Adversary [Proceeding] will not pass through the Reorganized Debtor's estate and will go directly to the Reorganized Debtor [*i.e.*, Jackson personally]."  ECF No. 990 ¶ 17.  In choosing to pursue this post-discharge litigation, Jackson also recognized that the legal fees he would incur were his personal obligation.  As he stated in his Renewed Motion for Entry of Final Decree: "[T]he Reorganized Debtor, not the bankruptcy estate, are obligated to pay any professional fees incurred after the Effective Date of the Plan, including on the few remaining matters."  *Id.*  Jackson included a demand for attorneys' fees as part of his prayer for relief for his counterclaims.  ECF No. 758 at 22.

It was not until the Court's decision on May 10, 2023 that the engagement agreement with Jackson was held to be valid.  AP-ECF No. 598.  By its Order dated August 27, 2021, the Court granted Reed Smith sixty days from that decision to move for its attorneys' fees.  AP-ECF No. 434.  The Court recently extended this date until August 11, 2023.  ECF 1002.

**ARGUMENT**

In its Scheduling Order dated June 30, 2023, the Court cites to three cases as relevant to Reed Smith's claim to attorneys' fees: *Travelers*, 549 U.S. 443; *Ogle*, 586 F.3d 143; and *Res*

5

*Cap*, 558 B.R. 77. ECF No. 1002 at 2. As recognized by the Court, each of these cases confirms that Reed Smith may pursue attorneys' fees for post-petition litigation based on a pre-petition contract. *Id.*

In *Travelers*, the Supreme Court held that nothing prohibited a creditor from "recovering attorney's fees authorized by a prepetition contract and incurred in postpetition litigation." 549 U.S. at 445, 449. Similarly, in *Ogle*, the Second Circuit held that "the Bankruptcy Code does not bar an unsecured claim for post-petition attorneys' fees authorized by a prepetition contract . . . ." 586 F.3d at 146. Both *Travelers* and *Ogle* permitted claims for attorneys' fees to proceed against debtors. *Travelers*, 549 U.S. at 445, 456; *Ogle*, 586 F. 3d at 145, 149. This was recognized by the court in *Res Cap*. 558 B.R. at 86. These decisions align with numerous other cases in which bankruptcy courts have enforced contractual fee-shifting provisions to award fee claims to a prevailing party. *E.g.*, *In re Relativity Fashion, LLC*, 565 B.R. 50, 56–57 (Bankr. S.D.N.Y. 2017); *In re Square 67 Ltd. P'ship*, No. 12-31870-HDH-11, 2012 WL 5842672, at *3 (Bankr. N.D. Tex. Nov. 19, 2012); *In re Crown Books Corp.*, 269 B.R. 12, 17 (Bankr. D. Del. 2001); Findings of Fact & Conclusions of Law at 9–10, *In re: NNN 400 Capitol Center 16, LLC*, No. 16-12728 (Bankr. D. Del. Oct. 10, 2021), attached as Ex. A.[3]

While Reed Smith does not challenge the general principle that a right to payment based on a contract generally accrues at the time the contract is executed, Reed Smith respectfully submits that the Three Cases referenced by the Court should not be read as limiting the amount Reed Smith may receive for its reasonable attorneys' fees to the amount currently held in the

---

[3] Rule 54(d) of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7054(b), permits the prevailing party to move for attorneys' fees provided that the moving party, *inter alia*, "specif[ies] . . . the statute, rule, or other grounds entitling the moving party to the award." Fed. R. Civ. P. 54(d)(2)(B).

6

Distribution Reserve Account. Based on the facts of this case, Reed Smith is entitled to recover reasonable attorneys' fees incurred post-petition beyond the remaining amount available in the Distribution Reserve Account. Jackson chose to voluntarily pursue $32,000,000 in claims for his own personal benefit, not on behalf of a debtor-in-possession or on behalf of the estate. Jackson did not reveal his $32,000,000 action until after the confirmation date, the Effective Date, and the Distribution Reserve Account had been fixed in an amount that did not reflect the costs of litigating a six-year, allegedly $32,000,000 action. Further, it would be inequitable and inconsistent with the purpose of the bankruptcy laws to restrict Reed Smith's claim for attorneys' fees to the amount currently remaining in the Distribution Reserve Account. Factually, none of the Three Cases involves a situation where a debtor waited until after plan confirmation, the Effective Date, and the Distribution Reserve Account had been fixed before identifying a massive adversary proceeding, the proceeds of which—if successful—would go entirely to the discharged debtor personally. Until Jackson filed his adversary proceeding on the eve of discharge, Jackson never identified a potential $32,000,000 action— an action that would radically alter the reasonable expectations and costs associated with that litigation.

### A. By Choosing To Litigate His $32,000,000 Action Post-Discharge, Jackson Is Personally Liable for the Attorneys' Fees that Resulted from that Action

The confirmation of Jackson's bankruptcy Plan and his discharge do not immunize Jackson from his own post-discharge actions. Jackson chose not to disclose the malpractice case for the benefit of the estate, but delayed filing it so that he, alone, would obtain any recovery if he prevailed. Appellate courts have made clear that "[e]ven if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free litigation at others' expense." *In re Ybarra*, 424 F.3d 1018, 1026 (9th Cir. 2005). "[C]laims for attorney fees and costs incurred post-petition are not discharged where post-petition, the

7

debtor voluntarily commences litigation or otherwise voluntarily return[s] to the fray." *Id.* (alteration in original) (internal quotation marks omitted). "If the debtor chooses to enjoy his fresh start by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts." *Id.* at 1024 (internal quotation marks omitted). By "voluntarily continuing to pursue litigation post-petition . . ., a debtor may be held personally liable for attorney fees and costs that result from that litigation." *Id.* Here, Jackson voluntarily pursued his malpractice and breach-of-duty claims against Reed Smith and Raymond aggressively for the past six years causing significant expense.

The Ninth Circuit's decision in *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998) highlights the rationale behind this common-sense rule. In *Siegel*, a debtor sued a non-debtor mortgagee in state court. *Id.* at 527–28. After the debtor was discharged, the court granted summary judgment in favor of the mortgagee, and thereafter, the mortgagee sought attorneys' fees incurred in defending against the debtor's claims. *Id.* at 528, 531. The mortgagee's claim for attorneys' fees was based on a pre-petition contract. *Id.* at 531. In response, the debtor argued that the post-discharge claim was a contingent claim that had been discharged because "it could not take effect unless [the debtor] did something." *Id.* at 532. The Ninth Circuit disagreed, concluding that the award of fees against the debtor had not been discharged. *Id.* at 534. The Ninth Circuit reasoned that the debtor's "decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision" in the parties' pre-discharge contract. *Id.* Although bankruptcy "protect[s] [a debtor] from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences." *Id.* "[A]ny right to avoid the attorney's fees provision of his contract fell short of protecting [the

8

debtor] when he voluntarily undertook this post-bankruptcy action. . . ." *Id.*

Other appellate courts have similarly held that fees or expenses incurred post-petition are not discharged in bankruptcy. For instance, *In re Sure-Snap Corp.*, 983 F.2d 1015 (11th Cir. 1993), the Eleventh Circuit held that the costs of defending against a post-confirmation appeal initiated by a debtor were not discharged because "[b]ankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts." *Id.* at 1018 (internal quotation marks omitted).

Similarly, in *Garrett v. Cook*, 652 F.3d 1249 (10th Cir. 2011), the Tenth Circuit concluded that an award of attorneys' fees based on the debtor's improper post-petition conduct was not barred by the automatic stay pursuant to 11 U.S.C. § 362 where the debtor voluntarily pursued, post-petition, a separate course of litigation: "[T]he attorney's fees and costs at issue here are entirely due to voluntary, post-petition litigation [the debtor] undertook . . . ." *Id.* at 1255. The Tenth Circuit further determined that under the reasoning of *Ybarra* and *Sure-Snap*, any assertion of a discharge in bankruptcy would be ineffective to relieve the debtor of his liability for attorneys' fees. *Id.* at 1255 n.4.

Likewise, in *In re Ruben*, 774 F.3d 1138 (7th Cir. 2014), the Seventh Circuit upheld a claim for an arbitrator's post-petition expenses because "the assessment was a result of [the debtor's] freely chosen decision to participate in the arbitration." *Id.* at 1140. "'[E]ven if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free [postpetition] litigation at others' expense.'" *Id.* at 1141 (second alteration in original) (quoting *Ybarra*, 424 F.3d at 1026). Like the debtors in each of the foregoing cases,

Jackson voluntarily entered the fray of post-petition litigation against Reed Smith and Raymond.[4]

The effect of a debtors' post-petition conduct on the discharge of claims was not considered by the courts in *Travelers* nor *Ogle*, and the Second Circuit has not addressed this rule applied by the Seventh, Ninth, Tenth, and Eleventh Circuits. The court in *Res Cap*, however, declined to apply the rule as stated under *Ybarra* and *Siegel* to allow for the non-debtors' claims in that case. But the facts in *Res Cap* are inapposite to those here, and the *Res Cap* court acknowledged a different result is appropriate amidst different facts. 558 B.R. at 86 n.7.

In *Res Cap*, it was the Liquidating Trust that initiated the lawsuit against various financial institutions that had sold the debtor residential mortgage backed securities. *Id.* at 79. The purpose of the Liquidating Trust was to accumulate the assets of the debtor for the benefit of the debtor's estate, *i.e.*, the creditors. *Id.* at 79, 81. Here, in contrast, Jackson initiated his adversary proceeding against Reed Smith and Raymond on the eve of discharge; any recovery would benefit Jackson alone, with nothing going to the creditors.

Additionally, in *Res Cap*, after the Liquidating Trust sued the financial institutions, they asserted counterclaims for breach of contract provisions such as covenants not to sue, forum selection, and right to cure provisions. *Id.* at 83. The remedy for those alleged breaches was the award of attorneys' fees. *Id.* at 84–85. In contrast, Reed Smith had no counterclaim to bring. The only way Reed Smith would have a claim for attorneys' fees beyond those incurred proving

---

[4] Additionally, the court in *In re: NNN 400 Capitol Center 16* ruled that the right seek attorneys' fees pursuant to Federal Rule of Civil Procedure 54, made applicable to bankruptcy proceedings by Bankruptcy Rule 7054, provides a distinct avenue for a prevailing party in an adversary proceeding to seek fees and costs apart from a non-debtor's proof of claim. Findings of Fact & Conclusions of Law at 2-3, *In re: NNN 400 Capitol Center 16*, LLC, No. 16-12728 (Bankr. D. Del. Oct. 10, 2021), attached as Ex. A.

10

its Proof of Claim would be if Jackson asserted claims against Reed Smith (and then lost) as he ultimately did in this case.

*Res Cap* is further distinguishable because there, the financial institutions were on express notice of their potential unliquidated claims against the debtor prior to the effective date, yet chose not file proof of claims. *Id.* at 81–82. Indeed, the debtor specifically identified the financial institutions as targets of litigation for breaches of the same contracts under which the financial institutions later sought fees *before* confirmation of the plan and the effective date. 558 B.R. at 81–82. More specifically, the debtor "disclosed that 'the Estates are pursuing recovery of a defective loan(s) under the reps and warrants of an executed Purchase/Sale agreement' against [the financial institutions]. Despite this, . . . no [financial institution] filed any proof of claim asserting any contractual right to attorney's fees in the event any [financial institution] was sued by any of the Debtors." *Id.* at 82 (citation omitted). In contrast, Reed Smith filed its Proof of Claim, and that Proof of Claim expressly reserved the right to seek attorneys' fees. Further, Reed Smith reasserted its intention to seek attorneys' fees throughout the pendency of the bankruptcy and the litigation of the adversary proceeding. *E.g.*, Rider to Claim 18; ECF No. 951; AP-ECF No. 67 at 24 (asking the Court to "award Reed Smith's fees defending the Amended Counterclaims and prosecuting Proof of Claim No. 18-1, as required pursuant to the retainer agreement between Jackson and Reed Smith . . . .");[5] AP-ECF No. 412; AP-ECF No. 433.

Moreover, in *Res Cap*, "the Trust's litigation on the Contracts was *entirely foreseeable* . . . (a point the [financial institutions] do not dispute) and in fact presaged during the bankruptcy

---

[5] The agreement between Jackson and Reed Smith states in relevant part, "In the event of a lawsuit between us, the prevailing party shall be entitled to recover their reasonable attorneys' fees." AP-ECF No. 466-15 at 3.

proceedings by the disclosure statement and the Plan Supplement." 558 B.R. at 89 (emphasis added). Here, in contrast, Jackson did not disclose his intention to bring a $32,000,000 action against Reed Smith until he filed it—after the Effective Date and after the Distribution Reserve Account had been established, and as he was about to be discharged. Jackson's objection on grounds of excessiveness regarding an approximately $600,000 Proof of Claim did not give notice to anyone that Jackson was sitting on a $32,000,000 action.

Finally, unlike the case at bar where Jackson waited until the end of his bankruptcy to file his adversary proceeding, in *Res Cap*, the Trust started suing the financial institutions earlier in the bankruptcy: "the Trust filed its lawsuit against [one financial institution] post-petition prior to the Effective Date." *Id.* at 84. Accordingly, *Res Cap* does not bar Reed Smith from recovering its attorneys' fees from Jackson personally, and Reed Smith should not be limited to the remaining funds in the Distribution Reserve Account.

### B. No Objective of the Bankruptcy Law Is Advanced by Limiting Reed Smith's Award of Attorneys' Fees, and Equity Supports It

Reed Smith has spent the last six years defending against multi-million dollar claims that were aggressively pursued, notwithstanding a lack of evidentiary support that would enable a reasonable jury to find in Jackson's favor. *See, e.g.*, AP-ECF Nos. 62, 395; Tr. Application for Final Decree 36:18-37:6, June 28, 2023. The $32,000,000 Jackson pursued would not benefit the bankruptcy estate; it was all for Jackson personally. Indeed, in pursuing his claims, Jackson sought to recover his attorneys' fees on top of the $32,000,000 he claimed. Therefore, it would be manifestly unjust for Jackson to be able to use his discharge as a free pass to pursue his unfounded, and ultimately unsuccessful, claims meant to benefit him alone.

The Court has the power to prevent such injustice. The Second Circuit has "repeatedly emphasized the importance of the bankruptcy court's equitable power." *Momentum Mfg. Corp.*

*v. Emp. Creditors Comm.*, 25 F.3d 1132, 1136 (2d Cir. 1994). "[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." *Id.*

To be sure, a fundamental purpose of the bankruptcy law is to allow a debtor to make a fresh start, while arranging for his creditors to be paid from his remaining assets in an equitable fashion. *E.g.*, *In re Venticinque*, 643 B.R. 708, 724 (Bankr. E.D.N.Y. 2022). Here, however, Jackson chose not to bring claims he could have asserted almost as soon as he declared bankruptcy. Instead, he held those claims to the very last moment before discharge. Having done so, he secured the full benefit of a fresh start, but the ability to avoid sharing with his creditors any recovery on his late-added claims. By the time he brought his claims against Reed Smith and Raymond, the Distribution Reserve Account has been established with less than $500,000 reserved to pay for Reed Smith's Proof of Claim if allowed. Jackson litigated his claims aggressively, and asserted his entitlement to his attorneys' fees if successful.

The unfairness of limiting Reed Smith to the remainder of the Distribution Reserve Account is evident in the $32,000,000 claims that Jackson lobbed over the transom on the way out the door, after Jackson's other creditors had been paid, and after Reed Smith's reserve was fixed and funded at 74% of its only quantifiable claim in the bankruptcy. Nothing stopped Jackson from bringing his claims against Reed Smith in 2015 after the *Leviston* case and after he filed for bankruptcy. Instead, he held that card close to his vest throughout the bankruptcy. Then, days before his discharge, he filed his $32,000,000 malpractice and breach claims. This gamesmanship should not be rewarded.

The entire bankruptcy lasted only a year and a half (from roughly July 2015 to February 2017). In contrast, Jackson's adversary proceeding and objection to Reed Smith's Proof of

Claim went on for over six years—and still has not ended. Jackson's Schedule of Assets and Liabilities never disclosed that he held a $32,000,000 claim in his Schedule of Assets. This would have been of enormous significance to the creditors, since only approximately $22,350,000 was available for distribution to all creditors. *See* ECF No. 760 ¶ 9. That same revelation would have been enormously important to Reed Smith in considering the amount of the Distribution Reserve Account since a $32,000,000 malpractice claim would have signaled the expectation of significantly higher legal fees than would a simple proof of claim for roughly fifty times less. Jackson's strategy of not disclosing his $32,000,000 claims during the entire bankruptcy proceeding, and then filing the claim for himself, just before his discharge, undermines his ability to claim a full discharge as to Reed Smith's claim for attorneys' fees. *Cf.* 1 *Collier Bankruptcy Practice Guide* § 15.02 ("Inaccurate or incomplete lists or schedules may result in notice problems.").

If Jackson were to have won the adversary proceeding, he, alone, would have won $32,000,000 (plus attorneys' fees). Not a penny of that $32,000,000 would have gone to his creditors. In contrast, if Jackson had filed his adversary proceeding as the debtor-in-possession, then the costs of that litigation would have been borne by the estate, and the bankruptcy would have dragged on for years—unless the estate handled the litigation in a more rational fashion. True, the creditors would have benefitted if Jackson as debtor-in-possession recovered $32,000,000 for the estate—but that is not what Jackson chose to do. He chose to keep it all for himself.

Based on the facts surrounding this case, Reed Smith should be able to recover its attorneys' fees for defending the adversary proceeding and its proof of claim from Jackson personally, without being limited to the Distribution Reserve Account.

## **CONCLUSION**

For the reasons stated herein, Reed Smith respectfully requests that this Court issue an Order allowing Reed Smith to seek full recovery of its reasonable attorneys' fees from Jackson personally as to the adversary proceeding, which included litigation of both Jackson's claims against Reed Smith as well as Reed Smith's Proof of Claim, and granting Reed Smith such other and further relief as this Court deems just and proper.

Dated: July 18, 2023

Respectfully submitted,

AXINN, VELTROP & HARKRIDER LLP

*/s/ Thomas G. Rohback*
Thomas G. Rohback (ct01096)
90 State House Square
Hartford, CT 06103
Tel: 860.275.8100
Fax: 860.275.8101
Email: trohback@axinn.com

Craig M. Reiser, admitted *pro hac vice*
114 W 47th St
New York, NY 10036
Tel: 212.728.2200
Fax: 212.261.5654
Email: creiser@axinn.com

Allison M. Vissichelli, admitted *pro hac vice*
1901 L Street NW
Washington, DC 20036
Tel: 202.469.3510
Fax: 202.912.4701

*Attorneys for Defendants*
*Reed Smith LLP and Peter Raymond*

## **CERTIFICATE OF SERVICE**

      I, Thomas G. Rohback, certify that on July 18, 2023, I caused Creditor Reed Smith LLP's Supplemental Memorandum of Law on Behalf of Reed Smith LLP and Peter Raymond to be served via CM/ECF on the following counsel of record:

Joseph P. Baratta
Imran H. Ansari
Baratta, Baratta & Aidala, LLP
546 Fifth Avenue, 6th Floor
New York, NY 10036
Email: jpbaratta@barattalaw.com
        iansari@aidalalaw.com

John L. Cesaroni
Zeisler & Zeisler PC
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Email: jcesaroni@zeislaw.com


                                              */s/ Thomas G. Rohback*
                                              Thomas G. Rohback (ct01096)