# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# NEW HAVEN DIVISION

| | |
|---|---|
| In Re: <br><br> CURTIS JAMES JACKSON, III, <br><br> Debtor. | CHAPTER 11 <br><br> CASE NO. 15-21233 (AMN) |
| CURTIS JAMES JACKSON, III, <br><br> Plaintiff, <br><br> v. <br><br> REED SMITH LLP AND PETER RAYMOND, <br><br> Defendants. | ADVERSARY PROCEEDING <br> CASE NO. 17-02005 (AMN) |

### REORGANIZED DEBTOR'S SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO COURT'S SCHEDULING ORDER

Curtis James Jackson, III, (the "Reorganized Debtor"), hereby submits his supplemental memorandum of law pursuant to the Court's Scheduling Order Respecting a Motion for a Final Decree in the Chapter 11 Case and for the Deadline for the Filing of a Motion for Allowance of Attorney's Fees Pursuant to Fed. R. Bankr. P. 7054 (Doc. No. 1002)[1] (the "Scheduling Order"). The Reorganized Debtor respectfully disagrees with the Court's analysis in the Scheduling Order to the extent that it concludes that Reed Smith, LLP ("Reed Smith") may be entitled to a portion of the attorney's fees it now claims. Reed Smith is not entitled to any attorney's fees because it

---

[1] All docket references refer to docket numbers in the main bankruptcy case, *In re Jackson*, 15-21233, unless otherwise indicated. An identical order issued in *Jackson v. Reed Smith LLP*, Adv. Pro. No. 17-2005 (the "AP Case") at Doc. No. 610. The Reorganized Debtor's arguments apply to both cases.

1

never filed a proof of claim as to any of the fees it now seeks. Thus, any such claim for attorney's fees has been discharged and by seeking them, Reed Smith would be violating the Discharge Injunction (defined below).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1. On July 13, 2015 (the "Petition Date"), the Reorganized Debtor filed his voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code.

2. The bar date ("Bar Date") for all creditors, except governmental entities, to file proofs of claim was November 3, 2015. (Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines, Doc. No. 5.)[2]

3. On November 3, 2015, Reed Smith filed its Proof of Claim (Claim No. 18-1) (the "Reed Smith Claim"), which stated as the basis for the claim "[p]rofessional services rendered" and referred to an attachment. The attachment to the Reed Smith Claim provided, in relevant part,

> Furthermore, Reed Smith expressly reserves all rights to amend, modify and/or supplement this Proof of Claim in any respect, including, without limitation, with respect to the filing of an amended proof of claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein, or to file additional proofs of claim for additional claims, including, without limitation, claims for interest, fees and related expenses (including, without limitation, attorney's fees).

4. Reed Smith never filed any amended or additional proofs of claim.

---

[2] On June 2, 2016, the Court entered the Order Granting the Debtor's Motion for Approval of Notice Procedures and Establishment of a Bar Date for Unknown Creditors (Doc. No. 498) (the "Unknown Bar Date Order"). The Unknown Bar Date Order provided a bar date of June 23, 2016 for those who either did not receive notice of the Reorganized Debtor's bankruptcy case or was not listed in the Reorganized Debtor's schedules. (Unknown Bar Date Order, ¶ 5.) Since Reed Smith was listed on the Reorganized Debtor's schedules and there is no dispute that it received notice of this bankruptcy case, the Unknown Bar Date Order does not apply to it. (*See* Schedule F, Doc. No. 55.)

5. On July 7, 2016, the Court entered an order (ECF Doc. No. 552, the "Confirmation Order") confirming the Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated May 25, 2016 (ECF Doc. No. 485, the "Plan"). The Plan provides that "[a] Holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order." (Plan, § 10.06(c)(i).) Furthermore, the Plan makes clear that in order for a creditor to receive a distribution, it must hold an "Allowed Claim". (*Id.*, § 1.05, 1.16, 10.06(a), (c).)

> ***"Allowed"*** means, when used with respect to a Claim (including any Administrative Claim), or any portion thereof, a Claim, Administrative Claim, or any portion thereof (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or a Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan.

(*Id.*, § 1.05.) The debt owed to Reed Smith was listed as disputed in the Reorganized Debtor's schedules. (Schedule F, Doc. No. 55; Amended Schedule E/F, Doc. No. 359.)

6. The Plan binds, *inter alia*, any Holder of a Claim against the Debtor and his respective successors and assigns, whether or not such Claim of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan. . . ." (Confirmation Order, ¶ 6.) Moreover, the Confirmation Order provides:

> ***Except as expressly provided in the Plan or this Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date.***

(*Id.*, ¶ 19.) In addition, the Confirmation Order contains an injunction (the "Discharge Injunction") against certain activities by holders of claims:

> ***Except as otherwise provided in the Plan, from and after the Effective Date with respect to the Debtor, all Holders of Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan or this Order. If allowed by the Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.***

(*Id.*, ¶ 20.)

7. Reed Smith never objected to the Plan. (Confirmation Order, ¶ G.) In fact, Reed Smith voted to accept the Plan. (Report and Certification Regarding Ballots on Third Amended Plan of Reorganization Proposed by Curtis James Jackson, III, Doc. No. 535, Exhibit 2.)

8. The Reorganized Debtor filed his objection to the Reed Smith Claim on October 18, 2016 (Doc. No. 660).

9. The Reorganized Debtor filed his Application for Entry of Discharge (Doc. No. 742) (the "Application") on December 30, 2016. Reed Smith did not object to the Application. The order discharging the Reorganized Debtor entered on February 2, 2017 (Doc. No. 765).

10. The Plan of Reorganization now has been consummated, and the Reorganized Debtor received his Chapter 11 discharge. The Disbursing Agent (as defined in the Plan) has paid

4

unsecured creditors a dividend of 72% to 74% of their allowed claims and is holding funds sufficient to pay the only disputed claim, the Reed Smith Claim.

11. The Reorganized Debtor has filed a Renewed Motion for Entry of Final Decree and Order Closing the Chapter 11 Case (Doc. No. 990) (the "Motion for Final Decree"), seeking, *inter alia*, the entry of a final decree and an order closing this Bankruptcy Case. Reed Smith and Peter Raymond have objected to the Motion for Final Decree. An initial hearing on this matter was held on June 28, 2023. At that hearing, the issue of whether Reed Smith would be claiming attorney's fees was raised, and Reed Smith's counsel indicated that it would be seeking attorney's fees in excess of $5 million based upon a provision in the Retainer Agreement entered into by and between the Reorganized Debtor and Reed Smith, dated May 25, 2004 (the "Retainer Agreement").

12. After the hearing, the Court issued the Scheduling Order, *inter alia*, setting forth its analysis of the viability of Reed Smith's prospective motion for attorney's fees and permitting supplemental memoranda should the parties disagree with the Court's analysis.

**II.     LAW AND ARGUMENT**

13. The Reorganized Debtor agrees with almost all of the Court's analysis as set forth in the Scheduling Order. However, the Reorganized Debtor disagrees with the Court's analysis to the extent that it concludes that "assuming arguendo that Reed Smith wins an eventual motion for allowance of attorney's fees related to the AP Case, the most Reed Smith will receive is whatever is left in the Distribution Reserve Account." Reed Smith is not entitled to any attorney's fees because it never filed a proof of claim as to any fees related to the AP Case, or any fees other than for prepetition services rendered to the Reorganized Debtor. Thus, any such claim for attorney's fees has been discharged and by seeking them, Reed Smith would be violating the Discharge Injunction.

14. The cases cited by the Court in the Scheduling Order are instructive. The United States Supreme Court in *Travelers Cas. & Sur. Co. v PG & E*, 549 U.S. 443, 449 (2007), held that the Bankruptcy Code does not disallow "contract-based claims for attorney's fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law." The Court there specifically stated that it was not deciding whether "other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees." *Id.* at 455. In *Ogle v. Fid. & Deposit Co.*, 586 F.3d 143, 147 (2d Cir. 2009), the United States Court of Appeals for the Second Circuit held that "an unsecured claim for postpetition fees, authorized by a valid pre-petition contract, is allowable under section 502(b) **and is deemed to have arisen pre-petition**." (Emphasis added.)

15. In both *Travelers* and *Ogle*, the creditors were allowed to recover attorney's fees. However, unlike here, the creditors in those cases had filed proofs of claim for attorney's fees in accordance with the Bankruptcy Courts' orders. *Id.* at 145; *Travelers Cas. & Sur. Co.*, 549 U.S. at 447; *see also ResCap Liquidating Trust v. PHH Mortg. Corp. (In re Residental Capital, LLC)*, 558 B.R. 77, 86 (S.D.N.Y 2016) (finding that the creditors in *Travelers* and *Ogle* "had timely preserved their claims for attorney's fees by satisfying applicable procedural requirements, including by filing proofs of claims, which supports the conclusion that the appellees were also required to do so in this case."). Moreover, those cases did not address a situation, like here, where the creditor is bound by a plan of reorganization limiting its claim to the amount set aside for it. Thus, "[n]either *Ogle* nor *Travelers* indicated that claimants for attorney's fees . . . could avoid the discharge of their contractual claims for attorney's fees even if they failed to file proofs of those claims in accordance with the Bankruptcy Court's Orders." *ResCap Liquidating Trust*, 558 B.R. at 86. In *ResCap*, as here, the claimant did not file a claim for attorney's fees pursuant to the prepetition

contracts, which the Court concluded following *Ogle*, were prepetition claims accruing at the time the contracts were executed, though contingent and unliquidated. *Id.* The Court found that "the appellees could have submitted proofs of claims to preserve these claims prior to the bar date but did not. *Id.* "Therefore, pursuant to the Bar Date Order, the Plan, and the Confirmation Order, the Counterclaims [seeking attorney's fees] were discharged and became subject to the Injunction Provisions." *Id.*

16.     Here, similarly, despite the fact that its claim, if any, for attorney's fees accrued prepetition in 2004 when the Retainer Agreement was executed; *see id.*; *In re Navillus Tile, Inc.*, 634 B.R. 847, 862 (Bankr. S.D.N.Y. 2021) ("[C]ontract-based bankruptcy claims arise at the time the contract is executed, regardless of when the alleged breach occurs.") (quotation marks and citations omitted). Reed Smith did not file a timely proof of claim for the attorney's fees it now plans to seek. The only reference to attorney's fees (other than the fees for prepetition services rendered) in the Reed Smith Claim makes clear that that Reed Smith was not making a claim then for the attorney's fees it seeks now for post-petition litigation. The Reed Smith Claim expressly contemplated amending, modifying, or supplementing the Reed Smith Claim including by *inter alia*, filing "***additional proofs of claim for additional claims, including, without limitation, claims for interest, fees and related expenses (including, without limitation, attorney's fees)***." (Emphasis added.) It is obvious, then, that by stating that it was reserving its right to file a separate claim for attorney's fees at some future point, Reed Smith was not seeking them at that time it filed the Reed Smith Claim.

17.     Of course, Reed Smith did not file any additional claim, and the Bar Date passed nearly eight (8) years ago. Moreover, the Plan was confirmed by the Confirmation Order, which specifically discharges claims, whether filed or not (Plan, § 9.04), the Plan contains the Discharge

7

Injunction, and the Debtor has received his discharge. 11 U.S.C. § 524(a)(2) provides that a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." In an individual Chapter 11 case, subject to exceptions not applicable here, the debtor receives a discharge after confirmation of a plan and completion of the plan payments. *See* 11 U.S.C. § 1141(d)(1), (5). That, of course, has happened in this case. "Typically, this discharge is described as being given 'in exchange' for the treatment of pre-confirmation claims provided and other rights afforded creditors under the chapter 11 plan." *Baroni v. One West Bank, F.S.B. (In re Baroni)*, 2017 Bankr. LEXIS 3327, at *9 (Bankr. C.D. Cal. Sept. 29, 2017) (citing cases).

18. Even though Reed Smith could and should have filed a claim for the attorney's fees it now seeks prior to the Bar Date, it should have become readily apparent that it would have incurred fees defending the Reed Smith Claim prior to the entry of discharge. The Reorganized Debtor filed his objection to the Reed Smith Claim on October 18, 2016 (Doc. No. 660), and the order discharging the Reorganized Debtor entered on February 2, 2017 (Doc. No. 765). Assuming, *arguendo*, that it was permissible for Reed Smith to amend the Reed Smith Claim or file an additional proof of claim to add a claim for attorneys' fees incurred after to the Bar Date,[3] the Reorganized Debtor's discharge completely foreclosed that option. *See In re St. James Mech., Inc.*, 434 B.R. 54, 61 (Bankr. E.D.N.Y. 2010) ("The discharge granted under Bankruptcy Code Section

---

[3] The Reorganized Debtor does not suggest that Reed Smith would have overcome the stringent excusable neglect standard to add a claim after the Bar Date. *See Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-367 (2d Cir. 2003) ("We have noted that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule and held that where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.") (citation and quotation marks omitted).

1141 applies to all creditors whether or not they have filed a proof of claim in the case and the prepetition claims of these creditors no longer remain as obligations of the debtor, except in limited circumstances not applicable to this case.").

19. Reed Smith, therefore, does not have an "Allowed Claim" claim for the attorney's fees that it seeks, and therefore, it is not entitled to a distribution on any such claim. (Plan, § 10.06(a), (c).) Specifically, Reed Smith's claim for attorney's fees incurred litigating against the Reorganized Debtor has not been allowed by a Final Order, was listed in the Reorganized Debtor's schedules as disputed and no timely proof of claim was filed, and was not expressly allowed in a liquidated amount in the Plan. (*See id.*, § 1.05.) Any claims that Reed Smith had for attorney's fees associated with the AP Case or the Reorganized Debtor's objection to the Reed Smith Claim were never timely asserted and have long-since been discharged. (*See* Confirmation Order, ¶ 19.) Therefore, any attempt by Reed Smith to seek attorney's fees in connection with the AP Case, or otherwise other than the claim for services rendered prepetition, would violate the Discharge Injunction. (*See id.*, ¶ 20.)[4] While Reed Smith may have purported to reserve all rights to amend or file an additional proof of claim, it could not reserve rights that it did not have. Reed Smith, thus, is not permitted to attempt to recover the attorney's fees it seeks at all. The Debtor respectfully disagrees with the Court's analysis to the extent that it suggests that it would be possible for Reed Smith to recover even a portion of the attorney's fees on account of its litigation with the Reorganized Debtor.[5]

---

[4] The Court may enforce the Discharge Injunction, *inter alia*, by holding a creditor in civil contempt. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019).
[5] The Reorganized Debtor does agree that, assuming *arguendo*, that Reed Smith could recover the attorney's fees it seeks, such fees would be limited to the balance of the amount of the funds being held by the Disbursing Agent on account of the Reed Smith Claim.

### III. **CONCLUSION**

WHEREFORE, the Reorganized Debtor respectfully requests that the Court grant his Motion for Final Decree, enter and order closing the Reorganized Debtor's Chapter 11 case, retain jurisdiction as to the matters on appeal, find that Reed Smith is barred from pursuing its attorney's fee claim by the Discharge Injunction, and grant him such other and further relief as justice requires.

Dated this 18th day of July, 2023, at Bridgeport, Connecticut.

                        THE REORGANIZED DEBTOR,
                        CURTIS JAMES JACKSON III

By:   */s/ John L. Cesaroni*
       James Berman (ct06027)
       John L. Cesaroni (ct29309)
       Zeisler & Zeisler, P.C.
       10 Middle Street, 15th floor
       Bridgeport, CT  06604
       Tel:(203) 368-4234
       Fax: (203) 549-0432
       Email:  jberman@zeislaw.com
                  jcesaroni@zeislaw.com
       Attorneys for the Debtor

**CERTIFICATE OF SERVICE**

I, John L. Cesaroni, hereby certify that on the 18th day of July, 2023, the Reorganized Debtor's Supplemental Memorandum of Law in Response to Court's Scheduling Order was filed electronically and sent by e-mail to all appearing parties by operation of the Court's electronic filing system.

Dated at Bridgeport, Connecticut, this 18th day of July, 2023.

        THE REORGANIZED DEBTOR,
        CURTIS JAMES JACKSON III

By:   */s/ John L. Cesaroni*
      James Berman (ct06027)
      John L. Cesaroni (ct29309)
      Zeisler & Zeisler, P.C.
      10 Middle Street, 15th floor
      Bridgeport, CT 06604
      Tel:(203) 368-4234
      Fax: (203) 549-0432
      Email: jberman@zeislaw.com
             jcesaroni@zeislaw.com
      Attorneys for the Debtor