# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF CONNECTICUT
# NEW HAVEN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| CURTIS JAMES JACKSON, III | CASE NO. 15-21233 (AMN) |
| DEBTOR. | |

### REPLY IN SUPPORT OF EXPEDITED MOTION FOR AN ORDER REOPENING BANKRUPTCY CASE FOR THE LIMITED PURPOSE OF (I) ENFORCING THE PLAN, CONFIRMATION ORDER, AND DISCHARGE INJUNCTION AND (II) AWARDING SANCTIONS

Curtis James Jackson, III (the "Debtor"), the reorganized debtor in the above-captioned bankruptcy case (the "Bankruptcy Case"), filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), files this reply (the "Reply") in support of his motion [Dkt. No. 1026] (the "Motion")[1] for an order reopening his above-captioned bankruptcy case (the "Bankruptcy Case"), for the limited purpose of enforcing the Plan, Confirmation Order, and Discharge Order (all as defined below), and awarding sanctions against Jahaira Rodriguez ("Rodriguez"), plaintiff in a purported action against the Debtor in New York Supreme Court, New York County, captioned *Rodriguez v. Jackson*, No. 152779/2025 (N.Y. Sup. Ct. N.Y. Cnty.) (the "State Court Action"), and states as follows:

### PRELIMINARY STATEMENT

1.  Rodriguez's objection rests on the mistaken premise that the State Court Action, and the Debtor's limited, defensive participation therein, somehow divest this Court of the exclusive jurisdiction it expressly retained under the Plan and under binding Second Circuit

---

[1] All of the capitalized items not otherwise defined herein have the meanings ascribed to them in the Motion.

precedent to interpret and enforce its own discharge injunction. *See* Dkt. No. 1046 (the "Objection"). That premise is legally unfounded, factually inaccurate, and contrary to basic tenets of bankruptcy law.

2. *First*, no participation in a state-court lawsuit—including the filing of a defensive motion to dismiss to preserve or assert meritorious discharge defenses—could waive, forfeit, or otherwise impair the Debtor's right to invoke this Court's authority under section 350(b) of the Bankruptcy Code. Nor could it create any jurisdictional or preclusion bar. The State Court lacks the power to enforce this Court's discharge order, and no ruling it makes on the Debtor's motion to dismiss (or motion for a stay) would bind this Court or render the requested relief unnecessary. The Debtor's limited participation via the motion to dismiss in particular was compelled by New York procedural rules that would otherwise deem the discharge defense waived by inaction, and was taken precisely to avoid the very prejudice Rodriguez now seeks to manufacture.

3. *Second*, none of the abstention doctrines Rodriguez relies upon—mandatory, permissive, or the *Rooker-Feldman* doctrine—apply here. Enforcement of the discharge injunction is quintessentially a core proceeding. This Court has exclusive jurisdiction under the Plan and Confirmation Order to decide all disputes involving the existence, nature, or scope of the discharge and discharge injunction, and governing Second Circuit authority confirms that only the issuing bankruptcy court may exercise contempt power to vindicate its discharge order. Accordingly, Rodriguez's repeated claim that the Debtor is forum shopping, is absurd. For the same reason, abstention would be legally impermissible—and practically unwise, as this Court is best qualified to address the legal issues that the Objection discussed and resolve this dispute.

4. *Third*, Rodriguez's assertion that her claim was not discharged because she was a "known" creditor entitled to direct notice is premature. As she contends publication notice was

insufficient despite this Court's prior approval of such notice, she must prove that she was a known creditor entitled to more. She cannot be permitted to subvert this Court's exclusive jurisdiction to determine nondischargeability claims under section 523(a)(6) based on threadbare, conclusory allegations that she was a known creditor made for the first time nearly nine years after the Debtor was discharged. The current record establishes only that she was, at most, an unknown claimant who received constitutionally adequate publication notice. To allow her to bypass this Court on mere allegations would effectively render its exclusive jurisdiction optional and undermine the Bankruptcy Code's policy in favor of discharge.

5. Rodriguez nonetheless asks this Court to prematurely decide heavily disputed allegations on a gossamer-thin record with no evidence in a non-evidentiary hearing before the Court is even able to consider the substantive relief that the Debtor requests. Virtually Rodriguez's entire argument rests on the assumption that she was a known creditor. But she can only prove that she was a known creditor by substantiating her allegations or establishing that she gave the Debtor notice of her claim or allegations before the bar date. She has done neither, and that alone is reason enough to overrule her Objection.

6. At bottom, the Objection offers no principled basis to deny reopening. It instead underscores the urgent need for this Court to intervene, enforce its injunction, and halt a state-court action that squarely contravenes the discharge granted to the Debtor nearly a decade ago. The Motion to Reopen should be granted in its entirety, and Rodriguez should be held accountable for her continued disregard of this Court's orders.

**ARGUMENT**

  A. **The State Court Proceeding, and the Debtor's Motion to Dismiss Filed Therein, Do Not Prevent the Bankruptcy Court from Reopening the Case.**

  7. Rodriguez contends that the Debtor forfeited the right to return to this Court because he first filed a motion to dismiss in the State Court Action (the "Motion to Dismiss") and, because the motion will soon be fully briefed, the State Court alone should determine the discharge issues. That position is contrary to both governing law and the specific provisions of the Debtor's confirmed Plan. The Debtor's limited, *defensive* participation in the State Court Action does not strip this Court of the jurisdiction it exclusively reserved under the Plan, does not waive the right to ask this Court to enforce the discharge injunction, and does not provide any reason to deprive the Debtor of the right Congress afforded him under section 350(b) of the Bankruptcy Code to seek to reopen his Bankruptcy Case for such purpose.

  8. The fact that the Debtor participated in the State Court Action is of no consequence. This Court retains full authority to determine that Rodriguez's claim was discharged, and that the State Court Action violates the discharge injunction, even if the Debtor "litigated fairly extensively in the [State] Court in [an] unsuccessful effort to convince the [State] Court that the discharge applied." *See, e.g.*, *In re Dabrowski*, 257 B.R. 394, 407 (Bankr. S.D.N.Y. 2001) (concluding that a housing court action violated the discharge injunction even after the debtor raised his bankruptcy discharge as a defense on summary judgment and the housing court determined that the defense was without merit). Thus, "[i]f it finds that the Debtor was in fact discharged, this Court can enforce the discharge in the face of the contrary state court decision." *Id.* at 408. Under such

4

circumstances, "the [State] Court's determination contrary to this Court's analysis is not binding on this Court, under res judicata, collateral estoppel, *Rooker-Feldman,* or otherwise."[2] *Id.* at 412.

9. Rodriguez's citations to the cases denying motions to reopen based on pending state court proceedings are plainly distinguishable. For example, *In re Palumbo* involved a motion to reopen where "[t]he State Court action has dragged on for over 10 years and is now ready for trial." 556 B.R. 546, 554 (Bankr. W.D.N.Y. 2016). No such delay has occurred here and the State Court Action is not ready for trial—Rodriguez has not even filed a complaint. Rodriguez's citation to *In re Solutia, Inc.*, is even more easily distinguishable, because the dispute in that case "involve[d] non-debtor parties," the motion to reopen was filed by non-debtor parties, and the debtor actually opposed reopening the case. 653 B.R. 99, 104 (Bankr. S.D.N.Y. 2023). Thus, *Palumbo* and *Solutia* provide Rodriguez no support.

10. Moreover, the Debtor was entitled to assert all colorable grounds on which it could move to dismiss the State Court Action. By filing a motion to dismiss premised, in part, on the discharge, the Debtor preserved those defenses which would otherwise be waived. New York's procedural rules require defendants to assert the discharge as a defense by motion or responsive pleading, or it is waived. N.Y. C.P.L.R. 3211(a)(5), (e). Nothing in the Bankruptcy Code or the Plan required the Debtor to surrender the discharge as a defense and immediately run to this Court. This is especially true when no automatic stay barred the State Court Action, *e.g.*, *In re Rosillo*, No. 07-11103, 2007 WL 2230765, at *3 (Bankr. S.D.N.Y. July 31, 2007), and there was no

---

[2] More simply, claim and issue preclusion do not apply because the state court did not enter any orders or judgments that could have preclusive effect here. Indeed, no motions have been fully briefed or argued before the state court, let alone decided. *See In re Wood*, 488 B.R. 265, 272 (Bankr. D. Conn. 2013) ("Collateral estoppel, or issue preclusion, is that doctrine which holds that 'an issue of law or fact *actually litigated and decided* by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.'" (citation omitted) (emphasis added)); *id.* at 271 n.3 ("The doctrine of res judicata, or claim preclusion, bars the subsequent litigation of issues that were *actually decided* in a prior proceeding, as well as those that could have been raised in the prior proceeding, between the same parties on the same cause of action." (citations omitted) (emphasis added)).

guarantee the State Court would wait for this Court to address the issues. Indeed, as this Court is aware, the State Court was unwilling to wait. *See* Dkt. No. 1034.

11. Thus, the Debtor should not be punished for simply attempting to preserve the defenses that he is entitled to assert in the State Court Action, particularly when Rodriguez, not the Debtor, was the party who invoked the State Court's jurisdiction in the first place.[3]

12. Furthermore, even if a doctrine like *Rooker-Feldman* could prevent this Court from determining whether Rodriguez's claim was discharged or the State Court Action was barred by the discharge injunction, it would be no bar. Rodriguez cannot even satisfy the threshold requirement that the State Court judgment have been entered before the bankruptcy court proceedings were commenced. *E.g.*, *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). In other words, "*Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Id.* Additionally, an exception to *Rooker-Feldman* "exists when the state court judgment is void, which . . . is the case when [the] judgment is entered either before or after the claim underlying the judgment is discharged." *E.g.*, *Dabrowski*, 257 B.R. at 406 (citing cases). Thus, *Rooker-Feldman* is plainly inapplicable.

13. The foregoing principles bear out binding Second Circuit precedent that "the discharge injunction is an order issued by the bankruptcy court and that **the bankruptcy court alone** possess[es] the power and unique expertise to enforce it." *Bruce v. Citigroup Inc.*, 75 F.4th 297, 305 (2d Cir. 2023) (emphasis added), *cert. denied*, 144 S. Ct. 565 (2024). Thus, the State Court's decisions not only have no binding effect on this Court, the State Court lacks any authority

---

[3] Rodriguez incorrectly characterizes the Motion to Dismiss as submitting the dischargeability issue to the State Court. Obj. ¶ 24. A motion to dismiss only challenges the sufficiency of a pleading, it does not ask the court to determine disputed questions of fact. Thus, if the State Court decides the Motion to Dismiss in the future, it would only determine the sufficiency of Rodriguez's pleading under New York law, not the discharge question under federal law.

whatsoever to actually enforce the discharge injunction. *See id.* (explaining that "only the issuing court may exercise its civil contempt powers to enforce its discharge order, and the injunction which springs from it").

14. Accordingly, as set forth in the Debtor's confirmed Plan, this Court still "retain[s] exclusive jurisdiction . . . to," *inter alia*, "hear and determine all disputes involving the existence, nature, or scope of the discharge[ and] injunctions . . . granted pursuant to the Plan or the Confirmation Order." Plan § 12.04(e). Nothing the Debtor did in the State Court Action could operate as a waiver of his right to seek relief from this Court. *See* 11 U.S.C. § 524(a)(1)–(2) (stating that "[a] discharge in a case under this title . . . voids any judgment at any time obtained," and "operates as an injunction against the commencement or continuation of an action . . . to collect," any discharged debt, in each case "whether or not discharge of such debt is waived"). Rodriguez's argument to the contrary is entirely without merit.

    **B.**    **The Debtor's Motion to Stay the State Court Proceeding Also Does Not Prevent This Court from Reopening His Case to Consider Whether to Enforce the Discharge Injunction.**

15. For the same reasons, the Debtor's motion to stay the State Court Action, and the State Court's decision not to sign the order to show cause by which Debtor brought his motion,[4] have no bearing on whether this Court can, or should, grant his Motion to Reopen.

16. Additionally, Rodriguez's argument that the State Court's mere decision not to sign the order to show cause somehow precludes or compels this Court not to reopen the Debtor's case ignores the authority on which the Debtor moved for a stay. The Debtor moved under N.Y. C.P.L.R. 2201. *See* Dkt. No. 1034-1. That rule permits the State Court to "grant a stay of proceedings in a proper case, upon such terms as may be just." N.Y. C.P.L.R. 2201. In other words, it is a

---

[4] Debtor's motion was brought via order to show cause rather than notice of motion. *See generally* N.Y. C.P.L.R. 2214(d).

discretionary tool to help the State Court manage its docket, *inter alia*, to preserve judicial economy. *E.g.*, *Belopolsky v. Renew Data Corp.*, 41 A.D.3d 322, 322 (N.Y. App. Div. 2007).

17. Just because the State Court seemingly disagreed as to the best way to manage its docket does not mean that this Court cannot, or should not, exercise its discretion to determine whether to enforce the discharge injunction and bar the State Court Action from proceeding. Nothing in the State Court's ambiguous note on the Debtor's proposed order granting his motion to stay stating that the State Court "[d]ecline[d] to sign" the order can be said to have any kind of preclusive effect. *See* Dkt. No. 1034-1. This is true even if the stay had been denied on the merits (which it was not).[5]

    **C. This Court Should Not Abstain, or Decline to Reopen the Debtor's Bankruptcy Case, Based on the State Court Proceedings or the Mere *Possibility* that the State Court Has Concurrent Jurisdiction—This Court is Best Qualified to Determine if Rodriguez's Alleged Claim Is Discharged.**

18. There are no grounds for this Court to abstain from any of the matters raised in the Debtor's recent motions. For example, mandatory abstention under 28 U.S.C. § 1334(c)(2) is plainly inapplicable. The mandatory abstention doctrine requires federal courts to abstain from hearing non-core bankruptcy matters concerning state law issues in certain circumstances. *E.g.*, *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447 (2d Cir. 2005). To the extent this matter requires a determination as to whether Rodriguez's claim was dischargeable, such matter is a core proceeding. 28 U.S.C. § 157(b)(2)(I). Moreover, because this Court retains exclusive jurisdiction to enforce the discharge injunction, it cannot defer such matter to the State Court.

19. The Court should not entertain any permissive abstention argument under 28 U.S.C. § 1334(c)(1). "Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left

---

[5] Because the court declined to sign the order to show cause, it merely halted the motion without further briefing. It did not constitute a decision on the merits.

to the bankruptcy court's discretion." *E.g.*, *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002). "Permissive abstention can be warranted 'in the interest of justice, or in the interest of comity with [s]tate courts or respect for [s]tate law.'" *Id.* Again, because this Court retains **exclusive** jurisdiction to enforce the discharge injunction, it simply cannot elect to abstain in favor of the State Court.

20. Even if the Court could abstain, however, there would be no grounds for it to do so. "As a threshold matter, 'there is a presumption in favor of the exercise of federal jurisdiction and against abstention.'" *E.g.*, *Asselin-Connolly, LLC v. Rubenstein (In re Rubenstein)*, Adv. No. 09-02056, 2010 WL 3765952, at *3 (Bankr. D. Conn. Sept. 20, 2010) (citation omitted). More importantly, "a bankruptcy court has 'unique expertise in interpreting its own injunctions and determining when they have been violated.'" *Bruce*, 75 F.4th at 304. As a result, "[a] bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction and, therefore, should not abstain from doing so." *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995). "[W]here a motion seeks to 'prevent the prosecution of causes of action expressly prohibited by the confirmation order,' it would be 'difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction.'" *In re Residential Cap., LLC*, 508 B.R. 838, 849–50 (Bankr. S.D.N.Y. 2014) (citing *In re Charter Commc'ns*, Case No. 09-11435, 2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010)).

21. The fact remains that this Court is most familiar with the facts and circumstances related to confirmation of the Plan and entry of the Confirmation Order and Discharge Order, including the facts and circumstances related to approval of the Debtor's publication notice procedures, his discharge, and the injunctions set forth in the Plan, the Confirmation Order, and

9

the Discharge Order. Thus, not only are there no grounds for the Court to abstain, it would be improper and inappropriate for it to abstain.[6]

22. The Court's familiarity with such matters is particularly relevant to the discharge exception that Rodriguez claims under section 523(a)(3)(B), which does not apply, *inter alia*, if Rodriguez had actual knowledge of the Debtor's Bankruptcy Case. This Court knows better than any other court the extraordinary publicity that the Debtor's Bankruptcy Case garnered and has expressed doubt in the past that creditors who violated the discharge injunction "were unaware of the Debtor's case, given the Debtor's notoriety as an entertainer." Dkt. No. 873, at 5.

23. The Debtor maintains discovery will show that Rodriguez had timely, actual knowledge of his Bankruptcy Case, rendering her claim discharged notwithstanding section 523(a)(3)(B). It is implausible that Rodriguez would not have known of the Debtor's Bankruptcy Case, not only because of its general notoriety or the allegations she makes against him. She was a professional model who was featured in music videos with rap and hip-hop artists,[7] and has hundreds of YouTube videos discussing celebrity culture.[8] Rodriguez surely would have known about the Debtor's Bankruptcy Cases.

24. For the same reasons why the Court should not abstain, the totality of the circumstances more than establishes that "good cause" exists for this Court to exercise its "broad discretion" to reopen the Debtor's Bankruptcy Case "to accord relief to the debtor" under section

---

[6] Permissive abstention under section 305(a) of the Bankruptcy Code is also improper and inappropriate. "Abstention under [section] 305 differs from abstention under 28 U.S.C. § 1334(c)(1) in that the former is much broader in scope." *Rubenstein*, 2010 WL 3765952, at *6. Thus, because there was no basis for abstaining under section 1334(c)(1), there is no basis for abstaining under section 305(a).

[7] *See* https://www.modelmayhem.com/jahairamaravilla.

[8] *See* https://www.youtube.com/@jahairamaravillatv/videos.

10

350(b). *See In re Paduch*, 636 B.R. 340, 343 (Bankr. D. Conn. 2022) (discussing the standard for reopening cases). Rodriguez's arguments to the contrary are baseless.

25.  Rodriguez attempts to argue that the State Court "is already closest to the merits and the relationship of the parties." Obj. ¶ 15. That is patently untrue. Rodriguez has not filed a complaint or any of her substantive allegations with the State Court even though she filed her Summons with Notice in February. The State Court has not held any hearing, heard any argument, received any fully briefed motions, or decided any motions on the merits. In fact, by reviewing the briefing on this matter, this Court already understands the dispute better than the State Court.

26.  Rodriguez also argues that the Debtor would suffer no harm or prejudice if the Court denies his Motion. *Id.* ¶ 18. However, the issues that Rodriguez raises are complicated issues of core bankruptcy law that should be decided by a bankruptcy court, not a state court that lacks experience in such matters, and the Debtor's right to have this Court decide those matters is protected by Congress. *See* Fed. R. Bankr. P. 4007(c), 1983 Advisory Committee Note. Moreover, the Debtor would be unable to obtain contempt sanctions from this Court, which is the only Court with the power to enforce its discharge injunction against Rodriguez. *E.g.*, *Bruce*, 75 F.4th at 305.

27.  Rodriguez also claims that the Debtor is attempting to silence her. Obj. ¶ 17. This is false. First, the parties stipulated to the sealing procedures she now criticizes. Second, nothing prevents her from divulging the details of her allegations to this Court under seal, or even from disclosing the details publicly outside of these proceedings so long as she does not disclose sealed materials. However, she will no longer be able to use the pretext of litigation to shield herself from claims of defamation. And third, if this Court confirms Rodriguez's claims are not discharged, she will be able continue the State Court Action with whatever restrictions the State Court deems appropriate, if any.

28. But Rodriguez's primary argument essentially boils down to the proposition that this Court should decline to exercise its discretion to reopen the Debtor's Bankruptcy Case because the State Court *might* have concurrent jurisdiction to decide whether her claim was discharged—an argument that flies in the face of this Court's specific reservation of exclusive jurisdiction over matters relating to the discharge. Plan § 12.04(e). Specifically, she argues that the State Court would have jurisdiction if she can prove that section 523(a)(3)(B), rather than section 523(a)(6), is the relevant discharge exception. Obj. ¶ 22. This Court should not entertain such an argument based solely on hotly contested, hardly developed facts, as discussed below. Doing so would wrongly and prematurely deprive the Debtor of the right to seek this Court's relief.

### D. Rodriguez's Argument That Her Claim Was Not Discharged Because She Was a Known Creditor Entitled to More Than Publication Notice Is, at Most, a Factual Issue That the Court Must Reopen the Case to Decide.

29. Rodriguez argues that this Court should not reopen the Debtor's Bankruptcy Case to enforce the discharge injunction because she was a known creditor entitled to more than publication notice of the Debtor's Bankruptcy Case. Therefore, she argues, her claim was not discharged and is nondischargeable under section 523(a)(3)(B).

30. Specifically, Rodriguez argues that she was a known creditor because the alleged conduct was intentional and she claims that the Debtor knew her. Again, the Debtor vehemently denies Rodriguez's allegations and, of course, disputes that Rodriguez was a known creditor. The Debtor has conducted a thorough investigation of Rodriguez's allegations (to the extent possible based upon the limited information provided and the significant passage of time), including inquiring with persons who may have relevant knowledge based on her allegations. The investigation failed to uncover anything related to Rodriguez or her allegations. Neither the Debtor nor anyone he has contacted has any recollection of Rodriguez or her allegations. The Debtor also

examined photographs of Rodriguez and did not recognize her. In short, the Debtor has been unable to find any evidence that he ever even so much as met Rodriguez.

31. The existence of this dispute, standing alone, prevents Rodriguez from leveraging such arguments to establish that no cause exists under section 350(b) to reopen the Debtor's Bankruptcy case. "The burden of proving inadequate notice lies with the party contending that a plan's discharge or injunction does not apply." *E.g.*, *In re RML, LLC*, 662 B.R. 858, 868 (Bankr. S.D.N.Y. 2024), *motion to certify appeal granted*, Case No. 22-10784, 2024 WL 4269896 (Bankr. S.D.N.Y. Sept. 23, 2024). This Court has already determined that the Debtor's publication notice was sufficient for unknown creditors. *See* Dkt. No. 498.

32. ***Thus, if Rodriguez contends such publication notice was insufficient, she must prove that she was a known creditor.*** Indeed, the section 523(a)(3)(B) exception to discharge on which she relies applies exclusively to known creditors. *See, e.g.*, *In re Schlueter*, 391 B.R. 112, 116 (B.A.P. 10th Cir. 2008) (stating that "[p]ursuant to § 523(a)(3), a debtor has a responsibility to list claims only if known"); *In re Phillips*, 599 B.R. 133, 137 (Bankr. D. Kan. 2019) (explaining that "a claim unknown to the debtor is not within the exception of § 523(a)(3)"); *In re Garland*, 501 B.R. 195, 199 (Bankr. S.D.N.Y. 2013) (stating that "[t]he creditor must be known to the debtor" for section 523(a)(3)(B) to apply); *In re Wilson*, 200 B.R. 72, 74 (Bankr. M.D. Fla. 1996) (concluding that section 523(a)(3)(B) was inapplicable because "it is clear that Aetna was not known by the Debtor as an entity which was or might assert a claim against it").

33. Rodriguez cannot establish on the present record (to the extent there is a record), and on the unsupported and unsubstantiated allegations in her Objection, that she was a known creditor. This Court's hearing on the Motion to Reopen is not even the proper occasion for doing so, as it is non-evidentiary.

34.     Rodriguez nonetheless attempts to subvert this Court's exclusive jurisdiction to determine nondischargeability claims under section 523(a)(6) by merely claiming (she has not even submitted a declaration in support of her objection or any other evidence, admissible or otherwise) the alleged incident occurred and that she was a known creditor. Creditors cannot avoid the exclusive jurisdiction that Congress vested in bankruptcy courts to decide whether claims are nondischargeable under section 523(a)(6) by sitting on their allegations until after a debtor obtains a discharge and, years after the bankruptcy court closes the debtor's case, asserting that the debtor should have known they were a creditor based on alleged prepetition events. Such gamesmanship cannot be tolerated as it would effectively render this Court's exclusive jurisdiction over such claims optional and undermine the Bankruptcy Code's policy in favor of discharge.

35.     Congress deliberately made the deadline for section 523(c) nondischargeability complaints both short and jurisdictional. *See* Fed. R. Bankr. P. 4007(c). That rule reflects an overarching policy favoring a debtor's fresh start and disfavoring late-breaking attempts to resurrect unasserted, disputed tort claims. Courts—including the United States Supreme Court—therefore insist that the exceptions to discharge be narrowly construed. *See, e.g.*, *Reyes v. Ranciato (In re Ranciato)*, 638 B.R. 275, 290 (Bankr. D. Conn. 2022) (recognizing that "[t]he Supreme Court has cautioned courts to construe exceptions to discharge narrowly"). Any creditor seeking relief from discharge must carry the burden of establishing each statutory element with precision. Rodriguez seeks to create a broad, easily triggered exemption from the deadline, which would upend that policy and give creditors an unlimited escape hatch from bankruptcy to state courts.

36.     Accordingly, Rodriguez's Objection must fail even accepting as correct each of the legal arguments that she makes (they are not). The Court should grant the Debtor's Motion to

Reopen his Bankruptcy Case and require Rodriguez to prove the allegations she argues entitle her to an exception from the discharge.

      **E.      Rodriguez Does Not Allege That She Gave the Debtor Any Indication (in the Nearly Seven Years Between the Alleged Incident and His Bankruptcy Case) That She Might Have a Claim Against Him.**

      37.      Rodriguez's circumstances are plainly distinguishable from those of the creditors who the Second Circuit determined were known creditors in the *Motors Liquidation* case that she cited in her Objection. The Second Circuit recited myriad facts that supported imputing knowledge to Old GM of consumer claims arising from ignition switch defects in vehicles they purchased:

> [F]ederal law requires that automakers keep records of the first owners of their vehicles. This provision facilitates recalls and other consequences of the consumer-automaker relationship. Thus, to the extent that Old GM knew of defects in its cars, it would also necessarily know the identity of a significant number of affected owners.
>
> The facts paint a picture that Old GM did nothing, even as it knew that the ignition switch defect impacted consumers. From its development in 1997, the ignition switch never passed Old GM's own technical specifications. Old GM knew that the switch was defective, but it approved the switch for millions of cars anyway.
>
> Once the ignition switch was installed, Old GM almost immediately received various complaints. News outlets reported about the faulty ignition switch. NHTSA approached Old GM about moving stalls and airbag non-deployments. A police report, which Old GM's legal team possessed, linked these breakdowns to a faulty ignition switch. Old GM even considered warning dealers (but not consumers) about moving stalls. By May 2009, at the latest, Old GM personnel had essentially concluded that the ignition switch, moving stalls, and airbag non-deployments were related. Considering the airbag issues, they believed that one of the two "most likely explanation[s] for the power mode signal change was . . . a problem with the Ignition Switch."
>
> A bankruptcy court could reasonably read from this record that Old GM knew about the ignition switch defect.

*Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 159–60 (2d Cir. 2016) (citations omitted).

38. The Debtor simply cannot be charged with the type of knowledge that Old GM had in *Motors Liquidation*. As explained above, the Debtor cannot find any evidence he ever knew Rodriguez or knew of her. Nor does Rodriguez claim that she provided the Debtor with any notice—before, during, or after his Bankruptcy Case—of her alleged claim against him or her allegations. She had nearly seven years after the alleged incident to give the Debtor some kind of indication that she might assert a claim against him before he filed his Bankruptcy Case. Yet, the Debtor did not learn about her alleged claim until she attempted to commence the State Court Action, on the last possible day, just hours before the deadline under the VGMVPA to bring otherwise-time-barred claims.[9]

39. Under such circumstances, it is axiomatic that the Debtor could not have had any obligation to serve Rodriguez with notice of his Bankruptcy Case.

40. Even assuming, for the sake of argument, that the Debtor and Rodriguez knew each other, a debtor cannot be saddled with a duty to locate every person who might someday allege an intentional tort, particularly where the debtor disputes that any wrongful act ever occurred. Requiring such prescience would compel debtors to initiate declaratory actions to disprove hypothetical tort liability—exactly the opposite of the streamlined, creditor-initiated model that Congress adopted. Again, Rodriguez does not assert that she made any contemporaneous allegation, demand, lawsuit, or even informal communication to the Debtor during the seven-year gap between the alleged incident and his Bankruptcy Case, and the Debtor is unaware of any such

---

[9] For that and other reasons, Rodriguez's claim is highly suspicious. For example, in addition to the fact that she did not file a complaint or any of her substantive allegations with the State Court after filing her Summons with Notice in February, she still has not specified under which civil statute she is suing the Debtor. The Debtor also **has not been charged with any crime** despite the allegations that Rodriguez has made concerning her alleged claim (which allegations remain unclear and have been inconsistent). Additionally, although she professes to have been traumatized by the Debtor, she published a lighthearted YouTube video in April 2021 covering gossip relating to the Debtor's personal life. *See* https://www.youtube.com/watch?v=itcm56tO0MY. Notably, Rodriguez was recently sued in an action for insurance fraud. *See generally State Farm Mut. Automobile Ins. Co. v. Adagio Chiropractic, P.C.*, No. 150012/2025 (N.Y. Sup. Ct. N.Y. Cnty.).

attempts by Rodriguez. On that record, the Debtor had no actual knowledge of Rodriguez's alleged claim and there is no basis for imputing knowledge to him.

> **F.    The Court Should Not Accept Rodriguez's Invitation (on an Untested, Highly Factual Argument About Psychological Injuries) to Reconsider the Court's Order Approving the Debtor's Publication Notice to Unknown Creditors, When Deciding the Debtor's Motion to Reopen His Bankruptcy Case.**

41.    Rodriguez makes an untested argument that publication notice can never be sufficient for creditors who suffered "sexual psychological injury and trauma." Obj. ¶¶ 30–32. Such an argument, even if it has merit (it does not), is not ripe for consideration on a motion to reopen a bankruptcy case, where the Court cannot yet grant Rodriguez substantive relief. *See* L. Bankr. R. 5010-1(b). More seriously, Rodriguez's argument, if accepted, would create new law, ripping a hole in the bankruptcy discharge through which thousands of plaintiffs could immediately swarm against otherwise-discharged debtors.

42.    There are myriad reasons why Rodriguez's argument is premature. First, it is untested, as she has not cited any case law in support of her proposition. Second, it is highly factual, plainly requiring the presentation of expert testimony, which cannot be admitted at a non-evidentiary hearing. Third, the Debtor would be entitled to an opportunity to rebut Rodriguez's expert testimony and to present his own expert for such purpose. Fourth, it relies on facts regarding her particular allegations which also are not in evidence.

43.    Even if it were not premature, Rodriguez's argument is dubious. The Debtor is an internationally recognized entertainer whose multiyear chapter 11 case was a matter of public record and was extensively covered by national and international media. Rodriguez, who worked in the entertainment industry and was allegedly victimized by the Debtor, is precisely the type of person expected to perceive and respond to that highly public signal, and to the publication notice

that this Court has already approved in this Bankruptcy Case. If those circumstances do not amount to adequate notice, the concept effectively ceases to exist.

44. Moreover, Rodriguez's argument—that "[p]ublication notice here was plainly inadequate to this creditor and may have served to actually re-trigger trauma and psychological responses that would have prevented [her] from participating in the Debtor's bankruptcy case"—begs the question whether *any* notice could have been sufficient. If mere publication notice would have affirmatively prevented Rodriguez from participating in the Debtor's case, presumably direct notice would have had an even greater adverse effect on her capacity to participate. The Debtor cannot be held to such an impossible standard to obtain a discharge of his debts.

45. Indeed, accepting Rodriguez's argument would create a new, virtually unlimited exception to discharge, such that any claimant with trauma would be able to assert an untimely claim regardless of notice and discharge. This is not, and cannot be, the law.

G. **Rodriguez's Attempt to Create an Exception to the Second Circuit Accrual Test for Her Claim Ignores That Federal Bankruptcy Law Preempts Contrary State and Local Law.**

46. Rodriguez's final argument seeks to except claims under the VGMVPA from the Second Circuit's test for determining whether a claim is a prepetition or a postpetition claim. Rodriguez's argument fails for the simple reason that state and local law cannot preempt federal bankruptcy law. It is blackletter law that the Bankruptcy Code preempts conflicting state and local laws. *See, e.g.*, *In re Pruitt*, 401 B.R. 546, 552 (Bankr. D. Conn. 2009) (stating that "the application of state law in the entire field of debtor-creditor relations has been presumptively displaced by national bankruptcy law"); *see also Note Holders v. Large Private Beneficial Owners (In re Trib. Co. Fraudulent Conv. Litig.)*, 946 F.3d 66, 82 (2d Cir. 2019) (stating "Congress's power to enact bankruptcy laws was made explicit in the Constitution as originally enacted . . . and detailed, preemptive federal regulation of creditors' rights has, therefore, existed for over two centuries,"

and, as a result, "[o]nce a party enters bankruptcy, the Bankruptcy Code constitutes a wholesale preemption of state laws regarding creditors' rights").

47. Thus, the VGMVPA simply cannot exempt Rodriguez's alleged prepetition claim from the Debtor's bankruptcy discharge. Admirable as the VGMVPA's goal was, it simply did not, and could not have, bypassed the discharge by temporarily reopening the statute of limitations for certain types of claims.

## CONCLUSION

48. The Debtor therefore requests that the Court (a) grant the Motion by entering an order, substantially in the form attached thereto, and (b) award the Debtor such other and further relief as this Court may deem just and proper.

Dated: May 20, 2025

Respectfully submitted,

**ZEISLER & ZEISLER, P.C.**

/s/ John L. Cesaroni
James Berman (ct06027)
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Tel.: (203) 368-4234
Fax: (203) 367-9778
jcesaroni@zeislaw.com

**BLANK ROME LLP**
Michael B. Schaedle (admitted *pro hac vice*)
Matthew E. Kaslow (admitted *pro hac vice*)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5500
Fax: (215) 569-5555
michael.schaedle@blankrome.com
matt.kaslow@blankrome.com

*Counsel for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| **CURTIS JAMES JACKSON, III** | : | **CASE NO. 15-21233 (AMN)** |
| | : | |
| DEBTOR. | : | |

**CERTIFICATE OF SERVICE**

I, John L. Cesaroni, certify that on May 20, 2025, the forgoing *Reply in Support of Expedited Motion for an Order Reopening Bankruptcy Case for the Limited Purposes of (I) Enforcing the Plan and Discharge Injunction and (II) Awarding Sanctions* was served by CM/ECF upon those parties registered to receive such electronic notifications in this case, and by email upon the following:

Konstantin Yelisavetskiy
kyelisavetskiy@sssfirm.com

Gerard T. Cicero
GCicero@brownrudnick.com

David J. Molton
dmolton@brownrudnick.com

/s/ John L. Cesaroni
John L. Cesaroni (ct29309)